IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT J. MCCARTHY, *Pro Se* | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-0401 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF POINTS AND AUTHORITIES.

Plaintiff moves for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as there is no genuine issue as to any material fact and the Plaintiff is entitled to a judgment as a matter of law. This motion is supported by citation to the Verified Complaint, Answer thereto, declaration of Plaintiff herein, and the Appendix hereto.

### A.      Summary Judgment Standard.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in part, that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact." *Fed. R. Civ. P. 56(c).*

So long as there are no material facts at issue and no facts "susceptible to divergent inferences bearing upon an issue critical to disposition of the case," summary judgment is appropriate. *Alyeska Pipeline Serv. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988).* "A motion for summary judgment adequately underpinned is not defeated simply by bare opinion or an unaided claim that a factual controversy persists." *Id. at 314.*

Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved. *See, e.g., Wickwire Gavin, P.C. v. USPS, 356 F.3d 588, 591 (4th Cir. 2004); Cooper Cameron Corp. v. United States Dep't of Labor, 280 F.3d 539, 543 (5th Cir. 2002); Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993); Rushford v. Civiletti, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).*

## B.    Material Facts as to which there is no Genuine Dispute.

1. This is an action for declaratory and injunctive relief and for damages under the Freedom of Information Act, *5 U.S.C. § 552(a)(4)(B)*; and the Privacy Act, *5 U.S.C. §§ 552a(g).* Additional bases for jurisdiction are *28 U.S.C. §1331* (federal question); *28 U.S.C. §1346* (United States as defendant); and *28 U.S.C. §1361* (mandamus). *Complaint para. 1.*

2. Venue lies in the District Court for the District of Columbia, pursuant to *5 U.S.C. § 552*; and *28 U.S.C. §1391. Complaint para. 2.*

3. At all times relevant, Plaintiff Robert J. McCarthy has resided in the County of Riverside, State of California, and has been employed by the United States Department of the Interior ("DOI" or "defendant")as a Field Solicitor, responsible for providing legal advice and representation to DOI bureaus throughout Southern California and in Nevada.  Plaintiff appears *Pro Se. Complaint para. 3.*

4. Defendant United States Department of the Interior ("defendant", "DOI" or "Interior") is an agency of the United States Government that comprises numerous bureaus and offices, including as relevant hereto, the Bureau of Indian Affairs ("BIA"); the Bureau of Land Management; and the Office of the Solicitor. *Complaint para. 4.*

5. On December 4, 2006, Plaintiff submitted a FOIA request and a Privacy Act request by facsimile transmission ("fax") to the Office of the Solicitor ("SOL"), DOI.   Plaintiff sought expedited processing of the FOIA request and fee waiver.  The request was for "documents that identify … every attorney position within [SOL] that has been filled by transfer, promotion or other hiring process since April 20, 2005"; "every attorney position… that has been identified [and remains] as vacant since April 20,

3

2005"; "every award given to an attorney in [SOL] since April 20, 2005;" and "the Numeric Summary Performance Rating given to each attorney in [SOL] on his or her most recent performance Appraisal after April 20, 2005, but before September 30, 2006." *Complaint para. 5 and Exhibit A thereto.* The Privacy Act request sought "All documents contained in the official personnel file of requester, that were created after April 20, 2005, or added to the file after that date." *Complaint para. 5 and Exhibit B, thereto.*

6. On January 17, 2007, Plaintiff faxed appeals from the constructive denial of his FOIA and Privacy Act requests, together with copies of all previous correspondence. Plaintiff appealed the denial of his FOIA request on the grounds of *43 C.F.R. 2.28(a) (1), (3), (4), (5), (6), and (7),* and his Privacy Act request under *43 CFR 2.65. Complaint para. 6 and Exhibit C (FOIA appeal) and Exhibit D (Privacy Act appeal) thereto, respectively.*

7. By letter dated January 30, 2007, the SOL acknowledged receipt of Plaintiff's FOIA request. *Complaint para. 7 and Exhibit E thereto.* By letter dated February 2, 2007, the SOL acknowledged receipt of Plaintiff's Privacy Act request. *Complaint para. 7 and Exhibit F thereto.* By letter dated February 13, 2007, the SOL acknowledged receipt of Plaintiff's appeal, and stated that "Due to an extraordinarily large number of appeals pending in the Department ahead of yours, the need to fully review the

4

issues you presented in your appeal, and other unforeseen circumstances, the Department will not be able to make a determination on your appeal within the time limits set in the FOIA." The letter also states that "you may seek judicial review under 5 U.S.C. §552(a)(4)(B)." *Complaint para. 7 and Exhibit G thereto.*

8. By letter dated March 16, 2006, DOI's "FOIA & Privacy Act Appeals Officer" responded to plaintiff's administrative appeal of the constructive denial of his Privacy Act request. *See Appendix Exhibit F.* While acknowledging DOI violated its own regulations in processing the request, the letter states, essentially, that DOI was not required to produce plaintiff's personnel file because the December 4, 2006, Privacy Act request allegedly was addressed to the wrong official at the wrong address.

9. Notwithstanding the foregoing denial, defendant eventually produced a copy of plaintiff's "Official Personnel File", which was received by Plaintiff on March 26, 2007.

## C. The Court has Continuing Jurisdiction notwithstanding Defendant's Belated Production of Certain Requested Documents in Response to the Complaint.

The Court retains jurisdiction in this matter because the defendant's belated production of certain documents in this case does not resolve all

issues raised by the Complaint. First, although defendant claims to have provided responsive documents to the FOIA request, the claims are hollow, as explained further, *infra*.

In addition, plaintiff seeks a declaratory judgment that defendant not only violated FOIA and the Privacy Act, but that intentional or willful violations of the Privacy Act resulted in adverse effects on Plaintiff for which Plaintiff is entitled to damages pursuant to *5 U.S.C. § 552(g)(1)(D),* including compensation for mental distress, embarrassment, and emotional trauma; lost earnings and opportunities to obtain alternative employment; harm to his reputation; and expenses of responding to retaliatory personnel actions sustained by DOI's refusal to release the requested records. *See Plaintiff's Third Claim for Relief.*

Further, plaintiff has requested an award of all costs and fees related to this action, and "such further relief as deemed just by this court". The D.C. Circuit has held that a pro se plaintiff's claim for litigation costs under the Privacy Act is not limited by 28 U.S.C. § 1920 (governing litigation costs generally). *Blazy v. Tenet, 194 F.3d at 94-95* (embracing reasoning of *Kuzma v. IRS, 821 F.2d 930 (2d Cir. 1987)*).

Plaintiff also seeks a ruling, pursuant to *5 U.S.C. § 552(a)(4)(F),* that "Circumstances surrounding the improper withholding of the requested

6

information raise questions whether DOI personnel acted arbitrarily or capriciously with respect to the withholding."[1] *Complaint at page 17.*

Additionally, as in all civil cases, courts may exercise their discretion to impose sanctions on the government when it violates court rules or shows disrespect for the judicial process. *See, e.g., Landmark Legal Found. v. EPA, 272 F. Supp. 2d 70, 87 (D.D.C. 2003)* (awarding attorney fees and costs as sanction for agency's violation of court order intended to preserve FOIA-requested records).

The D.C. Circuit Court of Appeals described three types of misconduct that justify sanctions in *Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998),* "pursuant to the court's inherent power to 'protect [its] integrity and prevent abuses of the judicial process.'"

> First, the court may decide that the errant party's behavior has severely hampered the other party's ability to present his case-- in other words, that the other party 'has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case.' Second, the court may take account of the

---

[1] "Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against  the officer or employee who was primarily responsible for the withholding." *5 U.S.C. § 552(a)(4)(F).*

> prejudice caused to the judicial system when the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay.' And finally, the court may consider the need 'to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.'

*Id. (internal citations omitted).*

Finally, plaintiff seeks prospective injunctive relief in the face of a deeply-rooted DOI policy to withhold documents at every turn, requiring the requester to pursue every manner of appeal. In *Payne Enterprises v. United States, 837 F.2d 486 (D.C. Cir. 1988),* the Court of Appeals for the District of Columbia Circuit held that when records are routinely withheld at the initial processing level, but consistently released after an administrative appeal, and when this situation results in continuing injury to the requester, a lawsuit challenging that practice is ripe for adjudication and is not subject to dismissal on the basis of mootness. *Id. at 488-93.*

> The fact that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant to determining whether a challenge to that policy or practice is moot. Courts have long recognized that there "may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention." So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit.

*Id. at 491 (internal citation omitted).* The court also held that "the FOIA imposes no limits on courts' equitable powers in enforcing its terms" and "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Id. at 494.*

The defendant agency's "voluntary cessation" of that practice in *Payne* did not moot the case when the plaintiff challenged the agency's **policy** as an unlawful, continuing wrong. *Id.; see also, e.g., Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 90-91 (D.C. Cir. 1986)* (holding that challenge to fee waiver standards as applied was moot, but challenge to facial validity of standards was ripe and not moot); *Pub. Citizen v. Office of the United States Trade Representative, 804 F. Supp. 385, 387 (D.D.C. 1992)* (stating that despite the disclosure of the specific records requested, a court retains jurisdiction when a plaintiff challenges an "agency's policy to withhold temporarily, on a regular basis, certain types of documents").

As discussed below under the relevant causes of action, defendant has routinely withheld documents at the initial processing level, requiring one appeal after another, resulting in continuing injury to the requester.

**D.    Argument in Support of First Claim for Relief: Defendant has arbitrarily or capriciously withheld agency records in violation of the**

**FOIA, *5 U.S.C. § 552*, and DOI regulations at *43 C.F.R. Part 2*, and demonstrated a willful intent to suppress the requested information and delay any inevitable release in order to prevent Plaintiff from using the information in his MSPB appeal.[2]**

DOI has improperly withheld agency records in violation of the FOIA, *5 U.S.C. § 552*, and DOI regulations at *43 C.F.R. Part 2. Complaint para. 27.* DOI's failure to respond to Plaintiff's FOIA request within 20 workdays constitutes a denial. *See 43 C.F.R. §2.12; Complaint para. 28.*

DOI's failure to respond to Plaintiff's request for expedited processing within 10 workdays constitutes a denial. Appeals of denials for expedited processing must be processed ahead of other appeals. *See 43 C.F.R. §2.14(d); Complaint para. 29.* Appeals may be filed when a decision is not made on a request within the stated time limits. *43 C.F.R. §2.28;*

---

[2] *Merit Systems Protection Board, Docket Number SF-1221-06-0380-W-1, Robert J. McCarthy v. United States Department of the Interior* ("the MSPB Appeal", filed February 23, 2006). Plaintiff filed the MSPB Appeal alleging retaliation by DOI in violation of the Whistleblower Protection Act ("WPA"). *Complaint para. 10.* Plaintiff alleged a wide range of prohibited personnel actions, some evidenced by the information sought in the FOIA and Privacy Act requests, e.g., "denied opportunities to transfer to other DOI vacancies; withheld, delayed and downgraded performance reviews; [and] exclusion from consideration for performance awards routinely given to all similarly-situated DOI attorneys." *Complaint para. 9.*

*Complaint para. 30.* Appeals may be submitted by fax. *43 C.F.R. §2.30(a); Complaint para. 31.*

DOI's failure to respond to Plaintiff's FOIA appeal within 20 workdays constitutes a denial. *43 C.F.R. §2.32(c); Complaint para. 32.* DOI must respond within 10 calendar days to an appeal of denial of a request for expedited processing. *Complaint para. 33.*

DOI failed to comply with the statute and its own regulations regarding its denial of Plaintiff's FOIA request, request for expedited processing, and fee waiver request. *Complaint para. 34.* DOI has demonstrated a willful intent to suppress the requested information and delay any inevitable release in order to prevent Plaintiff from using the information in his MSPB appeal. *Complaint para. 35.*

On December 4, 2006, defendant received Plaintiff's requests for (1): "documents that identify ... every attorney position within [SOL] that has been filled by transfer, promotion or other hiring process since April 20, 2005 ... by title, location and grade," with dates and identities; (2) "every attorney position... that has been identified [and remains] as vacant since April 20, 2005"; (3) "every award given to an attorney in [SOL] since April 20, 2005," by title, location, grade, amounts, dates and identities; and (4) "the Numeric Summary Performance Rating given to each attorney in [SOL]

on his or her most recent performance Appraisal(s) by management status, location, and grade.

By letter dated March 30, 2007, after the filing of an administrative appeal, and then the filing of this suit, the Solicitor's Office finally responded to the FOIA request. *Appendix Exhibit A.* Defendant makes the implausible claim that "the office does not have a mechanism to track attorney vacancies." *Id. A3.* Therefore, no information is provided with respect to item number 2 (vacancies). At the very least, defendant could and should have produced documents showing those positions that were advertised and not filled during the specified period. Certainly DOI knows what positions it posted, and it is a fairly simple matter of deduction to subtract the 33 attorney transfers, 52 promotions, 32 new hires, and 9 "pending approval" as described in response to item 1. *Id. A4 to A9.*

Defendant's letter of response states plaintiff agreed that no identities or locations need be provided with respect to item 3 (awards), *Id. A1*, and item 4 (performance ratings), *Id. A2.* It is true that plaintiff agreed to the limitation on identities pursuant to a claimed privacy exemption and to locations only to the extent of defendants' representations that disclosure would violate privacy interests, and with the implicit understanding that Interior would act in good faith in providing the requested information.

Quite aside from the question of good faith, or lack thereof, however, a court is obligated to examine the segregability of non-exempt information even where the parties do not raise the issue. *Billington v. Dep't of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000)*. Thus, even where a plaintiff waives objection to an asserted privacy exemption, the privacy exemption must necessarily be scrutinized to determine whether it justifies withholding otherwise non-exempt information. *Fuller v. CIA, Civil Action No. 04-253 (RWR), United States District Court for the District of Columbia, 2007 U.S. Dist. LEXIS 14203 (February 28, 2007)*.

It is quite unlikely that release of locations would compromise any privacy interests. More significantly, defendant had no problem providing awards and performance rating information not only by location but by name for the Office of Pacific Southwest Regional Solicitor. *Appendix Exhibit G at G9 (awards) and G11 (ratings)*. Therefore, defendant has waived its claim that release of such data violates privacy interests.

As for the substance of DOI's response to the item 3 request (awards), the March 30, 2007, letter states:

> We have provided **two tables, which provide identical information in different formats**. Each table lists each and every award given to an attorney in the Office since April 20, 2005, showing the title of each award; the monetary or other

benefits bestowed with the awards; and whether the recipient of the award was a supervisory or nonsupervisory attorney.

*Appendix Exhibit A at A3 (emphasis added).*

In fact, **the two tables show vastly different information**, that cannot be reconciled, and that cannot be relied upon as accurate or even as being produced in good faith. The first, four-page document, "Attorney Awards by Supervisory Status, Award Type, Effective Date", lists 27 supervisory cash awards; 6 supervisory time-off awards; 71 nonsupervisory cash awards; and 15 nonsupervisory time-off awards. *Id. A10 to A13.*

The second table, comprising ten pages, with the same title, lists 49 supervisory cash awards; 13 supervisory time-off awards; 223 nonsupervisory cash awards; and 103 nonsupervisory time-off awards. *Id. A14 to A23.* According to the first table, the average supervisory cash award is $2,154, whereas the average nonsupervisory cash award is $1,828. The second table says the average supervisory cash award is $2,329, whereas the average nonsupervisory cash award is $3,277. Award amounts range up to a high of $9,675.[3]

Defendant cannot claim to have provided the requested documents when it has provided two mutually exclusive documents that it claims

---

[3] Presumably, these numbers are based on net awards, after tax and other deductions. The tables also report several Quality step increases, for which no dollar values are provided.

"provide identical information in different formats." It appears there may be some 200 attorneys in the Office of the Solicitor. Based on Table one, over half of these attorneys (119) received awards (not accounting for multiple awards to the same attorneys). According to Table 2, every attorney received an average of 1.5 awards (for a total of 318)!

Turning to the substance of defendant's production with respect to item 4 (performance ratings), it is apparent that plaintiff's trust in defendant's good faith was again misplaced. The ratings documents provide a summary numerical rating that is rounded down to the nearest full number from 2 to 5. Each attorney is rated on each of several "critical factors", then a summary rating is arrived at by dividing the total by the number of factors. In most cases, this results in a fractional number, *e.g.* 3.6. Defendant has not provided these actual ratings, but rather a full number corresponding to a rating of "unsatisfactory" (numerically a "2"), "fully satisfactory" ("3"), "superior" ("4"), and exceptional ("5"). *Appendix Exhibit A at A24 to A33.*

Defendant has provided attorney ratings for two ratings periods, one ending December 31, 2005, and the other Sept. 30, 2006. Inexplicably, ratings are provided for 208 attorneys in the first period, and 330 in the second. This unexplained gap raises a large red flag about the validity of the data, and the good faith of the response.

15

**E.**    **Argument in Support of Second Claim for Relief: Defendant has arbitrarily or capriciously withheld agency records in violation of the Privacy Act, *5 U.S.C. § 552*, and DOI regulations at *43 C.F.R. Part 2*, and demonstrated a willful intent to suppress the requested information and delay any inevitable release in order to prevent Plaintiff from using the information in his MSPB appeal.**

DOI has improperly withheld agency records in violation of the Privacy Act, *5 U.S.C. § 552*, and DOI regulations at *43 C.F.R. Part 2; Complaint para. 38.*   The Privacy Act entitles Plaintiff, upon request, to gain access to his records or to any information pertaining to him which is contained in a system of records and to review the records and have a copy made of all or any portion thereof.  *5 U.S.C. § 552a(d)(1); 43 C.F.R. §2.62; Complaint para. 39.*

DOI's failure to grant Plaintiff's Privacy Act request "promptly" is a violation of *5 U.S.C. § 552* and *43 C.F.R. §2.64(a).  Complaint para. 40.* DOI has demonstrated a willful intent to suppress the requested information and delay any inevitable release in order to prevent Plaintiff from using the information in his MSPB appeal.  *Complaint para. 41.*

By letter dated March 16, 2007, DOI's "FOIA & Privacy Act Appeals Officer" responded to plaintiff's administrative appeal of the constructive

denial of his Privacy Act request. *Appendix Exhibit B.* The letter states "that SOL is not obligated to process your Privacy Act request, as you did not submit the request to the appropriate SOL official." *Id. B1.*

The Privacy Act request was addressed to the "Privacy Act Officer, Office of the Solicitor, MS-7456, MIB [Main Interior Building], 1849 C Street, N.W., Washington D.C. 20240." According to the FOIA & Privacy Act Appeals Officer, the Privacy Act request should have been submitted to "SOL's 'Personnel Officer' whose address is listed in the Privacy Act system notice as '19th & C Streets, NW, Washington, DC 20240'." *Id. B2.*

The FOIA & Privacy Act Appeals Officer explains, quoting *43 C.F.R. 2.63(a),* that "'requests for access to records shall be submitted to the system manger [sic] having responsibility for the system in which the records are maintained unless the system notice describing the system prescribes or permits submission to some other official or officials". She notes that "In the case of your Privacy Act request, the records you are seeking are maintained in a Privacy Act system of records identified as 'General Personnel Records – Interior, Office of the Secretary – 79' ('OS-79')." *B1.*

The Appeals Officer then observes:

> The Department's review of OS-79 reveals that SOL's Privacy Act Officer, who is performing in an "acting" capacity in that position, is not the system manager for SOL's "General Personnel Records." Rather, the system manager is SOL's

17

"Personnel Officer" whose address is listed in the Privacy Act system notice as "19th & C Streets, NW, Washington, DC 20240." *See* OS-79. Because you did not submit your Privacy Act request to the "system manger [sic] having responsibility for the system in which the records are maintained," as the regulations require you to do, the request that you submitted to the SOL's Acting Privacy Act Officer seeking access to your "official personnel file" does not comply with the regulations. Therefore, SOL's Acting Privacy Act Officer had no obligation to make a determination on whether to grant your request for access to your official personnel file. Instead, the regulations required  SOL's Acting Privacy Act Officer to return your Privacy Act request to you and advise you in writing of the deficiency, which she failed to do. *See 43 CFR  2.63(b)(6).*

B2.

Graciously, DOI states that it has decided to forward the request to the appropriate official, rather than belatedly returning it (three and one-half months after receipt), "even though the Privacy Act and the regulations do not require the Department to takes [sic] such an extraordinary step." *Id.*

Having failed to comply with its own reading of the regulations, DOI is in no position to penalize plaintiff for an allegedly misdirected request. This court has held that an agency's failure to comply with its own regulations undercuts an exhaustion defense. *See Jonsson v. IRS, No. 90-2519, 1992 WL 115607, at *1 (D.D.C. May 4, 1992); see also Haldane v. Comm'r, No. 90-654M, 1990 U.S. Dist. LEXIS 11612, at **4-6 (W.D. Wash. Aug. 23, 1990).*

18

Although the Appeals Officer blames "SOL's Acting Privacy Act Officer" for "misplacing the request and then failing to advise [plaintiff] of the requirements of the regulations", id., the Appeals officer herself was aware of the alleged "deficiency" since January 17, 2007, the date she received the Privacy Act appeal.  Thus, while the acting Privacy Act Officer makes a convenient scapegoat, it appears the Appeals officer herself may be responsible for the majority of the unauthorized delay in handling the Privacy Act request.

Indeed, given all of the proceedings surrounding this simple request for an employee's own personnel file, pending now in one forum or another for over a year, it is doubtful that anyone in the Solicitor's Office or the Secretary's Office can plead ignorance of what was being sought and from whom.  Moreover, DOI regulations authorize officials to respond to such a request whether or not they believe it complies with all of the niceties of the regulations.  By foregoing yet another opportunity to do the decent thing, DOI has only added fuel to the fire concerning allegations in this proceeding that it has used deceptive, unlawful and unethical means to delay and deny plaintiff's access to his own personnel records.

In any event, there is a much bigger hole in the Appeals Officer's belated determination with respect to the Privacy Act appeal: the Privacy

Act request was not in fact mis-addressed. The Privacy Act requires publication of a notice in the Federal Register describing each system of records subject to the Act. *5 U.S.C. 552a(e)(4).* Publication of a new or revised system notice before any new system or major change to an existing system is to be effective is also required. The publication requirements are intended to help individuals locate systems of records that are likely to contain personal information pertaining to them. They are not intended to provide agencies a subterfuge for evading requests.

DOI has adopted regulations to implement this requirement of the Act. *43 CFR 2.50.* The regulations define "system manager" as "the official designated in a system notice as having administrative responsibility for a system of records." *Id., § 2.46(l).* Although the regulations make no reference a "Personnel officer", they do provide that a "'Bureau Privacy Act Officer' means the official within each bureau assigned responsibility for bureau implementation of the Act and the regulations of this subpart." *Id., § 2.46(n).* Absent designation of the SOL Personnel Officer in a system notice, then, it is reasonable to assume that a Privacy Act request should be addressed to the Privacy Act Officer. Indeed, DOI regulations even provide that when a FOIA Officer receives a Privacy Act request, "the request will be processed under both the FOIA and the Privacy Act." *Id., § 2.27(a).*

DOI argues that there is only a single individual in the Department to whom the Privacy Act request at issue here could have been properly addressed. DOI claims OS-79 provides that "the System Manager is the SOL's 'Personnel Officer' whose address is listed in the Privacy Act system notice as "19th & C Streets NW, Washington, DC 20240." This is entirely false. The notice that is currently in effect does not even mention the Office of the Solicitor, let alone the informal address, which appears to be exactly the same address as that of the Privacy Act Officer – *i.e.,* the Main Interior Building. *See 64 FR 20010 (Friday, April 23, 1999). See also Privacy Act Online via GPO Access [wais.access.gpo.gov] [DOCID:interior_000-48].* All of the DOI addresses there for the building at issue are stated as "1849 C Street NW, Washington, DC 20240." The notice states: "An individual requesting access to records maintained on him or her **should** address his/her request to the appropriate System Manager." (*Emphasis added.*) Even if this direction were assumed to be mandatory, rather than suggestive, the notice provides no means to do so with respect to system of records at issue here because it identifies no such system manager. It certainly provides no indication that the request should or must be addressed to the SOL personnel officer, as claimed by DOI!

As defendant surely knows, there **was** a system notice that mentioned the personnel officer of the Office of the Solicitor way back in 1983, but even that notice did not designate the personnel officer as the System Manager. *See 48 FR 53177 (November 25, 1983)*. The only system manager identified in that notice is the Director of Personnel, Office of the Secretary, U.S. Department of the Interior, Washington, D.C. 20240. The Notice states that "An individual **may** inquire whether or not the system contains a record pertaining to him/her from the Bureau Personnel Officer where he/she is (or was) employed." The notice also states that "A request for access **may** be addressed the same as Notification." It provides a list of "office addresses" where such inquiries and requests might be sent, including "Office of the Solicitor, Personnel Officer, 19th & C Streets, NW., Washington, D.C. 20240." The "19th & C" street address is used in this notice for all of the offices of DOI Bureaus, including that of the Secretary, apparently the address normally used for the Main Interior Building at that time. *Id.*

The 1999 FR Notice completely replaced the 1983 notice, just as the 1983 Notice replaced earlier versions. The 1999 notice states: "The Department of the Interior is proposing to amend the system notice for OS-79, 'General Personnel Records,' to update the name and number of the

system to more accurately reflect its Department-wide scope, and to **update the address of the system locations and system managers to reflect changes that have occurred since the notice was last published.** Accordingly, the Department of the Interior proposes to amend the "General Personnel Records," OS-79, system notice **in its entirety** to read as follows ...". *64 FR 20010 (1999) (emphasis added).* Similarly, the 1983 notice states: "The revised notice for OS-79 is published **in its entirety** below, and is effective November 25, 1983." *48 FR 53177 (1983) (emphasis added).*

Thus, DOI's latest excuses for delaying and denying release of plaintiff's personnel records are without merit. In fact, it appears plain that DOI has once again gone to great lengths to delay and deny release of the requested information, in this instance by dredging up a defunct 24 year-old system of records notice that does not even support its position, and that has long since been supplanted by another notice that also contradicts the Department's position. The 1983 notice does not designate the SOL personnel officer as the System Manager for personnel records, it does not require a Privacy Act request to be addressed to the SOL personnel officer, and it uses an address that is no longer used for the SOL, although the location is the same. Apparently seizing on the misleading difference in addresses, the Privacy Act Appeals officer implies that the SOL Privacy Act

23

officer and the SOL personnel officer are not at the exact same address, which of course they are!

In any event, even if defendant had not misrepresented the requirements of its own regulations as applied to the facts of this case, the Privacy Act, unlike the FOIA, does not expressly or impliedly call for compliance with agency regulations governing requests for information under *5 U.S.C. § 552. Mervin v Bonfanti, 410 F. Supp. 1205 (D.D.C. 1976)*.

Moreover, an individual's access request for his own record maintained in a system of records must be processed under **both** the Privacy Act and the FOIA, regardless of the statute(s) cited. *See H.R. Rep. No. 98-726, pt. 2, at 16-17 (1984), reprinted in 1984 U.S.C.C.A.N. 3741, 3790-91* (regarding amendment of Privacy Act in 1984 to include subsection (t)(2) and stating: "Agencies that had made it a practice to treat a request made under either [the Privacy Act or the FOIA] as if the request had been made under both laws should continue to do so."); *see also Blazy v. Tenet, 979 F. Supp. 10, 16 (D.D.C. 1997)* (quoting subsection (t)(2) and stating that "[d]ocument requests therefore must be analyzed under both Acts"), *summary affirmance granted, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998*.

Defendant's own regulations, at *43 C.F.R. § 2.27 (a)*, require it to

process a Privacy Act request even when if it was mistakenly submitted as a

FOIA request, and to refer a request for records not in its possession to the

appropriate bureau.  Here, defendant does not claim the request was

mistakenly made under FOIA, or that it was sent to the wrong bureau, only

that it was allegedly sent to the wrong official within that bureau (one not

designated as required by law), but still it claims no obligation to process the

request!

The court chastised the government for making a very similar

argument in *Jonsson v. IRS, No. 90-2519, 1992 U.S. Dist. LEXIS 6231, at *1*

*(D.D.C. May 4, 1992).*

> The IRS now argues, however, that it need not turn over
> these documents. Specifically -- with the responsive documents
> in hand and nearly four years after Plaintiff's initial request --
> the IRS now argues that Plaintiff failed to include in his initial
> request the particular system of records that Plaintiff wished it
> to search. Until such a proper request is made, the IRS claims it
> has no obligations to turn over the documents under the Privacy
> Act, even though the IRS actually has isolated Privacy Act
> material relevant to the Plaintiff.
> This position is overly technical in addition to not
> enhancing the reputation of the IRS in the eyes of the public.
> The IRS is claiming that Plaintiff has failed to push the correct
> button. After nearly four years of silent delay the IRS would
> now have Plaintiff start back at square one because of a
> deficiency it easily could have identified in the first week after
> the request. The IRS has taken an inordinate amount of time in
> processing Plaintiff's request and may not now, for the first
> time, rely on such a technical objection.

Similarly, in *McCready v. Principi, 297 F. Supp. 2d 178, 194 (D.D.C. 2003)*, *affirmed in part and reversed in part and remanded by McCready v. Nicholson, 465 F.3d 1 (D.C. Cir. 2006),* the District court held:

> An agency can only be held accountable under Privacy Act provisions tied to a system of records requirement for records it can easily retrieve consistent with its day-to-day practice of information management ... This legitimate concern with preserving an agency's resources is simply not present where ... an individual and an agency already have identified the record at issue [and] that record is therefore easily retrieved.

*Id., 297 F. Supp. 2d at 194.*

**F.    Argument in Support of Third Claim for Relief: Defendant's intentional or willful violations of the Privacy Act, including making false derogatory claims to the MSPB concerning the contents of plaintiff's personnel file and inserting retaliatory performance appraisals into the personnel file, caused adverse effects on Plaintiff for which Plaintiff is entitled to receive damages pursuant to 5 U.S.C. § 552(g)(1)(D).**

DOI's intentional or willful violations of the Privacy Act resulted in adverse effects on Plaintiff for which Plaintiff seeks damages pursuant to *5 U.S.C. § 552(g)(1)(D)*, including compensation for mental distress,

embarrassment, and emotional trauma; lost earnings and opportunities to obtain alternative employment; harm to his reputation; and expenses of responding to retaliatory personnel actions sustained by DOI's refusal to release the requested records. Plaintiff has also been monetarily damaged by past and future medical expenses related to defendant's intentional or willful violations of the Privacy Act. *Complaint para. 43.*

DOI has violated the Privacy Act in prolonging its refusal to allow Plaintiff to obtain personnel records for use in his MSPB appeal, by falsely representing to the MSPB that his personnel file contained no record of past performance awards, and by adding derogatory information to his personnel file, including retaliatory performance appraisals. The false representations to the MSPB and refusal to produce the personnel file are discussed further under the Argument in Support of Fourth Claim for Relief, *infra.*

Plaintiff finally received his official personnel file on March 26, 2007, three and one-half months after DOI received the Privacy Act request (not counting the year prior during which DOI refused his requests in the context of the MSPB proceeding). The personnel file, as expected, contains evidence of performance awards received by plaintiff prior to his whistleblower disclosures, despite previous sworn denials by the defendant. *Appendix Exhibit C at C1 to C9.*

The personnel file also contains performance appraisals for the most recent two performance appraisal periods, the only two periods that have elapsed since the protected disclosures and claims of retaliation. Both give plaintiff a rating of "fully satisfactory" (numerically a "3"). *Appendix Exhibit D.* As discussed further under Argument in Support of Fourth Claim for Relief, *infra*, the information now released by defendant shows that only one attorney in the entire nation ever received a lower rating. *Id. at D28.* Virtually all attorneys in the Pacific Southwest Region received much higher ratings, as well as monetary awards that were denied to plaintiff. *See Appendix Exhibit G at G9 (awards) and G11 (ratings).*

In the face of continuing retaliation, plaintiff applied for numerous transfers within the Department and for other federal jobs, incurring thousands of dollars in expenses for travel, including interviews with the Department of Justice in Denver and the Department of Health and Human Services in San Francisco, but he was unsuccessful in obtaining other employment. His applications for other positions within the Department of the Interior were likewise denied, including two SES positions that would have substantially increased plaintiff's salary.

As a condition of applying for federal jobs plaintiff normally was required to submit with his application a copy of his most recent

performance appraisal.  These performance appraisals, which are contained in the personnel file, were barely above the level at which an employee is put on a performance improvement plan, with the threat of dismissal.  This is not the type of performance appraisal a prospective employer wants to see, and substantially hurts an applicant's chances of obtaining another job.

A plaintiff has stated a viable claim when "adverse employment action and a stigma or other disability . . . [have] foreclosed [a] plaintiff's freedom to take advantage of other employment opportunities." *O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972)).* "The basis of such a claim is not [only] the defamatory nature of the official speech, but 'the combination of an adverse employment action and a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities.'" *Holman v. Williams, 436 F. Supp. 2d 68, 79 (D.D.C. 2006) (citing O'Donnell, 148 F.3d at 1140).*

The District of Columbia Circuit has explained that such a claim:

> requires that the government either have formally deprived one of a legal right . . . or have so severely impaired one's ability to take advantage of a legal right, such as a right to be considered for government contracts or employment or a right to seek non-government employment, that the government can be said to have "foreclosed" one's ability to take advantage of it and thus extinguished the right.

29

*Holman,* 436 F. Supp. 2d at 79 *(emphasis added) (quoting Mosrie v. Barry,*
*718 F.2d 1151, 1161 (D.C. Cir. 1983)).*

To recover damages for an agency's violation of the Privacy Act, a

plaintiff must show the violation had an adverse impact on him or her and

that the agency acted intentionally or willfully. *5 U.S.C. § 552a(g)(1)(D),*

*(g)(4).* An agency is liable for damages under *§ 552a(g)(1)(D)* when it "fails

to comply with any other provision of this section, or any rule promulgated

thereunder, in such a way as to have an adverse effect on an individual."

Section *552a(g)(4)* provides:

> In any suit brought under the provisions of subsection (g)(1)(C)
> or (D) of this section in which the court determines that the
> agency acted in a manner which was intentional or willful, the
> United States shall be liable to the individual in an amount
> equal to the sum of--
>     (A) actual damages sustained by the individual as a result of
> the refusal or failure, but in no case shall a person entitled to
> recovery receive less than the sum of $ 1,000; and
>     (B) the costs of the action together with reasonable attorney
> fees as determined by the court.

*Id.*

An "adverse effect" includes not only monetary damages, but also

nonpecuniary and nonphysical harm, such as mental distress,

embarrassment, or emotional trauma. *See Doe v. Chao,* 306 F.3d 170, 187

*(4th Cir. 2002) (Michael, J., dissenting)* ("The majority and I . . . also agree

that emotional distress can qualify as an adverse effect."), *aff'd,* 540 U.S. 614

30

(2004); Albright v. United States, 732 F.2d 181, 186 (D.C. Cir. 1984)

("emotional trauma alone is sufficient to qualify as an 'adverse effect' under

Section 552a(g) (1) (D) of the Act"); McCready v. Principi, 297 F. Supp. 2d

178, 194 (D.D.C. 2003) (plaintiff's complaints that "her reputation has been

significantly damaged . . . and that she is cut off from work assignments

commensurate with her grade . . . [are] sufficient to constitute an adverse

effect under subsection (g)(1)(D)"), affirmed in part and reversed in part

and remanded by McCready v. Nicholson, 465 F.3d 1 (D.C. Cir. 2006);

Doyon_v. United States Dep't of Justice, 304 F. Supp. 2d 32, 35 (D.D.C.

2004) ("assum[ing] without deciding that [the Bureau of Prisons'] decision

'to restrict [plaintiff] from a transfer and many Institutional programs' . . . is

an adverse determination," but finding the claim to have been rendered

moot); Rice v. U.S., 211 F.R.D. 10 (D.D.C. 2002).

In order for there to be any liability in a subsection (g)(1)(D) damages

lawsuit, the agency must have acted in an "intentional or willful" manner. 5

U.S.C. § 552a(g)(4). The words "intentional" and "willful" in subsection

(g)(4) do not have their vernacular meanings; instead, they are "terms of

art." White v. OPM, 840 F.2d 85, 87 (D.C. Cir. 1988) (per curiam). The

Act's legislative history indicates that this unique standard is "[o]n a

continuum between negligence and the very high standard of willful,

31

arbitrary, or capricious conduct," and that it "is viewed as only somewhat greater than gross negligence." *120 Cong. Rec. 40,406 (1974).  See also Doe v. Chao, 306 F.3d 170 (4th Cir. 2002), aff'd, 540 U.S. 614 (2004); Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 584 (D.C. Cir. 2002)* ("[i]f proven, retaliatory fabrication of prison records would certainly meet [our] definition of a willful or intentional Privacy Act violation").

In *Dickson v. Office of Personnel Management, 828 F.2d 32 (D.C. Cir. 1987)*, the court held that a damages action under the Privacy Act lies even if the adverse determination is not made by the agency that maintained the inaccurate or untimely record.  In *Blazy v. Tenet, 979 F. Supp. 10 (D.D.C. 1997), order summarily aff'd, 1998 WL 315583 (D.C. Cir. 1998)*, the court held that a damages action under the Privacy Act lies even if the adverse determination is not made by the agency that maintained the inaccurate record.

In *Toolasprashad, 286 F.3d 576,* the court held that the plaintiff's allegation that he was transferred to a more secure prison and reclassified as a special offender, in retaliation for his having filed administrative grievances about his treatment at the less secure prison, constituted an adverse determination so as to permit a damages action under the Privacy Act. The complaint alleged that the transfer and reclassification were based

on a false, retaliatory memorandum portraying the plaintiff, a model prisoner, as disruptive.

Because plaintiff has established that defendant's intentional or willful conduct involving a Privacy Act violation caused an adverse effect on plaintiff, "actual damages sustained by the [plaintiff are recoverable], but in no case shall a person [who is] entitled to recovery receive less than the sum of $1,000." *5 U.S.C. § 552a(g)(4)(A).*

## G.    Argument in Support of Fourth Claim for Relief: Because Defendant is in violation of the FOIA and the Privacy Act, Plaintiff is immediately entitled to expedited production of all requested records with all fees waived; and because Defendant has shown that it is willing to employ every manner of dilatory tactic to avoid releasing records to Plaintiff, defendant should not be permitted the opportunity to fabricate any new excuses for its noncompliance with Plaintiff's requests.

Plaintiff seeks a declaratory judgment pursuant to *28 U.S.C. §2201,* that DOI is in violation of the FOIA; that DOI is in violation of the Privacy Act; and that Plaintiff is immediately entitled to expedited production of all requested records with all fees waived. *Complaint para. 46.*

In addition, DOI has shown that it is willing to employ every manner of dilatory tactic to avoid releasing records to Plaintiff, thus DOI should not

be permitted the opportunity to fabricate any new excuses for its noncompliance with Plaintiff's requests. *Complaint para. 47.* The Court should enter an order enjoining defendant's policy of arbitrary and capricious denials of plaintiff's requests at the level of initial and administrative appeals, where the information must ultimately be provided.

Plaintiff understands that this court is principally concerned with the issue of defendant's instant denial of these FOIA and Privacy Act requests. However, when the same information has been suppressed for over a year in spite of repeated requests, those denials become additional relevant evidence of defendant's refusal to simply obey the law absent a court order to do so. Plaintiff provides *infra* just such evidence of this ongoing policy and practice, including suppression of information in plaintiff's MSPB proceeding, as well as defendant's continuing denial of related FOIA requests made by this plaintiff contemporaneously with those directly at issue in this case.

Plaintiff has attempted for over a year to obtain from Defendant a copy of his own official personnel file as well as the other documents at issue herein. These are documents that normally are provided upon request, and certainly should not necessitate the filing of a federal court action. Notwithstanding that these requests were made in the context of plaintiff's

34

MSPB Appeal, defendant routinely and consistently refused. *Complaint paras. 8 to 19.* Not only did defendant refuse to disclose the documents at issue, defendant actually lied under oath about the existence of documents in plaintiff's personnel file, and about the substance of facts revealed in the other documents belatedly produced. *Id. at paras. 22 and 23, respectively.*

Included in the Appendix hereto are certain document admitted into evidence in the MSPB Proceeding, demonstrating the defendant's consistent refusal to make available undeniably discoverable material, and the extent to which defendant will consistently go, including committing perjury, to avoid making such information available. *Exhibit E* is Defendant's MSPB closing brief with sworn declarations.[4] *Exhibit F* comprises Defendant's MSPB discovery responses, subsequently sworn to be true under penalty of perjury.[5] *Exhibit G* is Defendant's subsequent discovery responses produced

---

[4] Typical of the sworn declarations that accompany defendant's Sept. 13, 2006, MSPB brief is that of Pacific Southwest Regional Solicitor, Daniel Shillito, who states: "I have personally read the attached close of record brief and attest that the facts presented therein are accurate and complete insofar as they relate to me personally or to BIA or the Solicitor's role in this appeal generally. I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge." *Exhibit E at E24.* The same or similar declaration was made also by Edward Keable, Associate Solicitor for Administration, *E22*; Clayton Gregory, BIA Pacific Regional Director, *E19*; and Kim Snyder, Superintendent of BIA Palm Springs Agency, *E26*.)

[5] Defendant's responses to plaintiff's Requests for Production of Documents consist of a single sentence: "Refer to Agency Response to appeal." *Exhibit*

in response to MSPB order on motion to compel, also sworn to be true under penalty of perjury. [6]

Although plaintiff provides, *infra*, pertinent examples of defendant's repeated perjury in the service of suppressing information, a more comprehensive catalogue of such reprehensible conduct is contained in some of the supplemental pleadings filed with the MSPB. *See Exhibit H*. [7]

The jumble of contradictory data provided by defendant in response to plaintiff's FOIA request, "item 3" (awards), as discussed *supra*, contradicts sworn testimony by agency officials that Plaintiff was not considered for a

---

*F* at *F1, F2*. Defendant also denied 62 of 71 Requests for Admissions, many of them essentially requests to admit the existence of memoranda already in the record. *F3 to F13*.

[6] Counsel for defendant swears: "The foregoing responses, as well as all previously submitted responses to discovery by the Solicitor and BIA offices, are true and correct under all penalties available to the Merit Systems Protection Board, including penalty of perjury, if appropriate." *Exhibit G, at G6*.

[7] *Exhibit H* comprises two pleadings filed by Plaintiff. Plaintiff's "First Supplement" (Sept. 13, 2006) notes that despite defendant's repeated denials of mismanagement, a Sept. 12, 2006 internal agency memo secretly acknowledges that its "Trust Asset Accounting System" is "little more than a data base of misinformation", and that the agency essentially relies on lessees to tell it when and how much money they owe. It also reveals the agency issued some 900 rights of way containing "errors with many of the legal descriptions of record." *E1 to E5*. The second pleading, Supplemental Citations re. Sanctions (October 24, 2006) details defendant's "Unprofessional, Unethical, and Unlawful Conduct" throughout the MSPB proceeding. *E6 to E20*. These documents were **not** produced in discovery.

performance award **solely due to lack of funds**, priority for awards being

given to lower-Grade attorneys. *Appendix Exhibit E at E16.* In fact, every

non-supervisory attorney in the Pacific Southwest Region, including each of

those at Grade 15 (same as plaintiff) was given an award.[8] *Exhibit G at G9.*

It appears the same was true nationally, and moreover, it now appears

that supervisors were also routinely given awards. *Exhibit A at A10 to A23.*

In addition, defendant denied under oath that plaintiff had ever received

performance awards prior to his whistleblowing. *Exhibit F at F5*, at the

same time refusing to produce the very personnel file that contained proof of

those awards.

The same pattern of inconsistencies and obfuscation is found when

data provided by defendant in response to plaintiff's FOIA request, "item 4

(performance ratings), as discussed above, is compared to data produced by

defendant in the MSPB proceeding only after being ordered to do so.

---

[8] In a post-hoc rationalization of withholding awards in retaliation for whistleblowing, defendant insists plaintiff is a "supervisor", thus cannot be compared to non-supervisors in the Region. Yet defendant admits appellant has never supervised anyone in his current position. *E6.* "A title is not determinative of supervisory status." *James A. Smith v. United States Postal Service, 54 M.S.P.R. 566 (1992), citing Fall River Savings Bank v. National Labor Relations Board, 649 F.2d 50, 52 n.1 (1st Cir. 1981).* "What is important is whether supervisory authority actually exists." *Id., 54 M.S.P.R. 566, citing Goldies, Inc. v. National Labor Relations Board, 628 F.2d 706, 709 (1st Cir. 1980).*

Plaintiff received a rating of "fully satisfactory" ("3") for each of the two periods for which defendant now provides nationwide data. *Exhibit D.*

Agency officials previously swore under penalty of perjury that Plaintiff "was considered one of the top performers ratings-wise". *Exhibit E at E12.* Plaintiff established, however, that virtually all other attorneys in the Pacific Southwest Region received higher ratings, making a mockery of this oath and to put it mildly, drawing into question the reliability of defendant's document production then and now. *Exhibit G at G11.*

The ratings now provided by the defendant show that only one attorney out of hundreds in the entire nation ever received a lower rating ("unsatisfactory" or 2) than that given to plaintiff (3). In the first rating period, 41% of attorneys received a 3, whereas 45% received a 4 and 14% received a 5, the highest possible rating. In the second rating period, 40% received a 3, 42% received a 4, and 11% received a 5. The remainder were not rated. *Exhibit A at A24 to A33.* Any way you cut it, plaintiff was not "one of the top performers ratings-wise", as sworn by defendant.

Plaintiff's MSPB Appeal is far from being resolved, the Administrative Judge (AJ) finally having issued an Initial Decision ("ID"). The ID came approximately nine months after it was due under MSPB rules, and only after plaintiff filed motions for recusal of the AJ, exercise of

supervisory control by the full MSPB Board, and ultimately, a Petition for Writ of Mandamus before the United States Court of Appeals for the Federal Circuit.[9]

The AJ ruled that plaintiff had "established that the Board has appellate jurisdiction" over most of the agency's retaliatory personnel actions; that plaintiff's allegations of gross mismanagement are "protected disclosures" under the Whistleblower Protection Act; and that "the protected disclosures were a contributing factor in the personnel actions," which include creation of a hostile workplace, reduction in job responsibilities, and denial of awards, fair performance appraisals, and opportunities to transfer to other positions. Nevertheless, the AJ curiously concluded that these personnel actions "would have occurred in the absence of [plaintiff's] protected disclosures," thus he found plaintiff to be entitled to no relief. Plaintiff has notified defendant of his intent to appeal.

Not coincidentally, defendant was successful in delaying its responses to the FOIA request long enough so that plaintiff was unable to introduce

---

[9] On or about February 22, 2007, Plaintiff filed in the United States Court of Appeals for the Federal Circuit a Petition for Writ of Mandamus to Compel Agency Action Unreasonably Withheld, seeking *inter alia* an order to expedite MSPB proceedings, including prompt issuance of rulings on still-pending discovery and sanctions motions, and recusal of the AJ. The Court ordered DOI to file a response to the Petition, which in fact was filed on the very same date that the MSPB issued the ID.

additional evidence into the record prior to the issuance of the MSPB decision. Nevertheless, Plaintiff has filed numerous objections of record in the MSPB proceeding with respect to a wide range of discovery issues involving the defendant's refusal to produce requested documents. On appeal to the MSPB Board, to the federal courts, or on remand, these discovery issues will be revisited at every step. Defendant has shown that it cannot be trusted to tell the truth about these documents, let alone respond appropriately to FOIA or Privacy Act requests.

In addition to its sorry record of erecting artificial barriers to information release in this case, as well as in the MSPB proceeding, defendant has demonstrated more of the same with respect to denials of FOIA requests that are related to but have not been made part of this case. These denials provide additional evidence of a deeply rooted policy and practice of arbitrarily denying FOIA requests and forcing the requester to appeal.

The first such denial involves a FOIA request plaintiff made to Interior's Office of the Inspector General (OIG). *Appendix Exhibit I.* The request was sent to OIG via e-mail on December 21, 2006, and it requested expedited processing. *Exhibit I -1.* By letter dated January 11, 2007, and received by plaintiff on January 18, the OIG requested redundant material

and threatened to close the file if a response was not received by January 19. *I-2*. As noted in plaintiff's immediate reply, "the phone number you [OIG] gave me to call is answered by a recording which says it is full and cannot accept messages." *I-4*. By fax dated March 9, 2007, plaintiff appealed the fact that he had received no further response from the OIG. *I-5*. By letter dated March 23, 2007, defendant acknowledged plaintiff's appeal. *I-7*. By letter dated April 5, 2007, defendant stated that it had too great a volume of requests to timely reply. *I-8*. Thus, defendant made no effort to comply with the request or even assert exemptions for three months, until plaintiff filed an administrative appeal, which then starts a new cycle of delay.[10]

Plaintiff faxed yet another FOIA request to the Bureau of Indian Affairs ("BIA") on December 22, 2006, again requesting expedited processing. *Exhibit J at J1*. BIA acknowledged the request by letter dated on January 11, 2007. *J3*. By fax dated January 17, 2007, plaintiff appealed BIA's failure to respond to the request for expedited processing within the time allowed. *J4*. By fax dated February 2, 2007, plaintiff provided proof

---

[10] Plaintiff received a phone call from the OIG on or about April 6, 2007, explaining the real reasons for the delay, which have nothing to do with an excessive volume of requests, as claimed by the defendant's FOIA officer, but because the requested investigatory report was still incomplete. Plaintiff appreciates OIG's frank and helpful, though sadly belated communication, not least because it puts the lie to defendant's ritual explanation that it can't respond because it has too many requests.

requested by defendant that the FOIA request had indeed been received

when claimed, and at the same time plaintiff appealed the constructive

denial of the request. *J5*.

By letters dated February 15, 2007, BIA stated the requested records

were not in its possession, except for a single document that it sent. *J6&7*.

On February 20, 2007, not having received the referenced document,

plaintiff again appealed the denial, "on grounds of *43 C.F.R. 2.28(a)(1), (2),*

*(3), (4), (5), and (7)*." *J9*. By fax dated February 22, 2007, plaintiff

clarified that since receiving the referenced document "my appeal stands,

with particular regard to *43 C.F.R. 2.28(a)(2)*." *J10*.[11]

By letter dated March 28, 2007, the FOIA appeals officer notified

plaintiff that he allegedly "did not articulate with any specificity which

provision of 43 C.F.R. § 2.28(a)(2) you are appealing," and that "Because

---

[11] Plaintiff's FOIA request to BIA sought documents that the BIA had either
"provided to" or "received from" the OIG since April 22, 2005 that relate to
plaintiff's allegations of BIA gross mismanagement of Indian leases at the
Palm Springs Agency. In response, the only document produced by BIA
was a copy of a 1992 OIG audit of BIA, that was "telefaxed" to BIA by OIG
on November 2, 2006. BIA's artfully-worded cover letter stated that "We
could not locate records **sent to** OIG by the BIA since April 22, 2005."
(Emphasis added.) The FOIA request was for records "provided" not "sent",
and since the OIG officials conducted their interviews with BIA officials in
person, it is very likely documents were "provided to" OIG for its review but
not "sent to" OIG. This suspicion is further fueled by a February 15, 2007
letter sent to Senator Barbara Boxer by the OIG, stating, *inter alia*, that the
OIG had "interviewed BIA officials" and "reviewed all pertinent
documents." *Appendix Exhibit K at K1-2*.

the Department cannot determine the basis of your appeal, your February 22,

2007, letter cannot be accepted for processing as a FOIA appeal at this

time." *J11*. The regulation at issue permits an appeal when:

> The Bureau informs you that you have not adequately described
> the records you are seeking, or that it does not possess
> responsive records and you have reason to believe it does or
> you question the adequacy of the bureau's search for responsive
> records.

*43 C.F.R. 2.28(a)(2)*.

Significantly, none of the BIA's response letters, copies of which

were included with plaintiff's appeal, suggested in any fashion that the

request was not sufficiently clear.  Therefore, even if one could argue that

the appeal had been narrowed to grounds contained in *43 C.F.R. 2.28(a)(2)*,

the FOIA Appeals Officer's rejection of the appeal can only be understood

as yet another cynical ploy in the service of Interior's long-standing policy

and practice of denying FOIA requests and withholding information in the

face of all requests and appeals, and forcing the requester either to give up in

frustration or go to the further considerable expense and effort of litigation.[12]

---

[12] Defendant's continuing refusal to acknowledge or disclose evidence of its
gross mismanagement, even at this late date, is consistent with earlier
denials and withholding of information on this topic. *See, e.g., Appendix
Exhibit E at E10*, wherein four high-level agency officials all swear under
oath that "the OIG, OSC, Assistant Secretary of Indian Affairs, the BIA and
the Solicitor have all reached a similar determination: that it cannot agree
with the conclusions drawn by appellant that such mismanagement is
factually occurring."  This declaration was made even as defendant

**H.    Conclusion.**

So pervasive is defendant's unlawful policy and practice of denying and withholding information, that sometimes even the FOIA Appeals Officer – who routinely implements this policy - is herself seemingly stunned by the extent of the agency's stonewalling.  In a February 23, 2007, letter to plaintiff, with copies to the Solicitor's FOIA Officer, Associate Solicitor for Administration, and Chief Information Officer, the FOIA Appeals Officer expresses deep frustration with the **Solicitor's refusal to explain even to the Appeals Officer** why it wouldn't respond to plaintiff's FOIA request!  *Appendix Exhibit L.*

Thus, Plaintiff respectfully requests entry of judgment as follows:

1.  A Declaratory Judgment that DOI is in violation of the FOIA and the Privacy Act;

2.  Injunctive relief requiring defendant to immediately expedite production of all records requested by Plaintiff with all fees waived.

3.  Judgment enjoining defendant's policy of arbitrary and capricious denials of plaintiff's requests at the level of initial and administrative appeals, where the information must ultimately be provided.

---

suppressed documentary proof of such mismanagement.  Fortunately, the truth will come out, eventually.  *See, e.g., Exhibit K at K3-4* (news articles concerning OIG investigation of BIA mismanagement).

4. Judgment that DOI's intentional or willful violations of the Privacy Act resulted in adverse effects on Plaintiff for which Plaintiff is entitled to damages pursuant to *5 U.S.C. § 552(g)(1)(D),* including compensation for mental distress, embarrassment, and emotional trauma; lost earnings and opportunities to obtain alternative employment; harm to his reputation; and expenses of responding to retaliatory personnel actions sustained by DOI's refusal to release the requested records;

5. Declaratory Judgment that circumstances surrounding the improper withholding of the requested information raise questions whether DOI personnel acted arbitrarily or capriciously with respect to the withholding;

6. Judgment that plaintiff is entitled to all costs and fees related to this action;

7. Judgment for such further relief as deemed just by this court.

## VERIFIED

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4-16-07

Date

Robert J. McCarthy, *pro se*
78715 La Palma Drive
La Quinta CA 92253

760-416-8619 (phone)
760-416-8719 (fax)

45

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Motion for Summary Judgment and Appendix was made by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Sherease Louis
Special Assistant United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington , D.C. 20530

_____April 16 2007_____        Robert J. McCarthy, Pro Se
                                 78715 La Palma Drive
                                 La Quinta CA 92253

                                 760-416-8619 (phone)
                                 760-416-8719 (fax)

# APPENDIX
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Exhibit A.   DOI FOIA Response by letter dated March 30, 2007.

Exhibit B.   DOI Privacy Act Response by letter dated March 16, 2007.

Exhibit C.   Plaintiff's DOI Personnel File, received on March 26, 2007 (performance awards).

Exhibit D.   Plaintiff's DOI Personnel File, received on March 26, 2007 (performance ratings).

Exhibit E:   Defendant's MSPB closing brief with sworn declarations

Exhibit F:   Defendant's initial sworn MSPB discovery responses.

Exhibit G:   Defendant's sworn discovery responses produced in response to MSPB order on motion to compel.

Exhibit H:   Plaintiff's Supplemental Citations Re. Sanctions filed with the MSPB on October 24, 2006

Exhibit I:   Plaintiff's FOIA Request to Interior's Office of Inspector General and Defendant's denial.

Exhibit J:   Plaintiff's FOIA Request to Interior's Bureau of Indian Affairs and Defendant's denial.

Exhibit K:   OIG letter to Senator Barbara Boxer dated February 15, 2007.

Exhibit L:   Letter to plaintiff from FOIA Appeals Officer, dated February 23, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT J. MCCARTHY, *Pro Se*   )
                                  )
        Plaintiff,         )   Civil Action No. 07-0401 (PLF)
                                  )
    v.                     )
                                  )
UNITED STATES DEPARTMENT  )
OF THE INTERIOR             )
                                  )
        Defendant.       )
                                  )

## **PLAINTIFF'S PROPOSED ORDER FOR SUMMARY JUDGMENT**

The Court hereby grants Plaintiff's Motion for Summary Judgment on all four counts of the Complaint, and the Court hereby enters declaratory and injunctive relief as follows:

1. The Court finds that Defendant is in violation of the Freedom of Information Act (FOIA) and the Privacy Act;

2. Defendant shall immediately expedite production of all records requested by Plaintiff with all fees waived.

3. The Court finds that Defendant has implemented an unlawful policy of arbitrary and capricious denials of plaintiff's requests at the level of initial and administrative appeals, where the information must ultimately be provided, and such policy is hereby permanently enjoined;

4. The Court finds that Defendant's intentional or willful violations of the Privacy Act resulted in adverse effects on Plaintiff for which Plaintiff is entitled to damages pursuant to *5 U.S.C. § 552(g)(1)(D),* including compensation for mental distress, embarrassment, and emotional trauma; lost earnings and opportunities to obtain alternative employment; harm to his reputation; and expenses of responding to retaliatory personnel actions sustained by Defendant's refusal to release the requested records;

5. The Court finds that circumstances surrounding the improper withholding of the requested information raise questions whether the Defendant's personnel acted arbitrarily or capriciously with respect to the withholding;

6. Defendant shall within 10 days after entry of this Judgment forward a copy thereof to the Office of Special Counsel, which shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officers or employees who were primarily responsible for the withholding.

7. The Court finds that Plaintiff is entitled to all costs and fees related to this action;

8. Within 60 days after entry of this Judgment, Plaintiff shall file with the Court and serve on Defendant a Statement of Plaintiff's claimed

damages, costs and fees related to this action; the Defend...

days thereafter file any objections to said Statement; within 20 d...

service of any such objections on Plaintiff, Plaintiff shall file a respon...

the objections; the Court will enter further orders as necessary to determine

the amount of damages, costs and fees to be paid by Defendant; to the extent

not inconsistent with this order, LCVR 54.1 shall also apply.

    9. The Court shall retain jurisdiction for enforcement of all aspects of

this Judgment.

    It is so Ordered this ___ day of _____ , 2007.


_____

Judge Paul L. Friedman

PARTIES / ATTORNEYS ENTITLED TO BE NOTIFIED OF ENTRY OF
ORDER


Sherease Louis
Special Assistant United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington , D.C. 20530

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253



# United States Department of the Interior

### OFFICE OF THE SOLICITOR

March 30, 2007

Robert J. McCarthy
78715 La Palma Drive
LaQuinta, CA   92253

Dear Mr. McCarthy:

On December 4, 2006, you filed Freedom of Information Act ("FOIA") request SOL-2007-0006 with the Office of the Solicitor (the "Office") seeking the following:

1.  Documents that identify each and every attorney position within the Office of the Solicitor that has been filled by transfer, promotion or other hiring process since April 20, 2005, including information that identifies each such position by title, location and grade at which it was filled or is currently open, date the position became open, the date it was filled, the manner in which it was filled (i.e., transfer, promotion, new hire, etc.), and the identity of the person who filled the position.
2.  Documents that identify each and every attorney position within the Office of the Solicitor that has been identified as vacant since April 20, 2005 and that remains vacant as of this date, that describe the position by title, location and grade, and that indicate the date the position became open.
3.  Documents that identify each and every award given to an attorney in the Office of the Solicitor since April 20, 2005; that identify the title of each award; the monetary or other benefits bestowed with the awards; the individual and the agency that nominated and / or bestowed the award; the attorney who received the award; and the position of each such attorney by title, location and grade.
4.  Documents that identify the Numeric Summary Rating given to each attorney employee of the Office of the Solicitor on his or her most recent performance appraisal after April 20, 2005, but before September 30, 2006; that indicate for each such rating, the information by Division, Regional, or Field Office, by grade of the employee, and that identify any such employees who are management (i.e. Associate Solicitor, Assistant Solicitor, Regional Solicitor, Deputy Regional Solicitor, Associate Regional Solicitor, Assistant Regional Solicitor, Field Solicitor, etc.).

On March 21, 2007, in a telephone conversation with Sherease Louis, Special Assistant United States Attorney, Department of Justice, and Cindy Cafaro, Attorney-Adviser, Department of the Interior, you agreed to limit the scope of the third and fourth elements of your request.

For the third element of your request, you agreed to accept, as fully responsive to your request, a list of each and every award given to an attorney in the Office since April 20, 2005; showing the title of each award; the monetary or other benefits bestowed with the awards; and whether the recipient of the award was a supervisory or nonsupervisory attorney.

A·1

For the fourth element of your request, you agreed to accept, as fully responsive to your request, a list of the Numeric Summary Rating given to each attorney employee of the Office on his or her most recent performance appraisal after April 20, 2005, but before September 30, 2006.

We will respond to each element of your request in turn.

For Element 1 of your request, the Office does not have a mechanism to track attorney vacancies. When an attorney leaves, the position is deemed to have reverted to the Solicitor, and offices must justify requests to hire. Attached are the following lists that provide substantial portions of the requested data:

- Attorney Movement Into Different Organization Codes. This report shows personnel actions involving movement of attorneys already in the Office from one organizational unit (headquarters branch, field or regional office) to another, and from other parts of the Department into the Office.
- Attorney Promotions. All attorney promotions, including temporary promotions and movement into Senior Executive Service (SES) positions.
- Attorney Appointments. All attorney accessions by appointment.
- Appointments and Promotions Now Pending. Personnel actions that have been approved by the Solicitor or other management officials and submitted to the servicing human resources office for processing.

When reviewing the above-mentioned lists, please note that all lists are based on actions taken since April 20, 2005, and the following terms are used in the lists:

- Noa Narr 1: the nature of action, which is the official term for the personnel action taken
- Reassignment: movement from one position to another at the same grade
- Promotion: movement from one position to another at a higher grade
- Promotion NTE *D*: temporary promotion
- Conv: Conversion to a different appointment; e.g., from an appointment with a time limit to a permanent appointment, or from an excepted service appointment to SES
- Exc Appt: Excepted Service appointment; the type of appointment held by most attorneys
- Exc Appt NTE *D*: Excepted service with an appointment limitation, i.e., an appointment Not to Exceed date
- Sub Bur: each Division and Region is assigned a unique sub bureau code; codes 01 through 08 are headquarters organizations, all others are field
- Org: each branch and field office is assigned a unique organizations codes; codes beginning with 901 through 908 are headquarters, all others are field
- Org from: the organization code of the employee prior to the action being reported; codes beginning with numbers others than 90 indicate employee came from within the Department, but outside the Office
- Supv Status: each position is assigned a code indicating its supervisory status: 2 = supervisor or manager; 7 = team leader; 8 = nonsupervisor
- Duty Station Desc: the employee's official duty station.

A - 2

Also responsive to Element 1 of your request is the following information, a list of positions that the Solicitor has authorized to be filled:

- Deputy Associate Solicitor, Mineral Resources (SES)
- Non-permanent staff attorney positions in Denver, Cheyenne, Salt Lake City, Albuquerque, San Francisco, and Washington, D.C, Division of General Law. Advertised grades are generally GS-12, GS-13, and GS-14.

For Element 2 of your request, as discussed above, the Office does not maintain documents that identify attorney positions as "vacant." Therefore, we are unable to provide a response to this element of your request.

For Element 3 of your request, in accordance with the amended scope of this element, we have provided two tables, which provide identical information in different formats. Each table lists each and every award given to an attorney in the Office since April 20, 2005; showing the title of each award; the monetary or other benefits bestowed with the awards; and whether the recipient of the award was a supervisory or nonsupervisory attorney.

For Element 4 of your request, in accordance with the amended scope of this element, we have provided a list of the Numeric Summary Rating given to each attorney employee of the Office on his or her two most recent performance appraisals (i.e., for the rating periods ending December 31, 2005, and September 30, 2006).

Additionally, we note that in response to your December 4, 2006 Privacy Act request, SOL-2007-0012, a copy of all documents contained in your Official Personnel Folder (OPF) that were created or added to your OPF after April 20, 2005, was sent to you via Federal Express on March 23, 2007.

As an other-use requester, you are entitled to 2 hours of search time, as well as 100 pages of duplication, before incurring FOIA processing fees. Additionally, as a matter of policy, the Department does not charge FOIA processing fees when the amount is below $30.00, because the cost of collection would exceed the amount collected. After considering your entitlements, your FOIA processing fees would be less than $30.00. Therefore, there is no fee for the processing of this request.

If you have any questions concerning the response to these requests, please contact Ms. Cafaro at 202-208-5216.

Sincerely,

Jack M. Hirsch
Personnel Liaison
Division of Administration
Office of the Solicitor

A-3

Attorney Movement Into Different Organization Code

| Noa Narr 1 | Name | Position Title Opm | Date Effective | Sub Bur | Org From | Org | Supv Status | Pay Plan | Grade | Duty Station Desc |
|---|---|---|---|---|---|---|---|---|---|---|
| REASSIGNMENT | LARVIE, VERONICA I. | ATTORNEY - ADVISER (GENERAL) | Jun-12-05 | 06 | 90780 | 90680 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | MORRIS, EMILY DENHAM | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 03 | 90110 | 90340 | 8 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | CARLS, ELIZABETH R. | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 06 | 90110 | 90680 | 8 | GS | 11 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | ROWAN, VERONICA | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 15 | 90110 | 90950 | 8 | GS | 11 | SACRAMENTO,SACRAMENTO,CALIFORNIA |
| REASSIGNMENT | SMITH,JR.,MARK RODNEY | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 06 | 90110 | 90680 | 8 | GS | 11 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | KLEVEN, ARTHUR R. | ATTORNEY - ADVISOR (GENERAL) | Aug-07-05 | 12 | 90110 | 90921 | 8 | GS | 11 | DENVER,DENVER,COLORADO |
| REASSIGNMENT | CORR, KATHLEEN S. | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 03 | 90110 | 90340 | 8 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | BACA GREEN, TONIANNE L. | ATTORNEY - ADVISER (GENERAL) | Aug-21-05 | 08 | 90990 | 90800 | 8 | GS | 14 | ALBUQUERQUE,BERNALILLO,NEW MEXICO |
| REASSIGNMENT | VAUGHN, GRANT L. | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 11 | 90990 | 90911 | 8 | GS | 15 | SALT LAKE CITY,SALT LAKE,UTAH |
| PROMOTION | SIMPSON, STEPHEN L. | SUPV ATTORNEY-ADVISOR (GENERAL) | Oct-30-05 | 02 | 90240 | 90260 | 2 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | BERNHARDT, DAVID L. | DEPUTY SOLICITOR | Nov-09-05 | 01 | 10000000 | 90100 | 2 | ES | 00 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | MATTIX, CARLA C. | ATTORNEY - ADVISER (GENERAL) | Nov-13-05 | 04 | 90410 | 90412 | 8 | GS | 14 | SANTA FE,SANTA FE,NEW MEXICO |
| REASSIGNMENT | SMITH,JR.,MARK RODNEY | ATTORNEY-ADVISER (GENERAL) | Jan-03-06 | 06 | 90630 | 90632 | 8 | GS | 12 | SALT LAKE CITY,SALT LAKE,UTAH |
| REASSIGNMENT | KLUNDT, SCOTT A. | ATTORNEY-ADVISER (GENERAL) | Jan-08-06 | 06 | 90630 | 90631 | 8 | GS | 14 | LAKEWOOD,JEFFERSON,COLORADO |
| REASSIGNMENT | SPECTOR, RACHEL | ATTORNEY-ADVISER (GENERAL) | Feb-05-06 | 02 | 90250 | 90260 | 7 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | LINDQUIST, KAREN E. | ATTORNEY-ADVISER (GENERAL) | Feb-05-06 | 02 | 90240 | 90260 | 7 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION NTE "D" | WISEMAN, MARIA K. | ATTORNEY-ADVISER (GENERAL) | Feb-05-06 | 02 | 90240 | 90260 | 7 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION NTE "D" | ANSTY, MARTHA F. | ATTORNEY-ADVISER (GENERAL) | Feb-19-06 | 13 | 90930 | 999301 | 8 | GS | 14 | ESSEX JUNCTION,CHITTENDEN,VERMONT |
| REASSIGNMENT | SCHOESSLER, MICHAEL A. | ATTORNEY-ADVISER (GENERAL) | Apr-16-06 | 14 | 90990 | 90940 | 8 | GS | 14 | PORTLAND,CLACKAMAS,OREGON |
| REASSIGNMENT | SPECTOR, RACHEL | ATTORNEY-ADVISER (GENERAL) | May-14-06 | 03 | 90260 | 90340 | 8 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | VERBURG, KATHERINE OTT | SUPERVISORY ATTORNEY - ADVISOR | May-14-06 | 11 | 90912 | 90913 | 2 | GS | 15 | PHOENIX,MARICOPA,ARIZONA |
| DETAIL NTE "D" | HAWBECKER, HALE W. | ATTORNEY-ADVISER (GENERAL) | Jun-26-06 | 03 | 90120 | 90340 | 8 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | MORRIS, EMILY DENHAM | ATTORNEY-ADVISER (GENERAL) | Aug-20-06 | 07 | 90340 | 90710 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | WILLIAMS, PAMELA SUE | ATTORNEY-ADVISER (GENERAL) | Oct-01-06 | 02 | 90210 | 90211 | 8 | GS | 15 | PHOENIX,MARICOPA,ARIZONA |
| REASSIGNMENT | FONDREN, KIMBERLY L. | ATTORNEY-ADVISER (GENERAL) | Oct-01-06 | 04 | 90410 | 90430 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | HALVARSON, TOBIAS D. | ATTORNEY-ADVISER (GENERAL) | Oct-15-06 | 02 | 90240 | 90260 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | BRANDON, ELISABETH C. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90250 | 90260 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | GOODWIN, JANET A. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90250 | 90260 | 8 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | BLASER, THOMAS A. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90240 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |

A-4

Attorney Movement Into Different Organization Code

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| REASSIGNMENT | CASSIDY, AMANDA A. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90250 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | RICE, JEAN E. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90240 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | MORAN, DAVID | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90200 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | BARTMAN, THOMAS | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90240 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | KELSEY, ANGELA M. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90240 | 90260 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | RIEL, BRENDA E. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90250 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | KEARNS, THOMAS B. | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 02 | 90250 | 90260 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| REASSIGNMENT | JENSEN, LAWRENCE J. | DEPUTY SOLICITOR | Dec-10-06 | 01 | 90911 | 90100 | 2 | ES | 00 | SALT LAKE CITY,SALT LAKE,UTAH |

A-5

## Attorney Promotions

| Noa Narr 1 | Name | Position Title Opm | Date Effective | Sub Bur | Org From | Org | Supv Status | Pay Plan | Grade | Duty Station Desc |
|---|---|---|---|---|---|---|---|---|---|---|
| PROMOTION | SAHLBERG, RAY B. | ATTORNEY - ADVISOR (GENERAL) | May-01-05 | 06 | 90630 | 90630 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | MILLER JR, ROBERT C. | ATTORNEY - ADVISOR (GENERAL) | May-01-05 | 14 | 90941 | 90941 | 8 | GS | 14 | BOISE,ADA,IDAHO |
| PROMOTION | CARLUCCI, JOHN | ATTORNEY - ADVISOR (GENERAL) | May-15-05 | 04 | 90440 | 90440 | 8 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | BLANK, HARVEY P. | ATTORNEY - ADVISOR (GENERAL) | May-15-05 | 07 | 90730 | 90730 | 8 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | BRECKINRIDGE, JOSEPH CABE | ATTORNEY - ADVISOR (GENERAL) | Jun-12-05 | 02 | 90210 | 90210 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | CAFARO, CINDY SINGER | ATTORNEY - ADVISOR (GENERAL) | Jul-10-05 | 03 | 90340 | 90340 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | PERRON, BRIAN J. | ATTORNEY-ADVISER (GENERAL) | Jul-24-05 | 14 | 90940 | 90940 | 8 | GS | 14 | PORTLAND,CLACKAMAS,OREGON |
| PROMOTION | BAKAYZA, KELLY B. | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 13 | 90931 | 90931 | 8 | GS | 14 | PITTSBURGH,ALLEGHENY,PENNSYLVANIA |
| PROMOTION | THOMAS, SUSANNAH | ATTORNEY-ADVISER (GENERAL) | Aug-07-05 | 11 | 90911 | 90911 | 8 | GS | 13 | SALT LAKE CITY,SALT LAKE,UTAH |
| PROMOTION | HALVARSON, TOBIAS D. | ATTORNEY - ADVISER (GENERAL) | Oct-02-05 | 02 | 90240 | 90240 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | MORRIS, EMILY DENHAM | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 03 | 90340 | 90340 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | SMITH JR, MARK RODNEY | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 06 | 90630 | 90630 | 8 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | MISH, STEPHEN C. | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 12 | 90921 | 90921 | 8 | GS | 13 | LAKEWOOD,JEFFERSON,COLORADO |
| PROMOTION | CORR, KATHLEEN S. | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 03 | 90340 | 90340 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | CARLS, ELIZABETH R. | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 06 | 90680 | 90680 | 8 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | ROWAN, VERONICA | ATTORNEY-ADVISER (GENERAL) | Oct-02-05 | 15 | 90950 | 90950 | 8 | GS | 12 | SACRAMENTO,SACRAMENTO,CALIFORNIA |
| PROMOTION | KLINE, PHILIP G. | ATTORNEY-ADVISER (GENERAL) | Oct-16-05 | 04 | 90430 | 90430 | 8 | GS | 14 | TUCSON,PIMA,ARIZONA |
| PROMOTION | SOSIN, AMY B. | ATTORNEY-ADVISER (GENERAL) | Oct-30-05 | 06 | 90680 | 90680 | 8 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | KLEVEN, ARTHUR R. | ATTORNEY-ADVISER (GENERAL) | Oct-30-05 | 12 | 90921 | 90921 | 8 | GS | 12 | DENVER,DENVER,COLORADO |
| PROMOTION | SIMPSON, STEPHEN L. | SUP'V ATTORNEY-ADVISOR (GENERAL) | Oct-30-05 | 02 | 90260 | 90260 | 2 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | CHANDLER, LORETTA V. | ATTORNEY-ADVISER (GENERAL) | Dec-11-05 | 12 | 90922 | 90922 | 8 | GS | 14 | BILLINGS,YELLOWSTONE,MONTANA |
| PROMOTION | UMSHLER, SUE E. | ATTORNEY-ADVISER (GENERAL) | Jan-08-06 | 19 | 90990 | 90990 | 8 | GS | 14 | ALBUQUERQUE,BERNALILLO,NEW MEXICO |
| PROMOTION NTE 'D' | LINDQUIST, KAREN E. | ATTORNEY-ADVISER (GENERAL) | Feb-05-06 | 02 | 90240 | 90260 | 7 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION NTE 'D' | WISEMAN, MARIA K. | ATTORNEY-ADVISER (GENERAL) | Feb-05-06 | 02 | 90260 | 90260 | 7 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | LIND, GREGORY B. | ATTORNEY-ADVISER (GENERAL) | Mar-05-06 | 15 | 90951 | 90951 | 8 | GS | 14 | OAKLAND,ALAMEDA,CALIFORNIA |
| PROMOTION | DONEY, JOHN C. | ATTORNEY-ADVISER (GENERAL) | Apr-02-06 | 11 | 90913 | 90913 | 8 | GS | 14 | BOULDER CITY,CLARK,NEVADA |
| PROMOTION | ROTHEMICH, PERRI S. | ATTORNEY-ADVISER (GENERAL) | Apr-02-06 | 03 | 90360 | 90360 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | BLASER, THOMAS A. | ATTORNEY-ADVISER (GENERAL) | Apr-16-06 | 02 | 90240 | 90240 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | DAY, JOANNA CITRON | ATTORNEY-ADVISER (GENERAL) | May-14-06 | 06 | 90690 | 90690 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | VIRCHIS, BRIDGET NMN | ATTORNEY-ADVISER (GENERAL) | May-14-06 | 02 | 90230 | 90230 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | ROBERTS, JASON C. | ATTORNEY - ADVISOR (GENERAL) | Jun-25-06 | 02 | 90220 | 90220 | 8 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | WILSON, FRANK SAMPSON | SUPV ATTORNEY ADVISER | Jul-23-06 | 02 | 90940 | 90940 | 2 | GS | 15 | PORTLAND,MULTNOMAH,OREGON |

A-6

Attorney Promotions

| Action | Name | Title | Date | | | | | | | Location |
|---|---|---|---|---|---|---|---|---|---|---|
| CONV TO SES CAREER APPT | JOHNSON, LYNN A. | REGIONAL SOLICITOR | Jul-23-06 | 19 | 90681 | 90990 | 2 | ES | 00 | ALBUQUERQUE,BERNALILLO,NEW MEXICO |
| PROMOTION | SMITH JR., MARK RODNEY | ATTORNEY-ADVISER (GENERAL) | Oct-01-06 | 06 | 90632 | 90632 | 8 | GS | 13 | SALT LAKE CITY,SALT LAKE,UTAH |
| CONV TO SES CAREER APPT | MYERS, RICHARD G. | REGIONAL SOLICITOR - ALASKA REGION | Oct-01-06 | 17 | 90230 | 90970 | 2 | ES | 00 | ANCHORAGE,ANCHORAGE,ALASKA |
| PROMOTION | ROWAN, VERONICA | ATTORNEY-ADVISER (GENERAL) | Oct-01-06 | 15 | 90950 | 90950 | 8 | GS | 13 | SACRAMENTO,SACRAMENTO,CALIFORNIA |
| PROMOTION | OWENS, DEREK R. | ATTORNEY-ADVISER (GENERAL) | Oct-15-06 | 15 | 90951 | 90951 | 8 | GS | 12 | OAKLAND,ALAMEDA,CALIFORNIA |
| PROMOTION | SPAULDING, JANET LEA | ATTORNEY-ADVISER (GENERAL) | Oct-15-06 | 19 | 90993 | 90993 | 8 | GS | 15 | TULSA,TULSA,OKLAHOMA |
| PROMOTION | SMITH, NATHALIE | ATTORNEY-ADVISER (GENERAL) | Oct-29-06 | 06 | 90692 | 90692 | 8 | GS | 14 | PORTLAND,CLACKAMAS,OREGON |
| PROMOTION | DUNNIGAN, KARAN L. | SUPV ATTORNEY-ADVISOR (GENERAL) | Dec-24-06 | 12 | 90922 | 90922 | 8 | GS | 15 | BILLINGS,YELLOWSTONE,MONTANA |
| PROMOTION NTE "D" | QUINN JR., WILLIAM W. | SUPV ATTORNEY-ADVISOR(GENERAL) | Jan-07-07 | 11 | 90912 | 90912 | 8 | GS | 15 | PHOENIX,MARICOPA,ARIZONA |
| PROMOTION | THOMAS, SUSANNAH | ATTORNEY-ADVISER (GENERAL) | Jan-21-07 | 11 | 90911 | 90911 | 8 | GS | 14 | SALT LAKE CITY,SALT LAKE,UTAH |
| PROMOTION | KLEVEN, ARTHUR R. | ATTORNEY-ADVISER (GENERAL) | Jan-21-07 | 12 | 90921 | 90921 | 8 | GS | 13 | LAKEWOOD,JEFFERSON,COLORADO |
| PROMOTION | COSTENBADER, KATHARINE M. | ATTORNEY-ADVISER (GENERAL) | Feb-04-07 | 13 | 90930 | 90930 | 8 | GS | 14 | NEWTON,MIDDLESEX,MASSACHUSETTS |
| PROMOTION | KOEHLER, S. AMANDA | ATTORNEY-ADVISER (GENERAL) | Feb-04-07 | 12 | 90921 | 90921 | 8 | GS | 14 | LAKEWOOD,JEFFERSON,COLORADO |
| PROMOTION | WENGER, LANCE C. | ATTORNEY-ADVISER (GENERAL) | Feb-18-07 | 13 | 90932 | 90932 | 8 | GS | 14 | LAKEWOOD,JEFFERSON,COLORADO |
| PROMOTION | WASHBURN, ELIZABETH R. | ATTORNEY-ADVISER (GENERAL) | Mar-18-07 | 19 | 90993 | 90993 | 8 | GS | 15 | FORT SNELLING,HENNEPIN,MINNESOTA |
| PROMOTION | STEINMETZ, MARTIN R. | ATTORNEY-ADVISER (GENERAL) | Mar-18-07 | 03 | 90350 | 90350 | 8 | GS | 15 | TULSA,TULSA,OKLAHOMA |
| PROMOTION | BUCKLEY JR., WILLIAM F. | ATTORNEY-ADVISER (GENERAL) | Mar-18-07 | 06 | 90680 | 90680 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | CARLS, ELIZABETH R. | ATTORNEY-ADVISER (GENERAL) | Mar-18-07 | 03 | 90350 | 90350 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | ACOSTA, ARMANDO J. | ATTORNEY-ADVISER (GENERAL) | Mar-18-07 | 03 | 90350 | 90350 | 8 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| PROMOTION | BERGSTROM, SCOTT ALLEN | ATTORNEY-ADVISER (GENERAL) | Mar-18-07 | 02 | 90210 | 90210 | 2 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |

A 7

## Attorney Appointments

| Noa Narr 1 | Name | Position Title Opm | Date Effective | Sub Bur | Org | Pay Plan | Grade | Duty Station Desc |
|---|---|---|---|---|---|---|---|---|
| EXC APPT NTE "D" | WASHBURN, ELIZABETH R. | ATTORNEY - ADVISOR (GENERAL) | May-03-05 | 13 | 90932 | GS | 13 | FORT SNELLING,HENNEPIN,MINNESOTA |
| EXC APPT | LARSON, KEITH R. | ATTORNEY - ADVISOR (GENERAL) | May-15-05 | 03 | 90360 | GS | 14 | SIERRA VISTA,COCHISE,ARIZONA |
| SES NONCAREER | HARRIS, JAMES D. | ASSOC SOLICITOR-MINERAL RESOURCES | Jul-05-05 | 04 | 90400 | ES | 00 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | DOMENICO, DANIEL D. | SPECIAL ASSISTANT TO THE SOLICITOR | Jul-24-05 | 01 | 90100 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| SES NONCAREER | VERHEY, DAVID M | ASSOC SOLICTOR-PARKS & WILDLIFE | Jul-24-05 | 04 | 90400 | ES | 00 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT NTE "D" | OWENS, DEREK R. | ATTORNEY - ADVISOR (GENERAL) | Oct-06-05 | 15 | 90951 | GS | 11 | OAKLAND,ALAMEDA,CALIFORNIA |
| EXC APPT NTE "D" | BUTTOLPH, KATHERINE NMN | ATTORNEY-ADVISER (GENERAL) | Oct-11-05 | 13 | 90930 | GS | 13 | NEWTON,MIDDLESEX,MASSACHUSETTS |
| EXC APPT NTE "D" | CONTRACTOR, RATNA M. | ATTORNEY-ADVISER (GENERAL) | Dec-11-05 | 12 | 90921 | GS | 13 | DENVER,DENVER,COLORADO |
| EXC APPT | ACOSTA, ARMANDO J. | ATTORNEY-ADVISER (GENERAL) | Jan-22-06 | 03 | 90350 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | LEE, PAULA R. | ATTORNEY-ADVISER (GENERAL) | Feb-05-06 | 15 | 90951 | GS | 14 | OAKLAND,ALAMEDA,CALIFORNIA |
| EXC APPT NTE "D" | GAUDIO, JOHN L. | ATTORNEY - ADVISOR (GENERAL) | Feb-05-06 | 19 | 90992 | GS | 14 | SANTA FE,SANTA FE,NEW MEXICO |
| SES NONCAREER | ARTMAN III, CARL J. | ASSOCIATE SOLICITOR - INDIAN AFFAIRS | Feb-27-06 | 02 | 902000 | ES | 00 | WASHINGTON,DISTRICT OF COLUMBIA |
| SES NONCAREER | SUAREZ PAWLICKI, EMMA T. | ASSOC SOLICITOR - LAND & WATER RESOU | Mar-05-06 | 06 | 90600 | ES | 00 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | BUCKLEY JR., WILLIAM F. | ATTORNEY - ADVISOR (GENERAL) | Mar-19-06 | 03 | 90350 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | WOLPERT, CHRISTOPHER M. | ATTORNEY - ADVISOR (GENERAL) | Apr-02-06 | 19 | 90990 | GS | 13 | ALBUQUERQUE,BERNALILLO,NEW MEXICO |
| EXC APPT | ANDERS, BRUCE F. | ATTORNEY-ADVISER (GENERAL) | May-22-06 | 17 | 90970 | GS | 13 | ANCHORAGE,ANCHORAGE,ALASKA |
| EXC APPT NTE "D" | TERRY, GARTH E. | ATTORNEY-ADVISER (GENERAL) | May-28-06 | 19 | 90990 | GS | 14 | ALBUQUERQUE,BERNALILLO,NEW MEXICO |
| EXC APPT | FOX, MATTHEW E. | ATTORNEY-ADVISER (GENERAL) | Jun-11-06 | 07 | 90730 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | WOODWORTH, THOMAS C. | ATTORNEY-ADVISER (GENERAL) | Jun-11-06 | 07 | 90780 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT NTE "D" | PATRICK, TERESA L. | SUPERVISORY ATTORNEY-ADVISER | Jun-14-06 | 19 | 90990 | GS | 15 | ALBUQUERQUE,BERNALILLO,NEW MEXICO |
| EXC APPT | COJOCARI, GLADYS I. | ATTORNEY-ADVISER (GENERAL) | Aug-20-06 | 02 | 90260 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT NTE "D" | HALL, ROBERT E. | ATTORNEY-ADVISER (GENERAL) | Sep-03-06 | 02 | 90210 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | BECK, CANDACE N. | ATTORNEY-ADVISER (GENERAL) | Sep-17-06 | 02 | 90260 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | GUGINO, R. PAUL | SPEC ASST TO THE SOLICITOR | Sep-17-06 | 01 | 90100 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT NTE "D" | PARKHURST, EMILY E. | ATTORNEY - ADVISOR (GENERAL) | Oct-15-06 | 03 | 90360 | GS | 12 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | FROZENA, JENNIFER L. | ATTORNEY - ADVISOR (GENERAL) | Nov-07-06 | 02 | 90212 | GS | 14 | PORTLAND,MULTNOMAH,OREGON |
| EXC APPT | HINTZ, KIMBERLY | ATTORNEY - ADVISOR (GENERAL) | Nov-26-06 | 01 | 90120 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | HORNER, AMY L. | ATTORNEY - ADVISOR (GENERAL) | Dec-10-06 | 04 | 90440 | GS | 13 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | DERWART, MELISSA B. | ATTORNEY - ADVISOR (GENERAL) | Jan-07-07 | 06 | 90690 | GS | 14 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT NTE "D" | GIERYIC, MICHAEL S. | ATTORNEY-ADVISER (GENERAL) | Feb-04-07 | 17 | 90970 | GS | 14 | ANCHORAGE,ANCHORAGE,ALASKA |
| SES NONCAREER | FABER, ROBERT C. | ASSOC SOL-PARKS & WILDLIFE | Mar-02-07 | 04 | 90400 | ES | 00 | WASHINGTON,DISTRICT OF COLUMBIA |
| EXC APPT | MCDONNELL, EDWARD F. | ATTORNEY-ADVISER (GENERAL) | Mar-04-07 | 01 | 90120 | GS | 15 | WASHINGTON,DISTRICT OF COLUMBIA |

A - 8

Appointments and Promotions Now Pending in Personnel/Payroll System

**1 IMMED OFC OF SOLICITOR**

| Transaction Nbr | Date Eff Proposed | Org | Action | Name-Posn | | Duty Sta |
|---|---|---|---|---|---|---|
| 2007-0759004 | 3/22/2007 | 90130 | APPOINTMENT (TEMPORARY) - Mar-31-2009 | PORTER, JAMES W. - ATTORNEY-ADVISER (GENERAL) | 1 actions PP-Se-Gr/St GS-0905-12/01 - 0 | Duty Sta WASHINGTON |

**2 DIV OF INDIAN AFFAIRS**

| Transaction Nbr | Date Eff Proposed | Org | Action | Name-Posn | | Duty Sta |
|---|---|---|---|---|---|---|
| 2007-0682351 | 3/12/2007 | 90210 | PROMOTION - PROMOTION | BERGSTROM, SCOTT ALLEN - ATTORNEY-ADVISER (GENERAL) | 9 actions PP-Se-Gr/St GS-0905-15/03 - 117721 | Duty Sta WASHINGTON |
| 2007-0530293 | 1/30/2007 | 90230 | APPOINTMENT (TEMPORARY) - Jan-30-2009 | CAULUM, ANDREW S. - ATTORNEY-ADVISER (GENERAL) | GS-0905-13/01 - 0 | WASHINGTON |
| 2007-0727881 | 3/15/2007 | 90230 | APPOINTMENT (TEMPORARY) - Mar-15-2009 | DAMM, JONATHAN R. - ATTORNEY-ADVISER (GENERAL) | GS-0905-13/ - 0 | WASHINGTON |
| 2007-0682323 | 3/18/2007 | 90260 | CONV TO PERMANENT APPOINTMENT - | LINDQUIST, KAREN E. - ATTORNEY-ADVISER (GENERAL) | GS-0905-14/01 - 93822 | WASHINGTON |

**3 DIVISION OF GENERAL LAW**

| Transaction Nbr | Date Eff Proposed | Org | Action | Name-Posn | | Duty Sta |
|---|---|---|---|---|---|---|
| 2007-0731858 | 3/16/2007 | 90340 | APPOINTMENT (PERMANENT) - | ALDRICH, KATHERINE M. - ATTORNEY-ADVISER (GENERAL) | 6 actions PP-Se-Gr/St GS-0905-13/03 - 0 | Duty Sta WASHINGTON |
| 2007-0691252 | 3/12/2007 | 90350 | PROMOTION - PROMOTION | BUCKLEY JR, WILLIAM F. - ATTORNEY-ADVISER (GENERAL) | GS-0905-13/01 - 79397 | WASHINGTON |
| 2007-0697474 | 3/18/2007 | 90350 | PROMOTION - PROMOTION | ACOSTA, ARMANDO J. - ATTORNEY-ADVISER (GENERAL) | GS-0905-13/01 - 79397 | WASHINGTON |

**6 DIV LAND AND WATER RES**

| Transaction Nbr | Date Eff Proposed | Org | Action | Name-Posn | | Duty Sta |
|---|---|---|---|---|---|---|
| 2007-0691217 | 3/18/2007 | 90680 | PROMOTION - PROMOTION | CARLS, ELIZABETH R. - ATTORNEY-ADVISER (GENERAL) | 2 actions PP-Se-Gr/St GS-0905-13/01 - 79397 | Duty Sta WASHINGTON |

A - 9

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | QUALITY INC - | INDIVIDUAL TIME-OFF AWARD - | | INDIVIDUAL CASH AWARD - | | |
|---|---|---|---|---|---|---|
| | Non-supervisor | Supervisor | Non-supervisor | Non-supervisor | Team Leader | Supervisor |
| | Date Effective | Date Effective | Date Effective | Date Effective | Date Effective | Date Effective |
| $375 | Aug-09-2005 | | | Jun-15-2005 | | |
| $75 | | | | Sep-06-2005 | | Aug-22-2005 |
| $1750 | | | | Sep-06-2005 | | Sep-06-2005 |
| $4450 | | | | Sep-06-2005 | | |
| $3350 | | | | Sep-09-2005 | | |
| $9675 | | | | Oct-03-2005 | | |
| $602 | | | | Oct-03-2005 | | |
| $400 | | | | Oct-03-2005 | | Oct-03-2005 |
| $603 | | | | Oct-03-2005 | | |
| $750 | | | | Oct-03-2005 | | |
| $1350 | | | | Oct-03-2005 | | |
| $600 | | | | Oct-03-2005 | | |
| $1818 | | | | Oct-03-2005 | | |
| $675 | | | | Oct-03-2005 | | |
| $2155 | | | | Oct-03-2005 | | |
| $250 | | | | Oct-03-2005 | | |
| 30 hrs | | | Oct-04-2005 | | | |
| $810 | | | | Oct-19-2005 | | Oct-19-2005 |
| $1600 | | | | Oct-26-2005 | | |
| $3001 | | | | Oct-19-2005 | | |
| $3500 | | | | Nov-01-2005 | | Nov-01-2005 |
| $2243 | | | | Nov-07-2005 | | Nov-07-2005 |
| $2100 | | | | Nov-14-2005 | | |
| $546 | | | | | | Nov-14-2005 |
| $1001 | | | | | | |

A-10

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | QUALITY INC - Non-supervisor | INDIVIDUAL TIME-OFF AWARD - Supervisor | Non-supervisor | INDIVIDUAL CASH AWARD - Non-supervisor | Team Leader | Supervisor |
|---|---|---|---|---|---|---|
| | Date Effective | Date Effective | Date Effective | Date Effective | Date Effective | Date Effective |
| $1456 | | | | Nov-14-2005 | | |
| $819 | | | | Nov-14-2005 | | |
| 10 hrs | | Nov-15-2005 | Nov-08-2005 | | | |
| $728 | | | | Nov-21-2005 | | |
| $1010 | | | | Nov-21-2005 | | |
| $1911 | | | | Nov-21-2005 | | |
| $2500 | | | | Nov-28-2005 | | Oct-03-2005 |
| $1800 | | | | | | Jan-08-2006 |
| $7000 | | | | Nov-01-2005 | | Jan-08-2006 |
| $1200 | | | | Jul-24-2005 | | Feb-21-2006 |
| $5000 | | | | Mar-10-2006 | | Feb-21-2006 |
| $200 | | | | Mar-10-2006 | | |
| $91 | | | | Mar-10-2006 | | |
| $150 | | | | | | |
| 20 hrs | | | Mar-23-2006 | | | |
| 25 hrs | | | Mar-23-2006 | | | |
| $9090 | | | | Apr-13-2006 | | |
| $8712 | | | | Apr-13-2006 | | |
| $1820 | | | | May-26-2006 | | |
| 80 hrs | | Oct-04-2005 | Jul-24-2006 | | | |
| $4000 | | | | Sep-09-2005 | | Jul-28-2006 |
| 8 hrs | | | Jul-28-2006 | | | |
| $910 | | | | Aug-06-2006 | | Jan-18-2006 |
| $1363 | | | | Aug-06-2006 | | |
| $1825 | | | | Aug-20-2006 | | |
| 4 hrs | | | Sep-03-2006 | | | |

Page 2 of 4

A-11

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | QUALITY INC - Non-supervisor Date Effective | INDIVIDUAL TIME-OFF AWARD - Supervisor Date Effective | INDIVIDUAL TIME-OFF AWARD - Non-supervisor Date Effective | INDIVIDUAL CASH AWARD - Non-supervisor Date Effective | INDIVIDUAL CASH AWARD - Team Leader Date Effective | INDIVIDUAL CASH AWARD - Supervisor Date Effective |
|---|---|---|---|---|---|---|
| 40 hrs | | Jan-08-2006 | Sep-17-2006 | | | Oct-03-2005 |
| $500 | | | | Sep-17-2006 | | |
| $2800 | | | | Sep-17-2006 | | |
| $3636 | | | | Sep-17-2006 | | |
| $3250 | | | | Sep-17-2006 | | |
| $377 | | | | Sep-17-2006 | | |
| $925 | | | | Sep-17-2006 | | |
| $1850 | | | | Sep-17-2006 | | |
| $100 | | | | Sep-18-2006 | | |
| $900 | | | | Sep-24-2006 | | |
| $3800 | | | | Sep-24-2006 | | |
| $1272 | | | | Sep-24-2006 | | |
| $350 | | | | Sep-24-2006 | | Sep-24-2006 |
| $1860 | | | | | | Sep-24-2006 |
| $1819 | | | | Sep-24-2006 | | |
| $300 | | | | Sep-17-2006 | | |
| 16 hrs | | Sep-24-2006 | Jun-19-2006 | | | |
| $2000 | | | | Oct-03-2005 | | Sep-24-2006 |
| $650 | | | | Sep-24-2006 | | Sep-24-2006 |
| $1300 | | | | | | Nov-26-2006 |
| $455 | | | | Nov-26-2006 | | Nov-26-2006 |
| $3565 | | | | | Sep-17-2006 | Nov-01-2005 |
| $1500 | | | | Nov-26-2006 | | |
| 18 hrs | | | Nov-26-2006 | | | |
| 9 hrs | | | Nov-26-2006 | | | |
| 27 hrs | | | Nov-26-2006 | | | |

A-12

**Attorney Awards by Supervisory Status, Award Type, Effective Date**

| | QUALITY INC - Non-supervisor Date Effective | INDIVIDUAL TIME-OFF AWARD - Supervisor Date Effective | INDIVIDUAL TIME-OFF AWARD - Non-supervisor Date Effective | INDIVIDUAL CASH AWARD - Non-supervisor Date Effective | INDIVIDUAL CASH AWARD - Team Leader Date Effective | INDIVIDUAL CASH AWARD - Supervisor Date Effective |
|---|---|---|---|---|---|---|
| $585 | | | | Nov-26-2006 | | |
| $800 | | | | Nov-26-2006 | | Nov-26-2006 |
| $3763 | | | | Nov-26-2006 | | |
| $980 | | | | Nov-26-2006 | | |
| 32 hrs | | Nov-26-2006 | Nov-15-2005 | | | |
| $637 | | | | Nov-26-2006 | | Nov-26-2006 |
| $1250 | | | | Nov-26-2006 | | Nov-26-2006 |
| $3656 | | | | Nov-26-2006 | | |
| 24 hrs | | Nov-28-2005 | Nov-26-2006 | | | |
| 12 hrs | | | Nov-26-2006 | | | |
| $2200 | | | | Nov-26-2006 | | |
| $4301 | | | | Nov-26-2006 | | Jan-08-2006 |
| $3000 | | | | Nov-26-2006 | | |
| $700 | | | | Nov-26-2006 | | |
| $1870 | | | | Nov-26-2006 | | |
| $1000 | | | | Nov-18-2005 | | Dec-10-2006 |
| $622 | | | | Dec-10-2006 | | |
| $3050 | | | | Dec-24-2006 | | |

A-13

Attorney Awards by Supervisory Status, Award Type, Effective Date

| Nonsupervisors | INDIVIDUAL CASH AWARD | Apr-29-2005 | $1000 |
| --- | --- | --- | --- |
| | | | $250 |
| | | May-04-2005 | $750 |
| | | Jun-08-2005 | $1000 |
| | | Jun-15-2005 | $375 |
| | | Jun-22-2005 | $1500 |
| | | Jul-08-2005 | $1000 |
| | | | $800 |
| | | Jul-24-2005 | $5000 |
| | | Aug-11-2005 | $1000 |
| | | | $500 |
| | | | $750 |
| | | Sep-06-2005 | $1000 |
| | | | $1500 |
| | | | $1750 |
| | | | $3350 |
| | | | $4450 |
| | | | $500 |
| | | | $750 |
| | | | $910 |
| | | Sep-09-2005 | $3000 |
| | | | $4000 |
| | | | $500 |
| | | | $9675 |
| | | Oct-03-2005 | $1000 |
| | | | $1200 |
| | | | $1250 |
| | | | $1350 |
| | | | $1500 |
| | | | $1600 |
| | | | $1818 |
| | | | $1820 |
| | | | $2000 |
| | | | $2155 |
| | | | $250 |
| | | | $2500 |
| | | | $300 |
| | | | $400 |
| | | | $4000 |
| | | | $500 |
| | | | $600 |
| | | | $602 |
| | | | $603 |

A-14

**Attorney Awards by Supervisory Status, Award Type, Effective Date**

| | | | |
|---|---|---|---|
| | | | $675 |
| | | | $750 |
| | | | $800 |
| | | | $910 |
| | | Oct-04-2005 | $1000 |
| | | | $2500 |
| | | | $603 |
| | | Oct-19-2005 | $1600 |
| | | | $1750 |
| | | | $3500 |
| | | | $500 |
| | | Oct-26-2005 | $1000 |
| | | | $1250 |
| | | | $1500 |
| | | | $2500 |
| | | | $3001 |
| | | | $5000 |
| | | Oct-27-2005 | $1500 |
| | | Nov-01-2005 | $1200 |
| | | | $1250 |
| | | | $1750 |
| | | | $2000 |
| | | | $2243 |
| | | | $2500 |
| | | | $3000 |
| | | | $500 |
| | | | $600 |
| | | | $750 |
| | | Nov-02-2005 | $1500 |
| | | Nov-07-2005 | $1000 |
| | | | $1250 |
| | | | $1500 |
| | | | $1750 |
| | | | $2000 |
| | | | $2100 |
| | | | $2500 |
| | | | $500 |
| | | | $750 |
| | | | $900 |
| | | Nov-09-2005 | $910 |
| | | Nov-14-2005 | $1456 |
| | | | $1500 |
| | | | $2000 |

A 15

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | | | |
|---|---|---|---|
| | | | $2500 |
| | | | $546 |
| | | | $819 |
| | | Nov-18-2005 | $1000 |
| | | | $2000 |
| | | Nov-21-2005 | $1010 |
| | | | $1911 |
| | | | $546 |
| | | | $728 |
| | | | $819 |
| | | Nov-22-2005 | $2500 |
| | | Nov-28-2005 | $2500 |
| | | Nov-29-2005 | $1200 |
| | | | $1500 |
| | | | $2500 |
| | | Dec-05-2005 | $1000 |
| | | | $2000 |
| | | | $500 |
| | | | $600 |
| | | | $750 |
| | | Dec-22-2005 | $1250 |
| | | Jan-08-2006 | $5000 |
| | | Feb-21-2006 | $1200 |
| | | | $1250 |
| | | | $2000 |
| | | Mar-10-2006 | $150 |
| | | | $200 |
| | | | $250 |
| | | | $91 |
| | | Mar-23-2006 | $1000 |
| | | | $2000 |
| | | Mar-31-2006 | $2000 |
| | | Apr-04-2006 | $1000 |
| | | | $1250 |
| | | | $2000 |
| | | | $500 |
| | | Apr-13-2006 | $500 |
| | | | $8712 |
| | | | $9090 |
| | | | $910 |
| | | May-03-2006 | $1250 |
| | | | $2000 |
| | | | $800 |

A 16

Attorney Awards by Supervisory Status, Award Type, Effective Date

| Effective Date | Amount |
|---|---|
| May-16-2006 | $1000 |
| | $2000 |
| May-26-2006 | $1820 |
| | $300 |
| | $400 |
| | $800 |
| Jun-05-2006 | $1250 |
| | $2000 |
| | $2500 |
| Jun-19-2006 | $2000 |
| Jun-23-2006 | $1000 |
| Jul-23-2006 | $2000 |
| Jul-28-2006 | $1000 |
| | $2000 |
| Aug-06-2006 | $1000 |
| | $1363 |
| | $2000 |
| | $250 |
| | $400 |
| | $500 |
| | $900 |
| | $910 |
| Aug-20-2006 | $1825 |
| Sep-03-2006 | $1000 |
| | $1500 |
| | $2000 |
| | $500 |
| | $637 |
| | $750 |
| Sep-17-2006 | $1000 |
| | $1500 |
| | $1850 |
| | $2000 |
| | $2800 |
| | $300 |
| | $3000 |
| | $3250 |
| | $3636 |
| | $377 |
| | $400 |
| | $500 |
| | $600 |
| | $650 |

A 17

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | | | |
|---|---|---|---|
| | | | $750 |
| | | | $925 |
| | | Sep-18-2006 | $100 |
| | | | $1500 |
| | | Sep-19-2006 | $900 |
| | | Sep-24-2006 | $1000 |
| | | | $1272 |
| | | | $1500 |
| | | | $1819 |
| | | | $2000 |
| | | | $2500 |
| | | | $300 |
| | | | $350 |
| | | | $3500 |
| | | | $3800 |
| | | | $500 |
| | | | $650 |
| | | | $750 |
| | | | $900 |
| | | | $910 |
| | | Sep-25-2006 | $1000 |
| | | Oct-01-2006 | $2000 |
| | | Oct-29-2006 | $2000 |
| | | | $500 |
| | | Nov-26-2006 | $1000 |
| | | | $1250 |
| | | | $1500 |
| | | | $1870 |
| | | | $2000 |
| | | | $2200 |
| | | | $3000 |
| | | | $3656 |
| | | | $4301 |
| | | | $455 |
| | | | $500 |
| | | | $585 |
| | | | $637 |
| | | | $650 |
| | | | $700 |
| | | | $750 |
| | | | $800 |
| | | | $900 |
| | | | $980 |

A 18

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | | | |
|---|---|---|---|
| | | Dec-10-2006 | $1000 |
| | | | $1250 |
| | | | $1500 |
| | | | $2000 |
| | | | $622 |
| | | | $750 |
| | | Dec-24-2006 | $3050 |
| | | | $400 |
| | INDIVIDUAL TIME-OFF AWARD | Apr-26-2005 | 20 hrs |
| | | Apr-29-2005 | 8 hrs |
| | | May-12-2005 | 18 hrs |
| | | May-19-2005 | 8 hrs |
| | | May-23-2005 | 9 hrs |
| | | Jun-27-2005 | 40 hrs |
| | | Jul-25-2005 | 40 hrs |
| | | Aug-12-2005 | 8 hrs |
| | | Sep-06-2005 | 16 hrs |
| | | | 20 hrs |
| | | | 24 hrs |
| | | | 8 hrs |
| | | Oct-03-2005 | 16 hrs |
| | | | 24 hrs |
| | | | 40 hrs |
| | | | 8 hrs |
| | | Oct-04-2005 | 20 hrs |
| | | | 30 hrs |
| | | | 40 hrs |
| | | Nov-01-2005 | 24 hrs |
| | | Nov-02-2005 | 16 hrs |
| | | Nov-07-2005 | 16 hrs |
| | | | 20 hrs |
| | | | 24 hrs |
| | | | 40 hrs |
| | | | 8 hrs |
| | | Nov-08-2005 | 10 hrs |
| | | | 16 hrs |
| | | | 18 hrs |
| | | | 24 hrs |
| | | | 9 hrs |
| | | Nov-15-2005 | 32 hrs |
| | | Nov-21-2005 | 32 hrs |
| | | Nov-28-2005 | 16 hrs |
| | | | 24 hrs |

A 19

Attorney Awards by Supervisory Status, Award Type, Effective Date

|  |  |  |
|---|---|---|
|  |  | 40 hrs |
|  | Dec-23-2005 | 40 hrs |
|  | Jan-03-2006 | 40 hrs |
|  |  | 8 hrs |
|  |  | 80 hrs |
|  | Jan-18-2006 | 8 hrs |
|  | Jan-20-2006 | 8 hrs |
|  | Feb-21-2006 | 16 hrs |
|  |  | 8 hrs |
|  | Mar-10-2006 | 10 hrs |
|  |  | 16 hrs |
|  |  | 24 hrs |
|  |  | 8 hrs |
|  |  | 9 hrs |
|  | Mar-23-2006 | 20 hrs |
|  |  | 25 hrs |
|  |  | 32 hrs |
|  |  | 40 hrs |
|  |  | 8 hrs |
|  | Apr-04-2006 | 24 hrs |
|  |  | 8 hrs |
|  | May-03-2006 | 8 hrs |
|  | May-12-2006 | 27 hrs |
|  | May-26-2006 | 20 hrs |
|  |  | 24 hrs |
|  |  | 8 hrs |
|  | Jun-13-2006 | 16 hrs |
|  | Jun-19-2006 | 16 hrs |
|  | Jul-19-2006 | 8 hrs |
|  | Jul-23-2006 | 40 hrs |
|  | Jul-24-2006 | 80 hrs |
|  | Jul-28-2006 | 8 hrs |
|  | Aug-06-2006 | 40 hrs |
|  | Aug-20-2006 | 8 hrs |
|  | Sep-03-2006 | 4 hrs |
|  | Sep-17-2006 | 12 hrs |
|  |  | 16 hrs |
|  |  | 18 hrs |
|  |  | 20 hrs |
|  |  | 24 hrs |
|  |  | 30 hrs |
|  |  | 40 hrs |
|  |  | 8 hrs |

A 20

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | | | |
|---|---|---|---|
| | | Sep-24-2006 | 16 hrs |
| | | | 24 hrs |
| | | | 8 hrs |
| | | Nov-12-2006 | 16 hrs |
| | | | 8 hrs |
| | | Nov-26-2006 | 12 hrs |
| | | | 16 hrs |
| | | | 18 hrs |
| | | | 24 hrs |
| | | | 27 hrs |
| | | | 32 hrs |
| | | | 40 hrs |
| | | | 8 hrs |
| | | | 9 hrs |
| | | Dec-10-2006 | 24 hrs |
| | | | 32 hrs |
| | | | 40 hrs |
| | | Jan-07-2007 | 16 hrs |
| | | | 24 hrs |
| | | | 40 hrs |
| | | | 8 hrs |
| | | Feb-04-2007 | 8 hrs |
| | | Feb-06-2007 | 8 hrs |
| | | Feb-07-2007 | 24 hrs |
| | | Mar-05-2007 | 4 hrs |
| | QUALITY INC - | Jun-12-2005 | |
| | | Aug-09-2005 | |
| | | Aug-21-2005 | |
| | | Oct-30-2005 | |
| Supervisor | INDIVIDUAL CASH AWARD - | Aug-22-2005 | $75 |
| | | Sep-06-2005 | $1750 |
| | | Sep-09-2005 | $3000 |
| | | Oct-03-2005 | $2000 |
| | | | $2500 |
| | | | $500 |
| | | | $603 |
| | | Oct-04-2005 | $3000 |
| | | Oct-19-2005 | $810 |
| | | Oct-26-2005 | $2000 |
| | | Nov-01-2005 | $1500 |
| | | | $2000 |
| | | | $2500 |
| | | | $3000 |

A21

Attorney Awards by Supervisory Status, Award Type, Effective Date

| | | | |
|---|---|---|---|
| | | | $3500 |
| | | Nov-07-2005 | $2249 |
| | | | $2500 |
| | | Nov-14-2005 | $1001 |
| | | | $2500 |
| | | Nov-18-2005 | $2000 |
| | | Jan-03-2006 | $3000 |
| | | Jan-08-2006 | $1500 |
| | | | $1800 |
| | | | $3000 |
| | | | $5000 |
| | | | $7000 |
| | | Jan-18-2006 | $910 |
| | | Jan-22-2006 | $7000 |
| | | Feb-21-2006 | $1200 |
| | | | $5000 |
| | | Apr-04-2006 | $1250 |
| | | Jul-28-2006 | $4000 |
| | | Sep-17-2006 | $1000 |
| | | | $1500 |
| | | | $910 |
| | | Sep-24-2006 | $1860 |
| | | | $2000 |
| | | | $300 |
| | | | $650 |
| | | Oct-29-2006 | $3000 |
| | | Nov-26-2006 | $1250 |
| | | | $1300 |
| | | | $1500 |
| | | | $2500 |
| | | | $3565 |
| | | | $3763 |
| | | | $637 |
| | | Dec-10-2006 | $1000 |
| | | | $1250 |
| | INDIVIDUAL TIME-OFF AWARD | May-16-2005 | 40 hrs |
| | | Jun-22-2005 | 24 hrs |
| | | Oct-03-2005 | 40 hrs |
| | | Oct-04-2005 | 80 hrs |
| | | Nov-07-2005 | 24 hrs |
| | | | 32 hrs |
| | | Nov-15-2005 | 10 hrs |
| | | Nov-28-2005 | 24 hrs |

A 22

**Attorney Awards by Supervisory Status, Award Type, Effective Date**

| | | | |
|---|---|---|---|
| | | Jan-08-2006 | 40 hrs |
| | | Jan-22-2006 | 40 hrs |
| | | Apr-04-2006 | 40 hrs |
| | | Sep-24-2006 | 16 hrs |
| | | Nov-26-2006 | 24 hrs |
| | | | 32 hrs |
| | | | 40 hrs |
| | | Jan-07-2007 | 40 hrs |
| Team Leade | INDIVIDUAL | Sep-17-2006 | $1500 |

A 73

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 5 | 3 |
| 3 | X |
| 4 | 4 |
| X | |
| 3 | 3 |
| 3 | X |
| 4 | 4 |
| X | |
| 4 | 3 |
| 3 | X |
| 5 | 4 |
| 4 | 3 |
| 3 | 3 |
| 4 | 4 |
| 4 | 4 |
| 5 | 3 |
| 3 | 3 |
| 3 | 3 |
| 3 | 3 |
| 5 | 5 |
| 3 | 4 |
| 3 | 3 |
| 5 | 4 |
| 5 | 4 |
| 4 | 4 |
| 5 | 5 |
| 3 | X |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 3 | 4 |

A 24

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 4 | 3 |
| 4 | 5 |
| 4 | 5 |
| 3 | 3 |
| 3 | X |
| 4 | 3 |
| 4 | 5 |
| 4 | 4 |
| 4 | 3 |
| 3 | X |
| 5 | 5 |
| 3 | 3 |
| 4 | 4 |
| 5 | 5 |
| 4 | 4 |
| 3 | 3 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | X |
| 3 | 3 |
| 4 | 3 |
| 4 | 4 |
| 3 | 4 |
| 4 | 5 |
| 4 | 3 |
| 4 | 4 |
| 3 | 3 |
| 5 | 3 |
| X | |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 4 | 4 |

A 25

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
Blanks indicate employee was not on rolls at end of rating period
x indicates employee was on rolls but did not receive documented rating

| | |
|---|---|
| 4 | 3 |
| 4 | 4 |
| 3 | 3 |
| X | |
| 4 | 4 |
| 4 | 3 |
| 4 | 4 |
| 5 | 5 |
| 4 | 3 |
| 4 | 4 |
| X | 3 |
| 4 | 4 |
| 3 | 3 |
| X | |
| 5 | 5 |
| 3 | 4 |
| 3 | 3 |
| 4 | 5 |
| 4 | 3 |
| 4 | 5 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 5 |
| 3 | 3 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 3 | X |
| 4 | 4 |
| 4 | 4 |
| 3 | 3 |
| 4 | X |

A 26

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 4 | 3 |
| 3 | 3 |
| 4 | 4 |
| 5 | 3 |
| 5 | 4 |
| 4 | 3 |
| 3 | 3 |
| 4 | 3 |
| 4 | 5 |
| 3 | 4 |
| 3 | 3 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 3 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| X | |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| X | |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | X |
| 4 | 4 |
| 5 | 5 |

A 27

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 4 | 4 |
| X | |
| 4 | 3 |
| 4 | 4 |
| X | |
| 3 | X |
| 4 | 4 |
| X | |
| 4 | 4 |
| X | 3 |
| 3 | 4 |
| 4 | 4 |
| 3 | 3 |
| 3 | 3 |
| 4 | X |
| 4 | X |
| 2 | 3 |
| 4 | 3 |
| 5 | 5 |
| 3 | 3 |
| 4 | 5 |
| 5 | 5 |
| 4 | 4 |
| 4 | 5 |
| 5 | 4 |
| 4 | 4 |
| 4 | 5 |
| 4 | 4 |
| X | |
| 5 | 5 |
| 3 | 3 |
| 5 | 5 |
| 3 | 3 |
| 4 | 4 |
| 4 | 3 |

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 5 | 5 |
| 3 | 3 |
| 3 | 3 |
| 3 | 3 |
| 5 | 5 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 4 | 3 |
| 3 | 4 |
| 3 | 4 |
| 4 | 4 |
| 4 | 3 |
| 3 | 4 |
| 4 | 4 |
| 4 | 5 |
| 3 | 3 |
| 3 | 3 |
| X | X |
| 5 | 5 |
| 5 | 3 |
| 4 | 4 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 3 | 3 |
| X | |
| 4 | 3 |
| 5 | 4 |
| 4 | 4 |

A 29

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 4 | 4 |
| 4 | 3 |
| 4 | 4 |
| 3 | X |
| 4 | 4 |
| 4 | 4 |
| 3 | 3 |
| X | |
| 4 | 5 |
| 4 | 3 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 4 | 3 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 3 | 3 |
| 4 | 3 |
| 3 | 3 |
| 4 | 3 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 5 |
| 4 | 4 |
| X | |
| 4 | 3 |
| 3 | 3 |

A 30

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
Blanks indicate employee was not on rolls at end of rating period
x indicates employee was on rolls but did not receive documented rating

| | |
|---|---|
| 3 | X |
| 3 | 4 |
| 4 | 4 |
| 3 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 5 | 4 |
| 4 | 3 |
| X | X |
| 3 | 3 |
| 3 | 3 |
| 3 | 3 |
| 3 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 4 | 3 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 3 | 3 |
| 3 | 3 |
| 4 | 3 |
| 3 | 3 |
| 5 | 5 |
| 4 | 3 |
| 5 | 5 |

A 31

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
Blanks indicate employee was not on rolls at end of rating period
x indicates employee was on rolls but did not receive documented rating

| | |
|---|---|
| 3 | X |
| 4 | 4 |
| 3 | 3 |
| 4 | 3 |
| 4 | 3 |
| 4 | 3 |
| 3 | 3 |
| 5 | 5 |
| 4 | X |
| 4 | 4 |
| 5 | 4 |
| 3 | 3 |
| 4 | 4 |
| 4 | 3 |
| 4 | 4 |
| 3 | 3 |
| 4 | 4 |
| 3 | 4 |
| 3 | 3 |
| 5 | 5 |
| 3 | X |
| 4 | 4 |
| 4 | 4 |
| 4 | 3 |
| 4 | 3 |
| 3 | 3 |
| 5 | 4 |
| 4 | 4 |
| 5 | 5 |
| 3 | X |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 4 | 4 |
| 3 | 3 |

A32

**Attorney Ratings for Rating Periods Ending Sep 30, 2006 (left-hand column) and Dec 31, 2005 (right-hand column)**
**Numbers equal summary rating**
**Blanks indicate employee was not on rolls at end of rating period**
**x indicates employee was on rolls but did not receive documented rating**

| | |
|---|---|
| 3 | 3 |
| 4 | 4 |
| 3 | 3 |
| X | X |
| 5 | 3 |
| 5 | 4 |
| 3 | 3 |
| 4 | X |
| 3 | 3 |
| 4 | 4 |
| 4 | 3 |
| 4 | X |
| X | |
| 4 | 3 |
| 3 | 3 |
| 4 | 4 |

A 33



## United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240



TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:
Appeal No. PA2007-001

**MAR 1 5 2007**

Robert J. McCarthy
78715 La Palma Drive
La Quinta, CA 92253

Dear Mr. McCarthy:

This responds to the January 17, 2007, Privacy Act appeal ("appeal") ((**Appeal Number PA2007-001**) that you submitted to the Department of the Interior ("Department"). Your appeal concerns the Office of the Solicitor's ("SOL") alleged failure to respond to a December 4, 2006, "'Privacy Act Request for Access'" that you transmitted to it via facsimile on that same date, seeking "all documents contained in [your] official personnel file [] that were created after April 20, 2005, or added to the file after that date."

After fully reviewing the issues in your appeal, the Department concludes that SOL is not obligated to process your Privacy Act request, as you did not submit the request to the appropriate SOL official. A more detailed discussion of this issue follows.

### Accessing Privacy Act-Protected Records

The Privacy Act generally requires the release of records maintained in a system of records about an individual to that individual when he or she requests them. *See 5 U.S.C. § 552a(d)(1)*. The term "system of records" means a group of any records about an individual that are under the control of an agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. *5 U.S.C. § 552a(a)(5)*. In the case of your Privacy Act request, the records you are seeking are maintained in a Privacy Act system of records identified as "General Personnel Records--Interior, Office of the Secretary--79" ("OS-79").

The Privacy Act requires agencies to publish, among other things, rules establishing "procedures for the disclosure to an individual upon his request of his record or information pertaining to him..." *5 U.S.C. § 552a(f)(3)*. The Department published these rules in its Privacy Act regulations ("regulations"), which can be found at 43 C.F.R., Part 2, Subpart G. The regulations state that "requests for access to records <u>shall</u> be submitted to the system manger having responsibility for the system in which the records are maintained unless the system notice describing the system prescribes or permits submission to some other official or officials" (emphasis added). *See 43 C.F.R. § 2.63(a)*. In this case, you submitted your December 4, 2006, Privacy Act request to the following SOL official:

B-1

Privacy Act Officer
Office of the Solicitor
Ms-7456, MIB
1849 C Street, N.W.
Washington, D.C. 20240

Fax 202-208-5206

The Department's review of OS-79 reveals that SOL's Privacy Act Officer, who is performing in an "acting" capacity in that position, is not the system manager for SOL's "General Personnel Records." Rather, the system manager is SOL's "Personnel Officer" whose address is listed in the Privacy Act system notice as "19th & C Streets, NW, Washington, DC 20240." *See* OS-79. Because you did not submit your Privacy Act request to the "system manger having responsibility for the system in which the records are maintained," as the regulations require you to do, the request that you submitted to the SOL's Acting Privacy Act Officer seeking access to your "official personnel file" does not comply with the regulations. Therefore, SOL's Acting Privacy Act Officer had no obligation to make a determination on whether to grant your request for access to your official personnel file. Instead, the regulations required SOL's Acting Privacy Act Officer to return your Privacy Act request to you and advise you in writing of the deficiency, which she failed to do. *See 43 C.F.R. § 2.63(b)(6).*

Normally, when an appellant does not comply with the regulations by failing to submit a Privacy Act request to the system manager, the Department returns the request to him and advises him of the procedures he must follow in order to obtain access to his Privacy Act-protected records. However, in the case of your Privacy Act request, the Department has determined to forward your request to the appropriate system manager because of SOL's Acting Privacy Act Officer's mishandling of your Privacy Act request (i.e., misplacing the request and then failing to advise you of the requirements of the regulations), even though the Privacy Act and the regulations do not require the Department to takes such an extraordinary step. Accordingly, **by copy of this letter, the Department is referring your Privacy Act request to SOL's Personnel Officer, Jack Hirsch, for processing in accordance with the regulations.** *See 43 C.F.R. § 2.64.* SOL's Personnel Officer will correspond directly with you regarding your Privacy Act request. If you wish to speak with Mr. Hirsch, you may reach him at (202) 208-6115.

This completes the Department's response to your appeal. If you have any questions, you may contact me at (202) 208-5339.

Sincerely,

Darrell R. Strayhorn
FOIA & Privacy Act Appeals Officer
Department of the Interior

B-2

cc:  Jack Hirsch, Personnel Officer, SOL **(FOR ACTION)**
     Colette Clark, Acting Privacy Act Officer, SOL
     Edward Keable, Associate Solicitor-Administration, SOL
     Craig Littlejohn, Chief Information Officer, SOL

B-3



UNITED STATES DEPARTMENT OF THE INTERIOR

# AWARD CERTIFICATION

*ROBERT   McCARTHY*

### Is Presented a:

## *Monetary Award or Recognition*

_____ **On-the-Spot Award** in the net amount of $ _____

__X__ **STAR Award** in the gross amount of   $ *1,820*

_____ **Quality Step Increase** (sustained exceptional performance pay increase)

_____ **Time Off Recognition**--number of hours _____

_____ **Non-Monetary Recognition** with a cash value of $ _____

_____ **Interior Innovation Award** ($1,000 increase to operating budget)

_____ **Continuous Improvement Incentive** (check appropriate award above)

## *Bureau-Specific Award* _____

## *Honor Award*
- **Highest Honors:**
  - _____ **Distinguished Service Award**
  - _____ **Conservation Service Award**

- **Mid-Level Honors:**
  - _____ **Meritorious Service Award**
  - _____ **Outstanding Service Award**
  - _____ **Unit Award for Excellence of Service**

- **Initial Honors:**
  - _____ **Superior Service Award**
  - _____ **Citizen's Award for Exceptional Service**

- **Heroic Act Honors:**
  - _____ **Valor Award**
  - _____ **Citizen's Award for Bravery**
  - _____ **Exemplary Act Award**

FORM DI-451
February 1996

**JUSTIFICATION**    Required only for monetary awards, innovation awards, non-monetary recognition of significant value, or time off recognition. Citation is justification for honor awards. Attach copy of citation.

*See attached*

**APPROVED BY:** _____ 8/23/03    (505) 248-5600
(Signature, Date, and Telephone Number Including Area Code)

**ADDITIONAL SIGNATURES**

_____        _____
(Signature and Date)                            (Signature and Date)

To be completed for honor awards only:
No derogatory information was found in the employee's Official Personnel Folder.

_____

Signature and date of OPF review


**FINANCIAL ACTION RECORD**    This record is to initiate payment, accounting and tax transactions for STAR awards, On-the-Spot awards, and non-monetary recognition of significant value. Do not complete for Quality Step Increases, Time Off recognition, Interior Innovation Award or Honor Awards.

Recipient Name: **Robert J. McGoth**  Social Security Number: **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**

| IN    21 | 19 | 90993 | 9100 WAS01 | SOL |
|---|---|---|---|---|
| Bureau  Sub-Bureau | Block | Org. Code | Cost Account | |


**MONETARY AWARD TO BE PAID THROUGH IMPREST (ON-THE-SPOT)**
Amount Authorized for Imprest Payment  (Hours Code 66A)
                                                          $_____ (Net Amount)
Amount Including Taxes  (Amount Paid divided by .55)  (Hours Code 30A)
                                                          $_____ (Gross Amount)

**IMPREST FUND PAYMENT RECORD**  (Present to Imprest Fund Cashier)
Paid by:    Cash [ ]        Third Party Draft [ ]    Subvoucher # _____
Received by Signature and Date:    _____

**MONETARY AWARD TO BE PAID THROUGH THE PAYROLL SYSTEM (STAR OR ON-THE-SPOT)**
Total Cash Award  (Hours Code 30A)        $ **1820**    (Gross Amount)
Pay Period to be Processed by Payroll

**NON-MONETARY RECOGNITION OF SIGNIFICANT VALUE**  (from $26 to $250)
Cash Value of Award  (Hours Code 66A)        $_____ (Net Amount)
Value Including Taxes  (Cash Value divided by .55)    $_____ (Gross Amount)

**Disposition of this form**: Original to servicing personnel office, copy to recipient. For STAR awards, On-the-Spot awards, and non-monetary recognition of significant value FAX page 2 of this form to the Payroll Operations Division.

This fax is in lieu of original. *DO NOT* SEND ORIGINAL OF THIS DOCUMENT TO PAYROLL.

Note: Information on this form is protected by the Privacy Act. Disclosure may be made only to authorized persons according to Title 5 U.S.C., Section 552a(b).

C2

**Justification: Award Nomination, 2003**
**Robert McCarthy, Tulsa Field Solicitor**

Within a year after Mr. McCarthy became the Field Solicitor in Tulsa, the Regional Solicitor retired and for the next couple of years thereafter Mr. McCarthy has ably managed the Tulsa Field Office under the gentle guidance of the Acting Regional Solicitor. Whereas he nominated his Office for a cooperative award last year, Mr. McCarthy did not personally share in the award. However, his performance over the past year merits an individual award. Mr. McCarthy has ably supervised the defense of complex litigation over the Tar Creek Superfund Site in Northeast Oklahoma, specifically involving contribution suits filed by mining companies that have been sued for creating a lead poisoning nuisance. He has worked cooperatively with his staff and with personnel in other Departmental agencies in coordinating massive nationwide document production. Additionally, he has worked closely with the Department of Justice in fashioning Interior's legal defense against the lawsuits, resulting in some very favorable court rulings that greatly limit potential liability and could ultimately result in no liability.

Whereas Mr. McCarthy has maintained both supervisory oversight and primary responsibility for many aspects of the Tar Creek litigation, he also participated in a number of high level briefings for Department officials on other aspects of Tar Creek litigation, including compliance with trust obligations to Native Americans whose lands are polluted with mining wastes. Mr. McCarthy has ensured an appropriate balance in the Department's NRDAR actions, for example, with Tulsa staff having responsibility for representing both natural resources trustees and a potentially responsible party at Tar Creek.

Mr. McCarthy continues to supervise the overall activities of the Tulsa Field Office and to carry a substantial personal caseload. Meanwhile, he has ensured that the Tulsa Field Office continues to meet its primary statutory responsibilities on behalf of the restricted property interests of members of the Five Civilized Tribes; he has undertaken lead responsibility for a variety of litigation in administrative and judicial forums; and he has continued to provide lead counsel to Departmental agencies, including Haskell Indian Nations University. Whereas the Tulsa is primarily an Indian law Office, Mr. McCarthy also supervises and/or performs a wide range of activities representative of a general legal office, with a heavy emphasis on oil and gas production. That the Tulsa Field Office continues to perform at a high level of professionalism, with responsibility for several matters of keen national importance, is testimony, at least in part, to his outstanding management.

I nominate Robert McCarthy for an award in the gross amount of $1,820 (Net: $1,000).

Grant Vaughn, Acting Regional Solicitor

C 7



UNITED STATES DEPARTMENT OF THE INTERIOR

# AWARD CERTIFICATION

*Robert McCarthy*

### Is Presented a:

## *Monetary Award or Recognition*

_____ **On-the-Spot Award** in the net amount of $ _____

__X__ **STAR Award** in the gross amount of    $ *1,820*

_____ **Quality Step Increase** (sustained exceptional performance pay increase)

_____ **Time Off Recognition**--number of hours _____

_____ **Non-Monetary Recognition** with a cash value of  $ _____

_____ **Interior Innovation Award** ($1,000 increase to operating budget)

_____ **Continuous Improvement Incentive** (check appropriate award above)

## *Bureau-Specific Award*  _____

## *Honor Award*
- **Highest  Honors:**
  _____ **Distinguished Service Award**
  _____ **Conservation Service Award**

- **Mid-Level Honors:**
  _____ **Meritorious Service Award**
  _____ **Outstanding Service Award**
  _____ **Unit Award for Excellence of Service**

- **Initial Honors:**
  _____ **Superior Service Award**
  _____ **Citizen's Award for Exceptional Service**

- **Heroic Act Honors:**
  _____ **Valor Award**
  _____ **Citizen's Award for Bravery**
  _____ **Exemplary Act Award**

*CH*

FORM DI-451
February 1996

**JUSTIFICATION**    Required only for monetary awards, innovation awards, non-monetary recognition of significant value, or time off recognition. Citation is justification for honor awards. Attach copy of citation.

*See attached*

**APPROVED BY:** _____ 8/23/13  (505) 248-5602

<u>(Signature, Date, and Telephone Number Including Area Code)</u>

**ADDITIONAL SIGNATURES**                9/8/03

_____          _____
(Signature and Date)              (Signature and Date) **Deputy Solicitor**      Date

To be completed for honor awards only:
No derogatory information was found in the employee's Official Personnel Folder.

_____
Signature and date of OPF review

**FINANCIAL ACTION RECORD**    This record is to initiate payment, accounting and tax transactions for STAR awards, On-the-Spot awards, and non-monetary recognition of significant value. Do not complete for Quality Step Increases, Time Off recognition, Interior Innovation Award or Honor Awards.

Recipient Name: Robert J. McGrath  Social Security Number: 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   SOL

| IN | 21 | 19 | 90993 | 9100 WAS01 |
|---|---|---|---|---|
| Bureau | Sub-Bureau | Block | Org. Code | Cost Account |

**MONETARY AWARD TO BE PAID THROUGH IMPREST (ON-THE-SPOT)**
Amount Authorized for Imprest Payment (Hours Code 66A)
                                        $_____ (Net Amount)
Amount Including Taxes  (Amount Paid divided by .55) (Hours Code 30A)
                                        $_____ (Gross Amount)

**IMPREST FUND PAYMENT RECORD** (Present to Imprest Fund Cashier)
Paid by:    Cash [ ]    Third Party Draft [ ]    Subvoucher # _____
Received by Signature and Date: _____

**MONETARY AWARD TO BE PAID THROUGH THE PAYROLL SYSTEM (STAR OR ON-THE-SPOT)**
Total Cash Award (Hours Code 30A)        $ 1820  (Gross Amount)
Pay Period to be Processed by Payroll        C320

**NON-MONETARY RECOGNITION OF SIGNIFICANT VALUE** (from $26 to $250)
Cash Value of Award (Hours Code 66A)     $_____ (Net Amount)
Value Including Taxes  (Cash Value divided by .55)  $_____ (Gross Amount)

**Disposition of this form**: Original to servicing personnel office, copy to recipient. For STAR awards, On-the- Spot awards, and non-monetary recognition of significant value FAX page 2 of this form to the Payroll Operations Division.

This fax is in lieu of original. *DO NOT* SEND ORIGINAL OF THIS DOCUMENT TO PAYROLL.

Note:  Information on this form is protected by the Privacy Act.  Disclosure may be made only to authorized persons according to Title 5 U.S.C., Section 552a(b).

C5

**Justification: Award Nomination, 2003**
**Robert McCarthy, Tulsa Field Solicitor**

Within a year after Mr. McCarthy became the Field Solicitor in Tulsa, the Regional Solicitor retired and for the next couple of years thereafter Mr. McCarthy has ably managed the Tulsa Field Office under the gentle guidance of the Acting Regional Solicitor. Whereas he nominated his Office for a cooperative award last year, Mr. McCarthy did not personally share in the award. However, his performance over the past year merits an individual award. Mr. McCarthy has ably supervised the defense of complex litigation over the Tar Creek Superfund Site in Northeast Oklahoma, specifically involving contribution suits filed by mining companies that have been sued for creating a lead poisoning nuisance. He has worked cooperatively with his staff and with personnel in other Departmental agencies in coordinating massive nationwide document production. Additionally, he has worked closely with the Department of Justice in fashioning Interior's legal defense against the lawsuits, resulting in some very favorable court rulings that greatly limit potential liability and could ultimately result in no liability.

Whereas Mr. McCarthy has maintained both supervisory oversight and primary responsibility for many aspects of the Tar Creek litigation, he also participated in a number of high level briefings for Department officials on other aspects of Tar Creek litigation, including compliance with trust obligations to Native Americans whose lands are polluted with mining wastes. Mr. McCarthy has ensured an appropriate balance in the Department's NRDAR actions, for example, with Tulsa staff having responsibility for representing both natural resources trustees and a potentially responsible party at Tar Creek.

Mr. McCarthy continues to supervise the overall activities of the Tulsa Field Office and to carry a substantial personal caseload. Meanwhile, he has ensured that the Tulsa Field Office continues to meet its primary statutory responsibilities on behalf of the restricted property interests of members of the Five Civilized Tribes; he has undertaken lead responsibility for a variety of litigation in administrative and judicial forums; and he has continued to provide lead counsel to Departmental agencies, including Haskell Indian Nations University. Whereas the Tulsa is primarily an Indian law Office, Mr. McCarthy also supervises and/or performs a wide range of activities representative of a general legal office, with a heavy emphasis on oil and gas production. That the Tulsa Field Office continues to perform at a high level of professionalism, with responsibility for several matters of keen national importance, is testimony, at least in part, to his outstanding management.

I nominate Robert McCarthy for an award in the gross amount of $1,820 (Net: $1,000).

Grant Vaughn, Acting Regional Solicitor

C 6



### UNITED STATES DEPARTMENT OF THE INTERIOR
# AWARD CERTIFICATION

**Robert J. McCarthy**

(Recipient)

### Is Presented a:

## *Monetary Award or Recognition*

\_\_\_\_\_  On-the-Spot Award in the net amount of $ _____

\_\_X\_\_  STAR Award in the gross amount of     $ \_1,000.00\_

\_\_\_\_\_  Quality Step Increase (sustained exceptional performance pay increase)

\_\_\_\_  Time Off Recognition--number of hours    \_\_\_\_\_

\_\_\_\_\_  Non-Monetary Recognition with a cash value of  $ _____

\_\_\_\_\_  Interior Innovation Award ($1,000 increase to operating budget)

\_\_\_\_\_  Continuous Improvement Incentive (check appropriate award above)

## *Bureau-Specific Award* _____
(Title)

## *Honor Award*

- **Highest Honors:**    \_\_\_\_\_  **Distinguished Service Award**
  \_\_\_\_\_  **Conservation Service Award**

- **Mid-Level Honors:**    \_\_\_\_\_  **Meritorious Service Award**
  \_\_\_\_\_  **Outstanding Service Award**
  \_\_\_\_\_  **Unit Award for Excellence of Service**

- **Initial Honors:**    \_\_\_\_\_  **Superior Service Award**
  \_\_\_\_\_  **Citizen's Award for Exceptional Service**

- **Heroic Act Honors:**    \_\_\_\_\_  **Valor Award**
  \_\_\_\_\_  **Citizen's Award for Bravery**
  \_\_\_\_\_  **Exemplary Act Award**

FORM DI-451
February 1996

C 7

2

**JUSTIFICATION**     Required only for monetary awards, innovation awards, non-monetary recognition of significant value, or time off recognition. Citation is justification for honor awards. Attach copy of citation.

**See attached**

**APPROVED BY:** _____

(Signature, Date, and Telephone Number including Area Code)

**ADDITIONAL SIGNATURES**
/S/ Robert J McCarthy  9/13/01          _____  9/13/01
(Signature and Date)                    (Signature and Date)    Acting Regional Solicitor

approved verbally per T.E. 9/13/01 ek

**FINANCIAL ACTION RECORD**     This record is to initiate payment, accounting and tax transactions for STAR awards, On-the-Spot awards, and non-monetary recognition of significant value. Do not complete for Quality Step Increases, Time Off recognition, Interior Innovation Award or Honor Awards.

Recipient Name:  __Robert J. McCarthy__          Social Security Number: __918-747-1283__

__2|__          __19__          __999__          __90992__          __2001 RES 9 2 9100__
Bureau Sub-Bureau          Block          Org. Code          Cost Account

**MONETARY AWARD TO BE PAID THROUGH IMPREST (ON-THE-SPOT)**
Amount Authorized for Imprest Payment  (Hours Code 66A)
                                                    $_____  (Net Amount)
Amount Including Taxes  (Amount Paid divided by .55)  (Hours Code 30A)
                                                    $_____  (Gross Amount)

**IMPREST FUND PAYMENT RECORD  (Present to Imprest Fund Cashier)**
Paid by:        Cash [ ]          Third Party Draft [ ]     Subvoucher # _____
Received by Signature and Date:     _____

**MONETARY AWARD TO BE PAID THROUGH THE PAYROLL SYSTEM (STAR OR ON-THE-SPOT)**
Total Cash Award  (Hours Code 30A)                  $ 1000   (Gross Amount)
Pay Period to be Processed by Payroll               _____

**NON-MONETARY RECOGNITION OF SIGNIFICANT VALUE  (from $26 to $250)**
Cash Value of Award  (Hours Code 66A)               $_____  (Net Amount)
Value Including Taxes  (Cash Value divided by .55)  $_____  (Gross Amount)

Disposition of this form: Original to servicing personnel office, copy to recipient. For STAR awards, On-the-Spot awards, and non-monetary recognition of significant value FAX page 2 of this form to the Payroll Operations Division.

This fax is in lieu of original. *DO NOT* SEND ORIGINAL OF THIS DOCUMENT TO PAYROLL.

Note: Information on this form is protected by the Privacy Act. Disclosure may be made only to authorized persons according to Title 5 U.S.C., Section 552a(b).

- INSTRUCTIONS -

This Award Certification will be used for all awards for individuals or teams, when required.  In the "Justification" section on page 2, provide a brief summary of the accomplishment being recognized by the award, using specific examples. For Honor Awards, the citation is the award justification. The amount of the

C 8

Award Justification

<u>Robert J. McCarthy</u>

Mr. McCarthy has done very well as Field Solicitor to manage the Tulsa Field Office without the assistance of a permanent Regional Solicitor. The Acting Regional Solicitor is very appreciative of Mr. McCarthy's efforts in reducing the need for higher level supervision.

Mr. McCarthy has fostered participatory decision-making within the TFSO and helped to raise morale. Mr. McCarthy provided on-site supervision for regional staff attorney temporarily detailed to Tulsa office. He convenes a regular weekly staff meeting at which information is shared and work is assigned. In addition, relevant staff discuss difficult issues in these and specially convened meetings. He has instituted regular comprehensive case reviews with each staff attorney and a similar review of the work of each paralegal and legal worker. He has begun to develop Handbooks or Guidelines for the performance of the significant activities of the Office. He has assigned a backup person to the person with primary responsibility for each of our areas of practice. Hee conducted performance appraisals with each staff person, identified strengths and areas of potential improvement, and discussed the appraisal with each staff person.

The TFSO has completely eliminated a backlog of approximately 75 tribal title opinions which existed when Mr. McCarthy began, and now stays current with requests.

Mr. McCarthy spearheaded effective response to critical media coverage of the Department's role in controversial tribal freedmen lawsuits, and effectively persuaded colleagues to recognize vital civil rights issues inherent in actions.

In addition to his management duties, Mr. McCarthy assumed primary responsibility for his own caseload, including numerous cases pending before the IBIA and IBCA, all of which were resolved successfully, except for those which are still pending. Issues include: BIA contracts with tribes; appeals of trust acquisition decisions; and disputes regarding BIA recognition of tribal governing bodies. Mr. McCarthy has continuing responsibility to assist the United States Attorneys in several federal court cases involving a similar range of issues.

Mr. McCarthy has made significant progress in bringing to a satisfactory resolution a ten-year old high-profile dispute over the construction of a highway near Haskell University, by helping to negotiate the surrender of a state right-of-way through the campus. He also negotiated for Haskell to grant an easement to the City of Lawrence for an unrelated turning lane off a busy street into the campus.

DI-3100
November 2004

## U.S. DEPARTMENT OF THE INTERIOR
### Employee Performance Appraisal Plan

| Employee Name and Social Security #:<br>Robert McCarthy    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 | | Title/Series/Grade:<br>Attorney-Adviser (Supervisory), GS-0905-15 | |
|---|---|---|---|
| Duty Station:<br>Palm Springs, CA | Appraisal Period: | From:<br>January 1, 2006 | To:<br>September 30, 2006 |

**Part A: Notification of Standards:** *Signatures certify that critical elements and performance standards were discussed. Critical elements and performance standards are contained in Part E.*

| Employee:<br>Robert McCarthy | Rating Official:<br>*(signature)* BP80 | Reviewing Official (if applicable*):<br>Daniel H. Shillito |
|---|---|---|
| Date: 1/26/06 | Date: 1/31/06 | Date: 1-31-06 |

*If determined by Bureau/Office

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee: | Date: | Rating Official: | Date: |
|---|---|---|---|
| | | | |

**Part C: Summary Rating Determination:** To determine a summary rating, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the critical elements (Use only whole numbers: **Exceptional = 5 points; Superior = 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points.)** *See reverse for complete instructions for assigning a Summary Rating.*

| Element Number | Numerical Rating |
|---|---|
| 1 | 4 |
| 2 | 4 |
| 3 | 3 |
| 4 | 3 |
| 5 | 3 |
| **Total:** | 17 |

**Total Numerical Rating**    17    ÷    **Number of Elements**    5    =    **Numeric Summary Rating**    3.4

**Part D: Overall Summary Rating:** Use conversion chart below to determine Summary Rating. Check the appropriate box:

| | | |
|---|---|---|
| | Exceptional | 4.6 – 5.00 AND No critical element rated lower than "Superior". |
| | Superior | 3.6 – 4.59 AND No critical element rated lower than "Fully Successful". |
| X | Fully Successful | 3.0 – 3.59 AND No critical element rated lower than "Fully Successful". |
| | Minimally Successful | 2.0 – 2.99 AND No critical element rated lower than "Minimally Successful". |
| | Unsatisfactory | One or more critical elements rated "Unsatisfactory". |

| Employee:<br>Robert J. McCarthy | Rating Official:<br>*(signature)* BP80 | Reviewing Official: (if applicable):<br>Daniel H. Shillito |
|---|---|---|
| Date: 12/12/06 | Date: 12/13/06 | Date: 12-18-06 |

Check here if Interim Rating: _____

Employee's Signature above certifies that the overall summary rating was discussed. Reviewing Official's signature is required for Exceptional, Minimally Successful and Unsatisfactory ratings, and otherwise if determined by Bureau/Office.

D-1 

# U.S. DEPARTMENT OF THE INTERIOR
## Employee Performance Appraisal Plan

| Employee Name and Social Security #:<br>Robert McCarthy          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 | | Title/Series/Grade:<br>Attorney-Adviser (Supervisory), GS-0905-15 | |
|---|---|---|---|
| Duty Station:<br>Palm Springs, CA | Appraisal Period: | From:<br>July 1, 2005 | To:<br>December 31, 2005 |

**Part A:  Notification of Standards:** *Signatures certify that critical elements and performance standards were discussed.  Critical elements and performance standards are contained in Part E.*

| Employee:  *Robert McCarthy* | Rating Official:  *Daniel H. Shillito* | Reviewing Official (if applicable*):  *Matt W...* |
|---|---|---|
| Date:  6-28-05 | Date:  6-29-05 | Date: 7/11/05 |

*If determined by Bureau/Office

**Part B:  Progress Review:** *Signatures certify that performance was discussed.*

| Employee: | Date: | Rating Official: | Date: |
|---|---|---|---|
| | | | |

**Part C:  Summary Rating Determination:**  To determine a summary rating, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the critical elements (Use only whole numbers: **Exceptional = 5 points; Superior = 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points.)**  *See reverse for complete instructions for assigning a Summary Rating.*

| Element Number | Numerical Rating | |
|---|---|---|
| 1 | 4 | |
| 2 | 4 | |
| 3 | 3 | |
| 4 | 3 | |
| 5 | 3 | |
| | Total: | 17 |

Total Numerical Rating ___17___ + Number of Elements ___5___ = Numeric Summary Rating ___3.4___

**Part D:  Overall Summary Rating:**  Use conversion chart below to determine Summary Rating.  Check the appropriate box:

| | | |
|---|---|---|
| | Exceptional | 4.6 – 5.00 AND No critical element rated lower than "Superior". |
| | Superior | 3.6 – 4.59 AND No critical element rated lower than "Fully Successful". |
| X | Fully Successful | 3.0 – 3.59 AND No critical element rated lower than "Fully Successful". |
| | Minimally Successful | 2.0 – 2.99 AND No critical element rated lower than "Minimally Successful". |
| | Unsatisfactory | One or more critical elements rated "Unsatisfactory". |

| Employee:  *Robert McCarthy* | Rating Official:  *Clementine Bush* | Reviewing Official: (if applicable):  *Daniel H. Shillito* |
|---|---|---|
| Date:  2/13/06 | Date:  2/15/06 | Date:  2-16-06 |

Check here if Interim Rating:  _____

*Minimally w/ Deputy R.S.  See noted this date.*

Employee's Signature above certifies that the overall summary rating was discussed.  Reviewing Official's signature is required for Exceptional, Minimally Successful and Unsatisfactory ratings, and otherwise if determined by Bureau/Office.

D-2
05
5-2-0

DANIEL G. SHILLITO
Regional Solicitor
KEVIN D. MACK
Assistant Regional Solicitor
U.S. Department of the Interior
Office of the Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, California  95825
Telephone:  (916) 978-5681
Fax:  (916) 978-5694

Attorneys for the Agency

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## SAN FRANCISCO REGIONAL OFFICE

ROBERT J. MCCARTHY,

      Appellant,

    vs.

DEPARTMENT OF THE INTERIOR,

      Agency.

**DOCKET NUMBER**
SF-1221-06-0380-W-1

**AGENCY CLOSE OF RECORD BRIEF**

DATE:  September 13, 2006

## INTRODUCTION

Robert McCarthy (appellant) has been employed as Field Solicitor, Supervisory Attorney-Advisor, GS-0905-15, at the Palm Springs Field Office of the Pacific Southwest Regional Solicitor's Office, since November 17, 2003.  The appellant's position is supervisory, however, there are no subordinate solicitor staff employees in the Palm Springs Field Solicitor's Office, and this office, since its opening in September 1992, has always been staffed by one attorney-advisor at the GS-15 level.  In addition, the office and library space occupied by the Field Solicitor is provided by the Field Solicitor's client agency, the Bureau of Indian Affairs (BIA), Palm Springs Agency (PSA), at no cost to the Solicitor's Office. The PSA also provides a telephone, cell phone, government vehicle usage, and office equipment and supplies as part of the continuing arrangement.  The PSA has offered these courtesies at its own expense since 1992.

E 1

The appellant alleges that since April 22, 2005, following his submission of a letter to the Acting Assistant Secretary for Indian Affairs that was critical of the PSA's program management and oversight, he has been subjected to retaliatory harassment. Agency Appeal Response File (AR), Tab 12a. Namely, appellant alleges that since the submission of this letter, the agency has: (1) continuously created a hostile work environment; (2) substantially altered appellant's conditions of employment; (3) constructively reduced appellant's work responsibilities; (4) failed to provide overdue performance appraisals; (5) down-graded appellant's performance rating; (6) failed to select appellant for any one of several promotions or transfers; (7) threatened to terminate appellant's library subscription and blamed appellant's whistleblowing for bringing on agency's own retaliation (February 17, 2006); (8) refused to allow appellant to work from home office; (9) isolated appellant and withheld information routinely provided to all other managers and staff, and; (10) failed to recommend or bestow an award. *See* Appellant's MSPB Appeal, page 2.

The appellant, in response to these perceptions, filed a Complaint of Prohibited Personnel Practices with the Office of Special Counsel (OSC) on October 6, 2005. *See* Appellant' Prehearing Submissions (APS), pages A 1-15. The complaint alleged reprisal for whistleblowing and appellant identified Associate Solicitor Ed Keable and Regional Solicitor Dan Shillito as responsible officials with the Solicitor's Office, and the Superintendent of the PSA as well as the Regional Director for BIA as equally responsible for reprisal. Id. Appellant claimed as a consequence of his April 2005 memorandum to the Assistant Secretary of Indian Affairs that he was subjected to retaliation in the following manner:

1. Retaliation by the BIA in the form of ostracism and reduction in support, e.g., law books;

2. Solicitor unwilling to relocate appellant or require retaliation to stop, as well as the following prohibited personnel practices;

    a.   (4)   deceive or willfully obstruct anyone from competing for employment;

    b.   (8)   engage in reprisal for whistleblowing – i.e., take, fail to take, or

threaten to take of fail to take a personnel action with respect to any employee or applicant because of any disclosure of information by employee or applicant that he or she reasonably believes evidences a violation of a law, rule or policy, or gross mismanagement, gross waste of funds; an abuse of authority . . . ;

c.    (11)    take or fail to take, recommend, or approve a personnel action if taking or failing to take such action would violate a veterans' preference requirement.

3.    The complaint claimed protected disclosures of BIA mismanagement were made to Dan Shillito on February 22, 2005, BIA Superintendent Kim Snyder on February 17, 2005, James Cason, Assistant Secretary of Indian Affairs on April 22, 2005, and Clay Gregory, BIA Regional Director on April 12, 2005.

4.    The complaint claimed protected disclosures of BIA mismanagement and retaliation were made to Dan Shillito on May 20, 2005, Kim Snyder on May 25, 2005, Lynn Gibson Assistant Special Agent-in-Charge, Office of Inspector General (OIG) on June 28, 2005, Dan Shillito on June 29, 2005

5.    The complaint claimed protected disclosures of BIA mismanagement and retaliation and request for relocation were made to Dan Shillito on July 13, 2005.

6.    The complaint claimed protected disclosures of BIA mismanagement were made in an e-mail about a Director, Office of Trust Records on July 13, 2005.

7.    The complaint claimed protected disclosures about BIA mismanagement and retaliation were made to the OSC on July 18, 2005, to Lynn Gibson, OIG on August 31, 2005, and to Dan Shillito on September 29, 2005.

Id.

In addition, by memorandum dated December 20, 2005, appellant advised OSC about <u>Cobell v. Norton</u> – a district court case concerning alleged Interior-wide mismanagement of Tribal and

Individual Trust accounts – and offered that this case bears some relevance to his whistleblowing disclosures. APS, pages A 93. By memorandum dated December 21, 2005, appellant advised OSC and OIG with an update of his whistleblowing disclosures, citing various examples of continued BIA mismanagement. APS, pages 94-125. The memorandum specifically recites the following examples of retaliation that have allegedly occurred since April 2005:

1.    BIA has excluded appellant from virtually all meetings, locked appellant from file room; curtailed appellant's access to legal resources, and encouraged or required BIA staff to shun appellant. Id.

2.    Appellant claims he was excluded not just from lease "negotiations", but from office lunches, birthday and holiday celebrations. Id.

In addition, by memorandum dated January 19, 2006, appellant responded to OSC regarding their preliminary determination to close their file on his complaint. APS, pages A 129-136.

The appellant received written notification from the Office of Special Counsel, dated February 2, 2006, that it was terminating its inquiry into the appellant's allegations on the bases that (1) the appellant's disclosures were not protected because they were made as part of his regular job duties, and (2) no covered personnel action has been taken against the appellant.

By memorandum dated February 16, 2006, appellant advised OSC regarding his performance appraisal and his lack of communication from the Solicitor's administration. APS, page A 147.

By memorandum dated February 17, 2006, appellant advised OSC of allegations that the Regional Solicitor had retaliated against him. APS, page A 176-7.

While the agency is unclear whether the OSC filed any subsequent response to the memoranda filed by appellant on February 16 and 17, 2006, it is undisputed that the appellant filed a whistleblowing complaint with OSC, and that appellant was subsequently notified of his right to file with the Board. The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before the OSC and makes nonfrivolous allegations that: (1) He engaged in whistleblowing activity by making a protected disclosure, and (2) the disclosure was a

contributing factor in the agency's decision to take or fail to take a personnel action. <u>Yunus v.</u>
<u>Department of Veteran's Affairs</u>, 242 F.3d 1367, 1371 (Fed. Cir. 2001). The appellant filed his IRA
appeal with the Board on February 23, 2006. From the record, it appears undisputed that appellant
raised the following issues with OCS in his initial complaint and subsequent memoranda forwarded
<u>prior to</u> OCS's issuance of its determination on February 2, 2005: that since April 2005, the agency
has: (1) continuously created a hostile work environment; (2) substantially altered appellant's
conditions of employment; (3) constructively reduced appellant's work responsibilities; (7)
threatened to terminate appellant's library subscription and blamed appellant's whistleblowing for
bringing on agency's own retaliation (February 17, 2006); (8) refused to allow appellant to work
from home office; (9) isolated appellant and withheld information routinely provided to all other
managers and staff, and; (10) failed to recommend or bestow an award.

As to the following issues: (4) failed to provide overdue performance appraisals; (5) down-
graded appellant's performance rating; (6) failed to select appellant for any one of several
promotions or transfers – there is an unresolved question whether these issues were properly brought
to OSC's attention prior to its notice of termination of its inquiry, dated February 2, 2006. *See* APS,
pages A 146 and A 176-7. By his own admission in the appeal filed with the Board, appellant
indicates that he has continued to submit evidence of subsequent developments to OSC, but through
written and telephonic means he has been unable to elicit any indication whether OSC will respond
further. *See* MSPB Appeal, page 1, under heading III. Letter from Office of Special Counsel.

On April 29, 2006, during the pendency of this appeal, appellant filed a motion for judgment
on the record, indicating that he was waiving his right to a hearing. Shortly thereafter, a conference
call was convened with the Administrative Judge and the appeal was suspended to allow for
mediation attempts to commence. Efforts at settlement through the agency's Office of Collaborative
Action and Dispute Resolution were unsuccessful. On August 17, 2006, the Administrative Judge
issued an order closing the record on September 13, 2006.

## ANALYSIS AND ARGUMENT

The record reasonably confirms that the Assistant Inspector General for Audits issued its final determination regarding an audit report on Lease Administration practices at the PSA on September 25, 1992. AR, Tab 11. This report was presented to the Assistant Secretary for Indian Affairs. Id. Specifically, the report's findings were critical of the agency's business lease fee collection procedures and the agency's apparent lack of necessary expertise and diligence in its handling of this programmatic function. Id. After having reviewed the OIG's initial findings, the agency concurred with all three of the OIG's corrective recommendations. Id. The matter therefore, by virtue of the September 25 letter, was deemed resolved. Id. Similarly, there is no dispute that shortly following this exchange, Dan Shillito reported to the newly created Field Solicitor position to assume full time, permanent legal counsel duties for the BIA client located in Riverside and Palm Springs. See Shillito Declaration. The position was a supervisory GS-15 slot, even though the Field Solicitor in this was the only Solicitor Office employee assigned to this outpost, and the principal duties of the Palm Springs Field Solicitor were to provide legal advice, counsel, and litigation support to two separate offices of the Bureau of Indian Affairs (BIA), the Palm Springs and Southern California regional BIA Field Offices. Id. The Palm Springs Field Solicitor has never possessed supervisor duties over any employee or manager of the client agency. Id. The Palm Springs Field Solicitor has historically been supervised by the Pacific Southwest Regional Solicitor. Id. On or around November 2003, Solicitor William Myers selected Shillito as successor for the Palm Springs Field Solicitor position, Robert McCarthy. Id. Mr. McCarthy was selected absent a vacancy announcement, but with others similarly expressing a desire to become Field Solicitor. Id. Once McCarthy was selected, Shillito became his first line supervisor, however, historically, he has delegated administrative functions and duties in the Region to the Deputy Regional Solicitor, Clementine Berger, a supervisory attorney advisor, GS-15. Id.

Historically, dating back to the creation of the Palm Springs Field Solicitor position in 1992, the office and library space occupied by the Field Solicitor is provided by the client agency, the

Bureau of Indian Affairs (BIA), Palm Springs Agency (PSA), at no cost to the Solicitor's Office. Id. The PSA also provides a telephone, cell phone, government vehicle usage, and office equipment and supplies as part of the continuing arrangement. Id. The PSA has offered these courtesies at its own expense since 1992. Id.

The record reflects that on April 22, 2005, the appellant prepared and issued a memorandum to the Assistant Secretary of Indian Affairs that made claims against the PSA for "gross mismanagement, waste and abuse" relative to its commercial and residential leasing programs. AR, Tab 12a. The memorandum was not reviewed nor authorized by the Regional Solicitor nor the Regional Director for BIA prior to its release. See Shillito Declaration. The response from the PSA to the memorandum clearly indicated that the accusations in the memorandum were not welcomed nor conceded by the agency, and the agency then and today concedes that the Regional Solicitor would not have concurred with the memorandum's arguable content, sensational tone, or its blatant circumvention of standard lines of agency and interagency communication. AR, Tab 12d; Shillito Declaration.

Both the content and addressee of this memorandum, then, and the subsequent memoranda to the Regional Solicitor along similar lines of criticism, plainly appear to meet the requisite reasonable belief test and is not required to be kept confidential. Sirgo v. Department of Justice, 66 M.S.P.R. 261 (1995). Thus such disclosures constitute protected disclosures as defined in 5 U.S.C. § 2302(b)(8). The question, therefore, centers on whether the PSA, BIA Regional Office, or Solicitor's Office reacted in an unlawful or retaliatory manner.

A.    **THE BIA AND SOLICITOR RESPONSES TO THE DISCLOSURES BY APPELLANT WERE NOT UNLAWFUL.**

In order to prove an allegation of reprisal for whistleblowing activities under the WPA, the appellant must also demonstrate, by preponderant evidence, that such disclosures were a contributing factor in the personnel actions taken against him. A personnel action means:

(I)    an appointment;

(ii)    a promotion;

(iii)   an action under chapter 75 of this title or other disciplinary or corrective action;

(iv)    a detail, transfer or reassignment;

(v)     a reinstatement;

(vi)    a restoration

(vii)   a reemployment;

(viii)  a performance evaluation under chapter 43 of this title;

(ix)    a decision concerning pay, benefits, or awards, or concerning education or training
        if the education or training may reasonably be expected to lead to an appointment,
        promotion, performance evaluation, or other action described in this subparagraph;

(x)     a decision to order psychiatric testing or examination; and

(xi)    any other significant change in duties, responsibilities, or working conditions.

5 U.S.C. § 2302(a)(2).

The burden of proof then shifts to the agency to demonstrate, by clear and convincing evidence, that it would have taken the same personnel action in the absence of such disclosure. 5 C.F.R. § 1209.11. *See* McDaid v. Department of Housing and Urban Development, 46 M.S.P.R. 416, 420 (1990). The Board has held that the issuance of cancellation of a vacancy announcement is not a personnel action under the WPA, but nonselection for the vacancy is. Slake v. Department of the Treasury, 53 M.S.P.R. 207, 211-16 (1992).

An employee may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. Scott v. Department of Justice, 69 M.S.P.R. 211, 238 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table).

Here the appellant contends that he was subjected to reprisal by both employees and

8

managers from the BIA at the PSA and the Regional offices, and by managers from the Solicitor's Office. The agency's arguments with respect to both agencies are separate and distinct.

1. **The actions taken by the BIA following the April 2005 memorandum, were not prohibited personnel practices.**

In his initial complaint to OSC, appellant identified the following allegations against the BIA: Retaliation by the BIA in the form of ostracism and reduction in support, e.g., law books. APS, pages A 1-15. By memorandum dated December 21, 2005, appellant advised OSC and OIG with an update of his whistleblowing disclosures, citing various examples of continued BIA mismanagement. APS, pages 94-125. The memorandum specifically recited the following examples of retaliation that have allegedly occurred since April 2005: The BIA has excluded appellant from virtually all meetings, locked appellant from file room; curtailed appellant's access to legal resources, and encouraged or required BIA staff to shun appellant; and appellant claims he was excluded not just from lease "negotiations", but from office lunches, birthday and holiday celebrations. Id.

The appellant has raised the theme of ostracism by BIA employees and managers at the PSA repeatedly in complaints to OSC and in this appeal. These accusations are only supported by the opportunities taken by the appellant to declare that this occurred or is occurring. Additionally, appellant refuses to acknowledge that he is not a BIA employee. To be sure, managers at the PSA Office became mistrustful of appellant following his issuance of memorandum to the Assistant Secretary. AR, Tabs 12d, 12f and 12g. The appellant, however, is limited to that which he complained of to OSC in his complaint and amendments. Here the appellant does not raise allegations of threats, swearing, or verbal or physical acts of aggression to intimidate appellant such that his claims brought against the BIA squarely fall within any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2); See Murphy v. Department of the Treasury, 86 M.S.P.R. 131 (2000). Appellant's perceptions relative to the PSA's alleged limitations on interactions with appellant, either professional or purely social, or its alleged decisions regarding

expenditure of funds for the benefit of appellant, such as subscriptions, library resources or client funded travel, or its decisions to allocate office space or office equipment, are individually and collectively not the types of abuses of authority the WPA was intended to reach. Wagner v. EPA, 51 M.S.P.R. 326 (1991); AR, Tabs 12c, 12e, 12h and 12j.

Further, the appellant has presented no evidence to demonstrate, that as a direct or ancillary consequence to his complaints of PSA mismanagement, he was ever required by the BIA or the Solicitor's Office to vacate his office space, or to cease his use of PSA facilities, equipment, or office resources, as has been the status quo since 1992. *See* Shillito Declaration. Further, and most importantly, despite appellant's bundle of accusations to the contrary, the BIA, particularly the PSA, has steadfastly defended its numerous and earnest efforts to improve its management of Indian Trust assets since the 1992 OIG audit. AR, Tabs 12c, 12e, 12h and 12j; Tabs 11a-l. Moreover, despite appellant's repeated protestations of agency mismanagement, a common, inescapable theme persists. Simply put, the OIG, OSC, Assistant Secretary of Indian Affairs, the BIA and the Solicitor have all reached a similar determination: that it cannot agree with the conclusions drawn by appellant that such mismanagement is factually occurring.

The accusation that the agency constructively reduced appellant's work responsibilities This allegation similarly lacks merit and support. Again, the client agency exercises varying discretion, depending on the work being performed, to seek legal advice from the Solicitor's Office. Conversely, the Regional Solicitor directly supervises the Field Solicitor and there is no evidence presented in this appeal that Dan Shillito constructively reduced appellant's work responsibilities. AR, Tabs. 8 -8u and 10 - 10g.

Finally, the Regional Director and PSA Superintendent were not contacted by the OSC pursuant to their supposed investigations into the complaints raised by appellant and, as such, they were unaware that such complaints were made. *See* Clay Gregory and Kim Snyder Declarations.

2.    **The disclosures made by appellant in April 2005, and thereafter, were not a contributing factor in the personnel actions taken against him, nor would the**

**agency have taken different actions in the absence of such disclosures.**

In his initial complaint to OSC, and in subsequent amendments made prior to February 2, 2006, appellant identified the following allegations against Dan Shillito and Ed Keable of the Solicitor's Office: (1) continuously created a hostile work environment; (4) failed to provide overdue performance appraisals; (5) down-graded appellant's performance rating; (6) failed to select appellant for any one of several promotions or transfers; (7) . . . blamed appellant's whistleblowing for bringing on agency's own retaliation (February 17, 2006); (8) refused to allow appellant to work from home office; (9) isolated appellant and withheld information routinely provided to all other managers and staff, and; (10) failed to recommend or bestow an award. *See* Appellant's MSPB Appeal, page 2.

As stated earlier, however, as to the following issues: (4) failed to provide overdue performance appraisals; (5) down-graded appellant's performance rating; (6) failed to select appellant for any one of several promotions or transfers – there is an unresolved question whether these issues were properly brought to OSC's attention prior to its notice of termination of its inquiry, dated February 2, 2006. *See* APS, pages A 146 and A 176-7; MSPB Appeal, page 1, under heading III. Letter from Office of Special Counsel.

    a.    **The appellant's performance ratings, including the issue of their timeliness, do not amount to adverse or retaliatory actions.**

The evidence filed by the appellant fails to establish that he was subjected to a hostile work environment by his supervisor, Dan Shillito, since April 2005, by either actionable hostility or intimidation, or subtler form of reprisal relative to performance evaluations . Specifically, there is no evidence that Shillito has taken any adverse personnel actions against the appellant at any time during his tenure as Field Solicitor. Rather, the evidence indicates that appellant has consistently received fully satisfactory performance evaluations. AR, Tabs 1c-f. The evidence indicates that appellant, and his peers, Barbara Goodyear and Clementine Berger, were given notification of standards but were not given a mid-year progress reviews by Shillito by the end of October 2005.

AR, Tabs 1b, 1e, page 21, 2b, page 14 and 36. The evidence indicates that at the commencement of the Department-wide switch from a former two-tier system to a new five-tier system, appellant received a higher or equal total numerical rating (3.4) of his peers, Goodyear (3.4) and Berger (3.0) AR, Tabs 1e, page 21, 33-35, 2b, page 14 and 36.

Here, the evidence demonstrates that with respect to performance, appellant was considered among the top performers rating-wise. Granted, the new five tier system created headaches for the agency during its initial implementation, but the confusion it raised did not materially affect appellant in a way that negatively differed from his peers. Of significant note, however, is the fact the performance rating complained of by the appellant – the July 1, to December 31, 2005 rating – was not signed by the appellant until after he received the February 2 notification of dismissal of his complaint by the OSC. AR, Tab 1d, page 21. In any event, appellant's criticisms of his performance rating were brought to the attention of Shillito and he responded with a complete account of his reasoning. AR, Tabs 1a and 1b.

      b.    **Failure to select appellant for any one of several promotions or transfers.**

The evidence indicates that in April 2003, appellant applied for the position he now encumbers through voluntary reassignment opportunities. AR, Tab 5. The evidence further indicates that subsequent voluntary reassignment opportunities arose in October 2005. AR, Tab 5b-d, pages 3-6. Prior to forwarding the Region's response regarding positions needed in the Pacific Southwest Region, Shillito faxed his draft memorandum request to appellant for comment. AR, Tab 5e, pages 7-13. Appellant responded with suggestions to better rationalize his candidacy to Associate Solicitor Ed Keable. Id. at 7. Shillito then forwarded his request to Keable on October 22, 2005. AR, Tab 5h, pages 14-19. In his request, Shillito expressed that the loss of Indian law attorney Myra Spicker at the Regional office had created a critical inability for the regional office to handle BIA regional matters north of Riverside. Id. Shillito acknowledged the appellant's desire to relocate from Palm Springs, but legitimately noted that if appellant's request for voluntary reassignment ultimately took appellant outside of the region, the ability for the region to keep abreast

of BIA legal issues would be further hampered, unless two attorneys working in Indian law are assigned to the region in this voluntary process. Id.

Subsequently, it was acknowledged by Keable that all the requests were in and that the Pacific Southwest Regional Office sought one attorney to work on Indian law matters. AR, Tab 5i. Shillito then forwarded to Keable three candidates, John Jasper, Karen Koch and the appellant, as having expressed an interest in the potentially available Indian law position. AR, Tab 5i, page 22. Shillito did not respond to Keable's request that Shillito contact him by January 6, 2006, to discuss his priorities for filling the position given the three individual expressions of interest. Id; See Declarations of Dan Shillito and Ed Keable.

On February 16, 2006, the Deputy Solicitor, David Bernhardt, issued an e-mail decision regarding his approval of four requests for voluntary transfer. AR, 5k, page 33. Ed Keable conferred with the Deputy Solicitor during the approval process. Keable Declaration. Karen Koch was selected for the Pacific Southwest Indian law position at the regional office. Id. Koch, who had been a term, client funded attorney handling Fish and Wildlife legal matters in the regional office was simply laterally transferred into the permanent GS-14, Indian law attorney position. Shillito and Keable Declarations. If asked to testify, Keable would state that he was aware of the issues between the appellant and the PSA and BIA leading up to his conference with the Solicitor. Keable Declaration. Their rationale to fill the regional GS-14 position with Koch amounted to two factors: First, Koch's former term position did not present a greater need than the vacant Indian law position, thus Koch's former position was deemed more fungible; Secondly, the position encumbered by the appellant was specifically created to address the recommendations in the OIG audit of 1992. Id. Both Shillito and the appellant possessed unique skill sets in the Department that were required of the Palm Springs Field Solicitor. Id. Moreover, Keable would testify that he viewed the conflicts present in Palm Springs with the Field Solicitor as issues that the Field Solicitor needed to address with the assistance from the Regional Solicitor. In any event, the position filled in Sacramento by Koch was a GS-14 position. AR, Tab 6a. At no time did the appellant express a willingness to

13

E 13

accept a downgrade in exchange for a transfer.  AR, Tab 5j, pages 25-32.

The evidence, as demonstrated by numerous unambiguous e-mails and indisputable underlying rationale all demonstrate that the agency's motives with respect to filling positions were legitimate and non-retaliatory.  It defies sound organizational judgment, much less budgetary responsibility, to accept appellant's argument that the Solicitor should have created a vacancy, perhaps irrevocably permanent, at a long established and critically needed GS-15 position in Palm Springs, for no other reason than to move appellant to another unjustifiable, non-existent GS-15 position elsewhere.

   c. **The Solicitor's Office has found no example of retaliation against appellant; therefore, its advice to appellant has focused on rebuilding his relationship with the client.**

The appellant raises in allegation in his MSPB complaint that the agency ". . . blamed appellant's whistleblowing for bringing on agency's own retaliation (February 17, 2006)."  *See* Appellant's MSPB Appeal, page 2. Here, again, this issue appears to have factually occurred after the appellant received the notification of dismissal of his complaint by the OSC, dated February 2, 2006. On this basis, the agency objects to the appellant raising this issue before the MSPB in this appeal.  In any event, the allegation appears to focus on a written exchange between the appellant and Shillito AR, Tabs 1 and 1a. The written memoranda speak for themselves and require no further clarification here.  The agency argues, however, that the tone and content of Shillito's responsive memorandum can hardly be characterized as hostile or accusatory. AR, Tab 1a.  Further, these written exchanges aptly illustrate the agency's insistence in treating appellant's accusations seriously, no matter how venomous they appear on paper, Id.  In essence, this allegation, as presented, is not actionable under the WPA.

   d. **The Solicitor's Office denies that it refused to allow appellant to work from home, or that it isolated appellant and withheld information routinely provided to all other managers and staff.**

In June 2005, appellant met with Shillito and Karen Glasgow, an attorney at the Oakland Field Office, in Palm Springs to discuss in person difficulties the appellant was having with his client. AR, Tabs 9 - 9a; Shillito Declaration. At that time, appellant, for the first time, expressed a desire to work at home a majority of the work week. Id. Shillito took the matter under advisement, and shortly thereafter, with the concurrence of Glasgow, Shillito informally telephone the appellant and informed him he could work from home. Id. This informal agreement occurred sometime in June or July 2005, and appellant took full advantage of the opportunity. Shillito and Kim Snyder Declarations. Later, under the day-to-day work interactions of the Deputy Regional Solicitor Clementine Berger, a formal written work at home agreement with appellant was executed in May 2006. Shillito Declaration.

Allegations by the appellant that the Regional Solicitor's Office persistently ignored the complainant or limited his access to important communications are equally unsupported. The agency acknowledges that due to budget limitations, the Field Solicitor was not able to communicate via internet link with the Solicitor community as were other solicitor employees in regional and some field offices that staffed more than one employee. AR, Tabs, 3, 4 and 4a. To compensate for this inconvenience, which pre-existed the complainant's tenure for more than ten years, the Regional Solicitor routinely had his secretary forward to the appellant all communications via facsimile. AR, Tabs 7a, 8 - 8u. Tabs 9 - a. Moreover, the examples of miscommunication that appellant identifies to support this accusation amount to incidental, insignificant, or random, isolated oversight. As such, the appellant's criticism of supervisor's documented attempts to keep him informed are not actionable under the WPA.

      e.    **The agency concedes that the appellant did not receive a performance award during the pendency of his complaints, but it denies that this decision was evidence of whistleblowing retaliation.**

The appellant is correct that he has not received an award since reporting as Field Solicitor. Likewise, no other similarly situated Supervisory Attorney-Advisor, GS-0905-15, in this region has

E 15

received an award during the time the appellant has served as Field Solicitor to the present. AR, Tab 3. The agency, therefore asserts that award allocation in this region, while not necessarily fair and equitable among higher ranking solicitor employees, is solely premised on budget availability. Shillito Declaration. Namely, the Solicitor's office has very little funding available for award purposes. Id. As such, annual fiscal award funding within the Solicitor's budget is first allocated to the lower graded non-attorney personnel who perform generally thankless work and, for obvious reasons, present greater economic need to be recognized annually. Id. The next available source of funding for awards comes from the client agencies, and these funding sources are initially dispersed among rank and file attorneys that have had an exceptional year. Id. Next in line are the non-supervisory GS-15s. Id. Finally, with little or nothing left over, the principal supervisory GS-15 managing attorneys are last in line. Id. This is why Dan Shillito, along with Clementine Berger, Barbara Goodyear and the appellant, all did not received an award for the period stated in appellant's complaint. Id.

Finally, Associate Solicitor Ed Keable and Regional Solicitor Dan Shillito were not contacted by the OSC pursuant to their supposed investigations into the complaints raised by appellant and, as such, they were unaware that such complaints were made until after the MSPB appeal was filed. *See* Keable and Shillito Declarations.

**B.    OTHER MATTERS**

On April 29, 2006, during the pendency of this appeal, appellant filed a motion for judgment on the record, indicating that he was waiving his right to a hearing. Shortly thereafter, a conference call was convened with the Administrative Judge and the appeal was suspended to allow for mediation attempts to commence. Efforts at settlement through the agency's Office of Collaborative Action and Dispute Resolution (CADR) were unsuccessful. Since that failed effort, appellant has repeatedly accused the agency and CADR of a wrongful collusion that effectuated an illegal suspension of the MSPB appeal process. Once again, this contention is derived solely from the appellant's spiteful imagination and is not supported by the record. In a series of written

E16

communications between the appellant and CADR, it is clear that efforts at settlement were frustrative solely by virtue of appellant's persistent, ever expanding accusations against the very people who were attempting to facilitate successful resolution to his complaints. *See* Record of CADR Communications, attached.[1] It becomes apparent in the final communication from CADR that Director Elena Gonzalez was so stunned by appellant's conduct, that she feared continued involvement with the appellant would inevitably result in CADR becoming a party defendant. *See* Memorandum dated July 7, 2006, attached. If this appeal has amply demonstrated anything concrete, Gonzalez's concern was not unwarranted. The agency, therefore, firmly protests the accusation that it entered into settlement attempts in bad faith, or that it prematurely ended those efforts without justifiable reasoning.

## CONCLUSION

In innumerable examples of vituperative memoranda, complaints, accusations and pleadings, the complainant has relentlessly lashed out against the performance and judgment of the OSC, OIG, BIA, PSA, Solicitor's Office, and CADR. In all instances, these institutions have determined that there is no merit to appellant's accusations. In sum, the appellant has failed to adduce any credible, reasonably interpreted evidence to suggest that the agency's actual or imputed knowledge of appellant's protected disclosures were in any way a contributing factor in BIA and Solicitor decisions, actions, or inactions identified in this complaint.

Respectfully submitted,

Clementine Berger
Deputy Regional Solicitor

By:     Kevin D. Mack
        Assistant Regional Solicitor
        Agency Representative

---

[1] Exceptions to Rule 408's prohibition on use of settlement documents/memoranda as evidence of liability. *See* Brocklesby v. U.S., 767 F.2d 1288, 1292 (9th Cir. 1985); Mendenhall v. National Trans. Safety Bd., 92 F.3d 871, 876 (9th Cir. 1996) (noting that an exception to Rule 408 may apply where evidence is offered for purposes other than proving liability).

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I am of 18 years of age or older and that a copy of the *Agency Close of Record Brief*, Docket No. SF-1221-06-0380-W-1, was sent via 1st Class Mail on September 13, 2006, to:

> Anthony L. Ellison
> Administrative Judge
> Merit Systems Protection Board
> San Francisco Regional Office
> 250 Montgomery Street, Suite 400
> San Francisco, California  94104
>
> Fax:  (415) 705-2945
>
> Appellant
>
> Robert J. McCarthy
> 78715 La Palma
> La Quinta, California  92253

Dated:  September 13, 2006

Jolene Conaty
Legal Assistant

18

## DECLARATION OF CLAYTON J. GREGORY

1.    I, Clayton Gregory, hereby declare I am the Regional Director, SES, of the Pacific Region, Bureau of Indian Affairs, Department of the Interior, Sacramento, California. I have served in this capacity since July 2004. I, along with eleven other regional directors have top level supervisory duties over twelve separate regions of trust resources of 562 federally recognized Indian Tribes and Alaskan Natives in Department of the Interior. Within my region, which includes specifically California, with served 102 federally recognized Tribes. I have field offices in Redding, Sacramento, Riverside, and Palm Springs that are managed by subordinate superintendents, who similarly have supervisory duties. I serve as manager of all functions and employees within this region. I have personal knowledge of the facts set forth below and am competent to testify to them if called to do so at hearing.

2.    At the time I assumed the Regional Director position, I became aware of the Audit Report prepared by the Office of the Inspector General and the criticisms of the BIA Palm Springs Office that were identified in the audit.

3.    Although I have periodically been informed by my Palm Springs Superintendent of continuing frustrations relative to relations between the Field Solicitor and the Palm Springs Agency, I was never made aware that Mr. McCarthy had filed a whistleblowing complaint with the Office of Special Counsel at any time in 2005. I was not made aware of this fact by any one until so informed recently.

5.    I have personally read the attached close of record brief and attest that the facts presented therein are accurate and complete insofar as they relate to me personally or to the BIA.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __13th__ day of September 2006, in Sacramento, California.


_____
Clayton J. Gregory

E20

09/13/2006 17:34 FAX 202 219 6780    DIV OF ADMIN/SOL    @002
09/13/2006 13:13 FAX    @002/003

## DECLARATION OF EDWARD T. KEABLE

1.    I, Edward Keable, hereby declare I am the Associate Solicitor - Administration, SES, of the Office of Solicitor, Department of the Interior, Washington, D.C. I have served in this capacity since January 2003.  My primary duties consist of managing the Office of Solicitor, including the functional areas of personnel, facilities, automated resources, records, and budget.  My position is supervisory, and my direct or indirect line of supervision extends to 19 individuals, 18 of which are located in Washington and one is located in Albuquerque, New Mexico.  I also supervise two contractors.  I have personal knowledge of the facts set forth below and am competent to testify to them if called to do so at hearing.

2.    After I became Associate Solicitor, I became aware of the Audit Report prepared by the Office of the Inspector General and the criticisms of the BIA Palm Springs Office that were identified in the audit.  I am also aware that a position of Supervisory Attorney-Advisor, GS-15, was created in the Palm Springs region of California to in 1992 to, among other Indian law related duties, address the recommendations of the OIG audit.

3.    The Solicitor, William Myers, my supervisor in my capacity as Associate Solicitor, selected Robert McCarthy to succeed Dan Shillito in the Palm Springs Field Solicitor position.  Mr. McCarthy was selected with my concurrence absent a vacancy announcement, but with others similarly expressing a desire to become Field Solicitor.  Once McCarthy was selected, Dan Shillito, the newly appointed Pacific Southwest Regional Solicitor, became his first line supervisor.

4.    Although I have periodically been informed by Mr. McCarthy and Mr. Shillito of continuing frustrations expressed by Mr. McCarthy pertaining to his work with the BIA, I was never made aware that McCarthy had filed a whistleblowing complaint with the Office of Special Counsel at any time in 2005.  I was not made aware of this fact by any one until so informed after this MSPB appeal

09/13/2006 17:34 FAX 202 219 67⬤⬤     DIV OF ADMIN/SOL                    ☐003
09/13/2006 13:13 FAX                                                      ☐003/003

was filed.

5.      I have personally read the attached close of record brief and attest that the facts presented

therein are accurate and complete insofar as they relate to me personally.

        I swear under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

        Executed this __13__ day of September 2006, in Washington, D.C.

                                        Edward T. Keable

## DECLARATION OF DANIEL G. SHILLITO

1.    I, Daniel Shillito, hereby declare I am the Regional Solicitor, SES-2, of the Pacific Southwest Region of the Office of Solicitor, Department of the Interior, Sacramento, California. I have served in this capacity since March 2002. I, along with eight other regional solicitors have top level supervisory duties over eight separate regions of public lands and waterways in Department of the Interior. Within my region, which includes California and Nevada, and some portions of Southern Oregon and Hawaii, I have field offices in Oakland and Palm Springs that are managed by subordinate Field Solicitors, who similarly have supervisory duties. I serve as manager of all functions and employees within this region. Our clients include the Bureau of Land Management, the U.S. Fish and Wildlife Service, the Bureau of Indian Affairs, the Bureau of Reclamation, the Minerals Management Service, the National Parks Service, and the U.S. Geological Survey. I have personal knowledge of the facts set forth below and am competent to testify to them if called to do so at hearing.

2.    From September 1992 to March 2002, or until the appellant was approved for transfer, I served as Field Solicitor for the Palm Springs Field Office. At the time I assumed these duties, there had not been a Solicitor Field Office in Palm Springs for the better part of ten years. My principal duties in Palm Springs were to provide legal advice, counsel, and litigation support to two separate offices of the Bureau of Indian Affairs (BIA), the Palm Springs and Southern California regional BIA Field Offices. At the time I assumed the Field Solicitor position, I became aware of the Audit Report prepared by the Office of the Inspector General and the criticisms of the BIA Palm Springs Office that were identified in the audit.

3.    The Solicitor, William Myers, my supervisor in my capacity as Regional Solicitor, selected my successor for the Palm Springs Field Solicitor position, Robert McCarthy. Mr. McCarthy was

selected absent a vacancy announcement, but with others similarly expressing a desire to become

Field Solicitor.  Once McCarthy was selected, I became his first line supervisor, however,

historically, I have delegated administrative functions and duties in the Region to the Deputy

Regional Solicitor, Clementine Berger, a supervisory attorney advisor, GS-15.

4.      Although I have periodically been informed by Mr. McCarthy and his client of continuing

frustrations expressed by McCarthy pertaining to his work with the BIA, I was never made aware

that McCarthy had filed a whistleblowing complaint with the Office of Special Counsel at any time

in 2005.  I was not made aware of this fact by any one until so informed by my personnel attorney,

a staff attorney in my office, on March 3, 2006.

5.      I have personally read the attached close of record brief and attest that the facts presented

therein are accurate and complete insofar as they relate to me personally or to BIA or the Solicitor's

role in this appeal generally.

        I swear under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

        Executed this 13th day of September 2006, in Sacramento, California.


                                    _Daniel G. Shillito_
                                    Daniel G. Shillito

S 74

## DECLARATION OF KIM L. SNYDER

1.    I, Kim Snyder, hereby declare I am the Superintendent, GS-14, of the Palm Springs Agency,

Bureau of Indian Affairs, Department of the Interior, Palm Springs, California. I have served in this

capacity since January 2003. I, along with three other regional superintendents directors have top

level supervisory duties over our regional areas with in the State. Within my region, we manage the

trust resources of the federally recognized Agua Caliente Tribe in Department of the Interior. My

first line supervisor is Clay Gregory, Regional Director. I serve as manager of all functions and

employees within the Palm Springs Agency. I have personal knowledge of the facts set forth below

and am competent to testify to them if called to do so at hearing.

2.    At the time I assumed the Superintendent position, I became aware of the Audit Report

prepared by the Office of the Inspector General and the criticisms of the BIA Palm Springs Office

that were identified in the audit.

3.    Although I have had varying levels of frustration with my office's relationship with the Field

Solicitor, I was never made aware that Mr. McCarthy had filed a whistleblowing complaint with the

Office of Special Counsel at any time in 2005. I was not made aware of this fact by any one until

after this MSPB appeal was filed.

5.    I have been personally aware of some form of work at home agreement between the Field

Solicitor and his supervisor since June 2005, based on my direct observations noting the continuing

absence of Mr. McCarthy in our office.

6.    I have personally read the attached close of record brief and attest that the facts presented

therein are accurate and complete insofar as they relate to me personally or to the BIA.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __13__ day of September 2006, in Sacramento, California.

_____
Kim L. Snyder

DANIEL G. SHILLITO
Regional Solicitor
KEVIN D. MACK
Assistant Regional Solicitor
U.S. Department of the Interior
Office of the Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, California 95825
Telephone: (916) 978-5681
Fax: (916) 978-5694

Attorneys for the Agency

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## SAN FRANCISCO REGIONAL OFFICE

ROBERT J. MCCARTHY,

                 Appellant,

      vs.

DEPARTMENT OF THE INTERIOR,

                 Agency.
_____ /

DOCKET NUMBER
SF-1221-06-0380-W-1

**AGENCY RESPONSES TO REQUEST
FOR PRODUCTION OF DOCUMENTS**

DATE: April 18, 2006

COMES NOW THE AGENCY, by and through its designated representative, Kevin D.

Mack, and provides the following document containing agency's responses to appellant's request

for production of documents.

1.     Produce and permit Appellant to inspect and copy each and every document and file in the
possession of the Agency, including all offices and bureaus of the Agency, that contains
information created after April 20, 2005, concerning the allegations of the Appeal and any
matters relevant to the subject matter of the Appeal. This request specifically includes all
notes, correspondence, calendar notations and similar documents whether in printed form,
on paper or contained in electronic form on a computer or other device.

**RESPONSE:**     **Refer to Agency Response to appeal.**

2.     Produce and permit Appellant to inspect and copy each and every document and file in the
possession of the Agency including all offices and bureaus of the Agency that contains

F 1

information relative to the answers to Interrogatories 1 and 2 above. This request specifically includes all notes, correspondence, calendar notations and similar documents whether in printed form, on paper or contained in electronic form on a computer or other device.

**RESPONSE:**     **Refer to Agency Response to appeal.**

Clementine Berger
Deputy Regional Solicitor

By:     Kevin D. Mack
Assistant Regional Solicitor
Agency Representative

F 2

DANIEL G. SHILLITO
Regional Solicitor
KEVIN D. MACK
Assistant Regional Solicitor
U.S. Department of the Interior
Office of the Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, California 95825
Telephone: (916) 978-5681
Fax: (916) 978-5694

Attorneys for the Agency

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## SAN FRANCISCO REGIONAL OFFICE

| | |
|---|---|
| ROBERT J. MCCARTHY, | |
| Appellant, | DOCKET NUMBER SF-1221-06-0380-W-1 |
| vs. | **AGENCY RESPONSES TO REQUEST FOR ADMISSIONS** |
| DEPARTMENT OF THE INTERIOR, | |
| Agency. | DATE: April 18, 2006 |

COMES NOW THE AGENCY, by and through its designated representative, Kevin D. Mack, and provides the following document containing agency's responses to appellant's request for admissions.

1. The Palm Springs Agency ("PSA") is unique among agencies of the Bureau of Indian Affairs ("BIA") in the extremely high volume and dollar value of the commercial and residential Indian land leases that it manages, in conjunction with the BIA's Pacific Regional Office ("PRO"), on behalf of members of the Agua Caliente Band of Cahuilla Indians ("Tribe").

**RESPONSE:**        **Deny. Lack of Knowledge.**

2. A 1991 investigation by the Office of the Inspector General ("OIG") found "serious abuses" in BIA's administration of the leasing program, including improvident approval of disadvantageous leases, and failure to ensure compliance with lease terms, including failure to collect rents, fees and bonds.

F 3

**RESPONSE**:        **Deny. Mischaracterization.**

3.        As a direct result of the OIG report, the Department of the Interior ("DOI") in 1992 created the Office of the Palm Springs Field Solicitor ("PSFS"), tasked with assisting BIA to bring its program into compliance with the trust obligation and with federal law and regulations, including 25 U.S.C. § 415 and 25 C.F.R. Part 162.

**RESPONSE**:        **Deny. Mischaracterization.**

4.        Among other things, the DOI also pledged to "totally automate the lease compliance activities," so that "default letters will be automatically generated as soon as a default occurs."

**RESPONSE**:        **Deny. Mischaracterization.**

5.        The BIA promised to renegotiate existing leases to bring them into compliance with fair market value, to aggressively market and negotiate new leases and to adopt long-term business leasing regulations.

**RESPONSE**:        **Admit.**

6.        Prior to February 28, 2006, the Agency had not adopted final business leasing regulations.

**RESPONSE**:        **Deny. Mischaracterization.**

7.        A "PC Lease" automated lease management program developed at great expense shortly after the OIG audit was never used by the PSA to monitor lease compliance, as intended.

**RESPONSE**:        **Deny. Mischaracterization.**

8.        Prior to April 20, 2005, the PSA had no automated lease information system.

**RESPONSE**:        **Deny. Mischaracterization.**

9.        The Agua Caliente Tribal Chairman has criticized BIA lease mismanagement alleging, among other things, that "unnecessary delays . . .result in an extreme hardship on the Tribe and lost revenue.

**RESPONSE**:        **Admit.**

10.        Since November 2003, Appellant has served as the PSFS in an office provided by the PSA and providing legal assistance to both the PSA and to the BIA's Southern California Agency in Riverside.

F 4

**RESPONSE**:        Admit.

11.    Appellant previously served for almost four years as Field Solicitor in Tulsa, where Appellant managed a twelve-person law office that served, among other clients, two BIA regional offices.

**RESPONSE**:        **He was Field Solicitor in Tulsa.  Deny remain allegations.  Lack of knowledge.**

12.    Appellant received STAR Awards, including monetary benefits, from the Solicitor's Office in 2001 and 2003.

**RESPONSE**:        **Deny.  Rewards speak for themselves.  Request offer of proof.**

13.    The Pacific Southwest Regional Solicitor served as PSFS for most of all of the period between 1992 and 2003.

**RESPONSE**:        Admit.

14.    Throughout 2004, Appellant routinely advised the BIA at the Agency and Regional Office levels regarding concerns about gross mismanagement and violation of law and regulations, with copies routinely provided to Appellant's supervisor, the Regional Solicitor.

**RESPONSE**:        **Deny.  Mischaracterization.**

15.    Throughout 2005, Appellant routinely communicated these concerns to higher level officials in Washington, filing extensive and well-documented complaints with officials in the Office of the Solicitor, the Office of the Special Trustee for American Indians ("OST") the Assistant Secretary-Indian Affairs ("AS-IA"), the OIG and the Office of Special Counsel ("OSC").

**RESPONSE**:        **Deny.  Mischaracterization.**

16.    By memo dated April 22, 2005, Appellant notified the AS-IA, with a copy to the Regional Solicitor, of allegations of gross mismanagement at the PSA.

**RESPONSE**:        Admit.

17.    Since Appellant's disclosures beginning in April of 2005, the BIA has excluded Appellant from virtually all meetings held at the PSA.

**RESPONSE**:        **Deny.  Lack of knowledge.**

F5

18.    Since Appellant's disclosures beginning in April of 2005, the Agency has locked Appellant out of the file room previously open to him.

**RESPONSE**:    **Deny. Mischaracterization. Lack of knowledge.**

19.    Since Appellant's disclosures beginning in April of 2005, the Agency removed a large number of legal resources from Appellant's law library.

**RESPONSE**:    **Deny. Mischaracterization.**

20.    Since Appellant's disclosures beginning in April of 2005, the Agency revoked an agreement to provide expanded library and filing space to Appellant.

**RESPONSE**:    **Deny. Mischaracterization.**

21.    Since Appellant's disclosures beginning in April of 2005, the Agency encouraged or required PSA staff not to discuss Agency business with Appellant.

**RESPONSE**:    **Deny.**

22.    Since Appellant's disclosures beginning in April of 2005, the Agency encouraged or required PSA staff not to speak with Appellant.

**RESPONSE**:    **Deny.**

23.    Since Appellant's disclosures beginning April of 2005, the Agency removed or excluded Appellant's name from invitations or sign-up lists for office lunches, birthday and/or holiday celebrations.

**RESPONSE**:    **Deny.**

24.    Between April 22, 2005, and February 28, 2006, Appellant's workplace has constituted, for him, a hostile work environment.

**RESPONSE**:    **Deny.**

25.    Between April 22, 2005, and February 28, 2006, Appellant's conditions of employment have been substantially altered, and his work responsibilities constructively reduced.

**RESPONSE**:    **Deny.**

26.    Between April 22, 2005, and February 28, 2006, the Agency did not timely provide Appellant with required performance appraisals.



**RESPONSE:**        **Deny.**

27.    Between April 22, 2005, and February 28, 2006, when this Appeal was filed with the MSPB, Appellant repeatedly asked Agency for relief from the retaliation Appellant alleged, including by applying for numerous transfers and other positions.

**RESPONSE:**        **Deny.**

28.    Between April 22, 2005, and February 28, 2006, the Agency declined Appellant's requests that Appellant be allowed to work from a home office.

**RESPONSE:**        **Deny.**

29.    Between April 22, 2005, and February 28, 2006, the Agency did not timely and routinely provide to Appellant information routinely provided to all other managers and staff.

**RESPONSE:**        **Deny.**

30.    Between April 22, 2005, and February 28, 2006, the Agency did not recommend or bestow an award on Appellant.

**RESPONSE:**        **Admit.**

31.    Appellant's is the only Field, Regional or Division Solicitor's Office without access to intra-Department email, making Appellant uniquely reliant upon mail, facsimile transmissions or phone calls to learn news of Agency actions.

**RESPONSE:**        **Deny.**

32.    Prior to February 28, 2006, the Agency did not notify Appellant of the resignation of the Solicitor and the appointment of an Acting or Deputy Solicitor.

**RESPONSE:**        **Deny.**

33.    Each and every document submitted by Appellant with the Appeal is an authentic copy of a genuine document that is what it purports to be.

**RESPONSE:**        **Deny. Legal conclusion.**

34.    By memo dated April 25, 2005, the Agency rescinded an earlier agreement to provide expanded space for the Field Solicitor's office, files and library. Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

F 7

**RESPONSE:**       **Deny.**

35.   On or about April 28, 2005, Appellant wrote letters of application for three positions within the Agency: Regional Fiduciary Trust Administrator; Director, Trust Review and Audit; and Attorney with the National Indian Gaming Commission. Appellant is qualified for each of the positions. As of February 28, 2006, those offices had not responded to Appellant.

**RESPONSE:**       **Deny. Lack of knowledge.**

36.   By memorandum dated May 18, 2005, Appellant complained about Agency retaliation for whistleblowing, including allegations that the Agency sought to limit Appellant's knowledge of PSA acitons, exclude Appellant from all meetings and discussions, limit Appellant access PSA files, directing staff not to discuss lease issues with Appellant, refusing to speak to Appellant, and reversing an earlier agreement to provide expanded space for the Field Solicitor's office, files and library. Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE:**       **Deny.**

37.   By memorandum dated May 20, 2005, Appellant again complained about Agency retaliation for whistleblowing and inquired whether the "Indian law" attorney in the Sacramento office had retired, yet no confirmation of the vacancy was provided to Appellant within the following six months. Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE:**       **Deny.**

38.   By memo dated May 24, 2005, the Agency advised Appellant that BIA had removed a large number of law books from the law library and that it intended to remove the table and chairs. Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE:**       **Deny.**

39.   By memo dated May 24, 2005, the Agency declined Appellant's request for information requested by a U.S. Congressperson, "since I have not formally (in writing) requested your advice or assistance in the matter." There were numerous such memos after April 2005, none before. Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE:**       **Deny.**

F 8

40. By memo dated May 25, 2005, Appellant again complained to the Agency regarding retaliation, including "creating a hostile workplace and deliberately interfering with my ability to provide legal services on behalf of the Secretary, and thereby protect trust beneficiaries, not only at the PSA, but throughout Southern California." Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE**:    **Admit to existence of memorandum. Deny content as characterized.**

41. By memo dated June 13, 2005, Appellant again complained of Agency gross mismanagement and retaliation. Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE**:    **Admit to existence of memorandum. Deny content as characterized.**

42. During a visit by the Regional Solicitor to the PSA of June 15, 2005, he was told by the Superintendent that the complaint--of allegedly retaliatory Agency actions were taken explicitly because of Appellant's report to the AS-IA, that they would not be modified in any way and that no staff, including the Deputy Superintendent would be allowed to meet with Appellant.

**RESPONSE**:    **Deny.**

43. By memo dated June 29, 2005, Appellant disclosed to the Regional Solicitor the informal "system" used by the BIA to keep track of lease compliance. Said "system" contained extremely sparse and inadequate data concerning leases.

**RESPONSE**:    **Admit to existence of memorandum. Deny content as characterized.**

44. By memo dated July 5, 2005, Appellant wrote to the Regional Solicitor with a Request for Relocation, recounting months of retaliation and confirming that BIA had acknowledged to Regional Solicitor that these actions were taken explicitly because of Appellant's report to the AS-IA, and that they would not be modified in any way.

**RESPONSE**:    **Admit to existence of memorandum. Deny content as characterized.**

45. By memo dated July 11, 2005, Appellant advised the Director, Office of Trust Records, of allegations regarding gross mismanagement of trust records.

**RESPONSE**:    **Deny.**

F 9

46.    By memo dated July 13, 2005, Appellant advised the Director, Office of Trust Records, that PSA had lost important lease approval records within months of approving them, then denied their existence.

**RESPONSE**:        **Deny.**

47.    By memo dated July 13, 2005, Appellant advised the Regional Solicitor regarding BIA losing critical lease records and compromising the interests of landowners, and also discussed ongoing retaliation and requests for transfer.

**RESPONSE**:        **Deny.**

48.    By memo dated July 18, 2005, Appellant disclosed to the Office of the Special Counsel allegations that Agency officials "routinely violate law, rules and regulations applicable to the management of Indian trust assets and income, grossly mismanage said assets and have committed gross waste of federal and Indian funds."

**RESPONSE**:        **Deny; lack knowledge.**

49.    By memo dated August 4, 2005, the Director, Office of Trust Records, advised the Acting Director, Office of Trust Review and Audit (with copy to BIA Regional Office) of appellant's disclosures about poor records management at BIA.

**RESPONSE**:        **Deny; lack knowledge.**

50.    By memo dated August 31, 2005, Appellant updated OIG regarding his record of disclosures.

**RESPONSE**:        **Deny; lack knowledge.**

51.    By memo dated September 29, 2005, Appellant disclosed to the Associate Solicitor, Administration, and the Regional Solicitor a news article (Ostracism can cause physical pain"), with Appellant's handwritten note, with respect to his injuries from retaliation.

**RESPONSE**:        **Admit.**

52.    By memo dated October 7. 2005, Appellant again advised the Regional Solicitor and Associate Solicitor, Administration, regarding continued Agency retaliation and his desire for relocation.

**RESPONSE**:        **Admit to existence of memorandum.  Deny content as characterized.**

53.    By October 12, 2005,, "All Employee Message" the Solicitor required all supervisors and managers to provide interim performance appraisal reviews for all employees by October 28,

F 10

and final performance appraisals by the end of 2005. Appellant did not receive an interim review, received no appraisal for the period 3/1/05 to 6/1/05, and did not receive a final appraisal until February 13, 2006.

**RESPONSE**:        **Admit to existence of memorandum.  Deny content as characterized.**

54.    By memo dated October 18, 2005, Appellant acknowledged Regional Solicitor's recommendation that Appellant be transferred to Sacramento and suggested a stronger rationale, including budget savings. Contemporaneously, the Regional Solicitor received a copy of this memo.

**RESPONSE:**        **Deny.**

55.    By memo dated December 20, 2005, Appellant advised OSC about *Cobell v. Norton* and its relevance to whistleblowing disclosures.

**RESPONSE:**        **Deny.**

56.    By memo dated December 21, 2005, Appellant advised OSC and OIG, updating and summarizing whistle blower disclosures and enclosing a copy of the 1992 OSC audit.

**RESPONSE:**        **Deny.**

57.    By memo dated December 22, 2005, Appellant advised the Associate Solicitor, Division of Administration, that he had not received from either Administration of the Regional Office a 12/19/05 notice of opportunities for reassignment.  Contemporaneously, the Regional Solicitor received a copy of this memo.

**RESPONSE:**        **Admit.**

58.    By memo dated December 23, 2005, Appellant advised the Associate Solicitor, Division of Administration of Appellant's Applications for Voluntary Reassignment Opportunities (Sacramento Regional Office, the Albuquerque Regional Office and the Portland Regional Office).  Contemporaneously, the Regional Solicitor received a copy of this memo.

**RESPONSE:**        **Admit.**

59.    By memo dated January 19, 2006, Appellant advised OSC re: issues of protected disclosures and retaliatory personnel actions enclosing copy of Appellant's job description and copies of earlier job applications.

**RESPONSE:**        **Deny.**

F 11

60.  By memo dated February 13, 2006, Appellant advised Associate Solicitor, Division of Administration and Regional Solicitor of continuing failure to include the Office of the Palm Springs Field Solicitor in routine communications to all other offices and employees. Neither office acknowledged this memo at any time prior to February 28, 2006.

**RESPONSE:**     **Deny.**

61.  On or about February 13, 2006, Appellant received overdue Performance Appraisal from Regional Solicitor rating Appellant "Fully Successful," which is the mid-category between the highest and lowest possible ratings.

**RESPONSE:**     **Deny.**

62.  By memo dated February 13, 2006, Appellant advised Associate Solicitor, Division of Administration and Regional Solicitor of his objection to the allegedly retaliatory performance appraisal.

**RESPONSE:**     **Admit to existence of memorandum. Deny content as characterized.**

63.  By memo dated February 13, 2006, Appellant advised OSC regarding Performance Appraisal and response thereto, as well as the Appellant Memorandum regarding lack of communication from administration.

**RESPONSE:**     **Deny.**

64.  By memo dated February 16, 2005 (sic), Appellant advised OSC regarding Memorandum to BIA concerning BIA landlocking 40-acre Indian trust parcel then pressuring owners into selling at "fire sale" prices, without advising Indians of agency power of imminent domain.

**RESPONSE:**     **Deny.**

65.  By memo dated February 16, 2005 (sic), Appellant advised PSA concerning disclosure by landowners to Field Solicitor that BIA had landlocked 40-acre Indian trust parcel then pressured owners into selling at "fire sale" prices, without advising Indians of agency power of imminent domain (and then being unable to even complete the ill-advised "fire sale"). Contemporaneously, the Regional Solicitor and BIA Regional Director received a copy of this memo.

**RESPONSE:**     **Admit to existence of memorandum. Deny content as characterized.**

66.  By memo dated February 17, 2006, Regional Solicitor criticized Appellant for allegedly "inappropriate" objections to performance appraisal and for whistleblowing disclosures, alleged failure to "establish and maintain a constructive working relationship with BIA in

F12

order to represent the Department's interest in a manner required of your position" and alleged failure "to restore the relationship you once held with this client." The Regional Solicitor also warned that Appellant's law library might no longer be updated and announced that Appellant had not been selected for transfer to any of the existing vacancies, including in the Sacramento office, allegedly due to budget concerns. The Regional Solicitor contended that no awards were given to manager in the region solely due to a limited budget.

**RESPONSE**:        **Admit to existence of memorandum. Deny content as characterized.**

67.    Appellant made protected disclosures under the Whistle blower Protection Act.

**RESPONSE**:        **Deny.**

68.    Appellant's disclosures were made no as part of his regular job duties through normal channels, but rather to "disclose waste, fraud, abuse and corruption to appropriate authorities," as all federal employees are required to do.

**RESPONSE**:        **Deny.**

69.    Appellant's disclosures have subjected him to adverse personnel actions including diminution in responsibilities, a hostile work environment, changed working conditions and loss of other job opportunities, as well as physical and emotional harm.

**RESPONSE**:        **Deny.**

70.    Appellant has exhausted OSC remedies with respect to all issues raised in the Appeal.

**RESPONSE**:        **Deny.**

71.    The MSPB has jurisdiction over this Appeal.

**RESPONSE**:        **Deny.**

                    Clementine Berger
                    Deputy Regional Solicitor

                    *Kevin D. Mack*

        By:    Kevin D. Mack
               Assistant Regional Solicitor
               Agency Representative

F 13

DANIEL G. SHILLITO
Regional Solicitor
KEVIN D. MACK
Assistant Regional Solicitor
U.S. Department of the Interior
Office of the Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, California 95825
Telephone: (916) 978-5681
Fax: (916) 978-5694

Attorneys for the Agency

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
SAN FRANCISCO REGIONAL OFFICE

| | |
|---|---|
| ROBERT J. MCCARTHY, | DOCKET NUMBER SF-1221-06-0380-W-1 |
| Appellant, | |
| vs. | **AGENCY RESPONSES TO DISCOVERY PURSUANT TO ADMINISTRATIVE JUDGE'S ORDER** |
| DEPARTMENT OF THE INTERIOR, | |
| Agency. | DATE: August 22, 2006 |

COMES NOW THE AGENCY, by and through its designated representative, Kevin D. Mack, and provides the following document containing agency's responses to appellant's previous requests for discovery pursuant to Administrative Judge Ellison's order dated July 31, 2006.

**ADMISSIONS**

1.  The Palm Springs Agency ("PSA") is unique among agencies of the Bureau of Indian Affairs ("BIA") in the extremely high volume and dollar value of the commercial and residential Indian land leases that it manages, in conjunction with the BIA's Pacific Regional Office ("PRO"), on behalf of members of the Agua Caliente Band of Cahuilla Indians ("Tribe").

**RESPONSE**: **Deny. The agency agrees that the Palm Springs Agency is responsible for managing a high volume and dollar value from its commercial and residential Indian land leases on behalf of allotted interests in the area, but it denies that there are no other BIA field agencies with comparable high volume/dollar**

G 1

leasing responsibilities. To this extent, the agency admits to this request only as to the Palm Springs Agency.

17. Since Appellant's disclosures beginning in April of 2005, the BIA has excluded Appellant from virtually all meetings held at the PSA.

RESPONSE: Deny. The Palm Springs Agency, Bureau of Indian Affairs, is one of several agencies within Department of the Interior that are stand-alone agencies (such Bureau of Land Management, U.S. Fish and Wildlife, U.S. Park Service, Bureau of Reclamation, etc.) that receive legal advice exclusively from the Solicitor's Office, also an agency within Interior. Notwithstanding the requirement that all Interior agencies coordinate all legal issues through the Solicitor, there is no requirement that any agency provide an open door policy to the Solicitor, or other sister agencies, to its meetings, internal or otherwise. Moreover, the Palm Springs Agency is unique in that it provides office space, equipment and library use and materials to the Field Solicitor as a matter of interagency courtesy only. There is no requirement or formal understanding whatsoever that the BIA must furnish this space at its own expense to the Solicitor's Office. Likewise, there is no requirement that the BIA must include the Field Solicitor in its meetings.

35. On or about April 28, 2005, Appellant wrote letters of application for three positions within the Agency: Regional Fiduciary Trust Administrator; Director, Trust Review and Audit; and Attorney with the National Indian Gaming Commission. Appellant is qualified for each of the positions. As of February 28, 2006, those offices had not responded to Appellant.

RESPONSE: Deny as to the position applied for under the Regional Fiduciary Trust Administrator. A search of records by Rick Fielitz, Administrative Officer, Office of Special Trustee, Bureau of Indian Affairs, and his staff show no record of an application by the appellant on or around April 28, 2005, for a a position advertised within the Regional Fiduciary Trust Administrator.

Admit as to the position of Director, Trust Review and Audit, applied for by appellant on or around April 28, 2005. Review of records by Rick Fielitz, Administrative Officer, Office of Special Trustee, Bureau of Indian Affairs, and his staff show appellant did apply for this position, but he was found not qualified for the position and, as such, his application was not sent to the selecting official. Currently, there is no copy of the letter sent to appellant that notified him of this determination, but the vacancy announcement package indicates that appropriate determination letters were sent to all applicants.

Admit as to the position of Attorney with the National Indian Gaming Commission, applied for by appellant on or around April 28, 2005. Review of records by Penny Coleman, General Counsel, National Indian Gaming

G-2

Commission, selecting official for the position, show appellant did apply for this position, but he ultimately was not hired for the position. Currently, there is no copy of the letter sent to appellant that notified him of this determination, and Ms. Coleman admits that she may have inadvertently neglected to notify appellant (and perhaps others) of her decision. The agency must point out, however, that the Secretary of the Department of the Interior is not responsible for policies and practices of the National Indian Gaming Commission. The Commission is a stand-alone organization, and its ability to hire, supervise, or terminate its employees does not require approval or compliance with Interior policies. *See* 25 U.S.C. § 2707.

48.   By memo dated July 18, 2005, Appellant disclosed to the Office of the Special Counsel allegations that Agency officials "routinely violate law, rules and regulations applicable to the management of Indian trust assets and income, grossly mismanage said assets and have committed gross waste of federal and Indian funds."

**RESPONSE:** **Deny.  The agencies, BIA and the Solicitor's Office, were not made aware of these disclosures to OSC at any time prior to the filing of this MSPB appeal. Moreover, the Solicitor and the BIA assert that they were not constructively informed of these disclosures in any communications with the appellant, with OSC, or internally, at anytime prior to the filing of this appeal.**

50.   By memo dated August 31, 2005, Appellant updated OIG regarding his record of disclosures.

**RESPONSE:** **Deny.  The agencies, BIA and the Solicitor's Office, were not made aware of these disclosures to OIG at any time prior to the filing of this MSPB appeal. Moreover, the Solicitor and the BIA assert that they were not constructively informed of these disclosures in any communications with the appellant, with OSC, or internally, at any time prior to the filing of this appeal.**

## INTERRROGATORIES

4.   Identify each and every attorney position within the Office of the Solicitor that has been filled by transfer, promotion or other hiring process since April 20, 2005. For each such position, describe the position by title, location and grade, and state the date the position became open, the date it was filled, the manner in which it was filled (i.e., transfer, promotion, new hire, etc.) and the identity of the person who filled the position.

**RESPONSE:** As to the Pacific Southwest Region only:

**Attorney-Advisor, GS-14, Sacramento, California.  Filled Karen Koch by voluntary reassignment.  Requests for candidates for voluntary reassignment were sought by the Solicitor on October 13, 2005.  The Regional Solicitor**

G 3

responded with candidates, including the appellant, on October 21, 2005. Additional candidates were sought on December 19, 2005. The solicitor's decision to voluntarily reassign Karen Koch from a GS-14 term, client funded position to a permanent GS-14 attorney-advisor position was announced on February 16, 2006.

Attorney-Advisor, GS-14, Sacramento, California. Edmund Gee, an attorney-advisor, GS-14 term/client funded position, working in water law exclusively, was transferred to a attorney-advisor, GS-14 permanent position, effective August 5, 2005, working in water law exclusively. The transfer was carried out non-competitively.

5.  Identify each and every attorney position within the Office of the Solicitor that has been identified and vacant since April 20, 2005, and that remains vacant as of this date. For each such position, describe the position by title, location and grade, and state the date the position became open.

RESPONSE: Supervisory Attorney-Advisor, GS-15, Assistant Solicitor, Division of Indian Affairs, Washington, DC. The position was advertised March 27, 2005, and was filled August 12, 2005.

Attorney-Advisor, GS-15, Team Leader, Division of Indian Affairs, Washington, DC. There were four positions advertised on March 27, 2005, and three were filled on August 12, 2004. One accepted applicant vacated the position, leaving two current vacancies.

Supervisory Attorney-Advisor, GS-15, Albuquerque, New Mexico. This position was advertised on October 2, 2005, and filled March 24, 2006.

Supervisory Attorney-Advisor, GS-15, Portland, Oregon. This position, for an Assistant Regional Solicitor, Land and Water Division, was advertised internally only for applicants currently working in the Pacific Northwest Region. The position was advertised and filled in March 2006.

Supervisory Attorney-Advisor, GS-15, Billings, Montana. This position was advertised on December 6, 2005, and re-advertised on August 10, 2006.

6.  Identify each and every award given to an attorney in the Office of the Solicitor since April 20, 2005. For each award, identify the title of the award; the monetary or other benefits bestowed with the award, the individual and the agency that nominated and/or bestowed the award and the attorney who received the award. For each such attorney, describe the position by title, location and grade.

G-4

RESPONSE: **As to the Pacific Southwest Region only:**

> **See attachment.**

7. Identify the Numeric Summary Rating given to each attorney employee of the Office of the Solicitor on his or her most recent Performance Appraisal after April 20, 2005. For each such rating, provide the information by Division, Regional or Field Office. Within each such office, provide the information by grade of the employee, and identify any such employees who are management (i.e., Associate Solicitor, Assistant Solicitor, Regional Solicitor, Deputy Regional Solicitor, Associate Regional Solicitor, Assistant Regional Solicitor, Field Solicitor, etc.).

RESPONSE: **As to the Pacific Southwest Region only:**

> **See attachment.**

## AGENCY RESPONSES TO THIRD SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION AND DOCUMENTS, AND REQUESTS FOR ADMISSIONS

The following responses were provided to appellant on June 15, 2006:

## INTERROGATORIES

1. Please described all meetings and discussions between officials of the Office of the Solicitor (not including appellant) and the Office of the Inspector General with regard to appellant and with regard to any issues raised in this appeal, specifying for each such discussion or meeting, the date and time thereof, individuals who participated, who initiated the meeting or discussion, the details or matters that were disclosed or discussed, and the outcome of any such meetings or discussions.

RESPONSE: **In mid May 2006, Dan Shillito contacted Special Agent-in-Charge Dave Brown, when, in passing, Brown mentioned to Shillito that the office had received a complaint from "Palm Springs." Both confirmed that the brief conversation occurred in mid to late 2005, and that the conversation did not include details about the complaint or the identity of the complainant. Other than the exchanges described, no other meetings discussions occurred between the IG's office and any official or employee of the Solicitor's Office at any time regarding allegations or complaints raised by the appellant.**

2. Please described all meetings and discussions between officials of the Office of the Solicitor and the Office of the Special Counsel with regard to appellant and with regard to any issues

G5

raised in this appeal, specifying for each such discussion or meeting, the date and time thereof, individuals who participated, who initiated the meeting or discussion, the details or matters that were disclosed or discussed, and the outcome of any such meetings or discussions.

RESPONSE: **No such meetings or discussions have ever occurred between the Office of Special Counsel and any official or employee of the Solicitor's Office at any time regarding allegations or complaints raised by the appellant.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce and permit appellant to inspect and copy each and every document and file in the possession of the agency including all offices and bureaus of the agency, that contain information relative to the answers in Interrogatories 1 and 2 above. This request specifically includes all notes, correspondence, calendar notations, and similar documents whether in printed form, on paper, or contained in electronic form on a computer or other device.

RESPONSE: **No such documentation or files were created by the Solicitor or BIA offices, nor does such documentation within theses offices exist in any form.**

## REQUESTS FOR ADMISSIONS

1. Admit that one or more official in the Office of the Solicitor (not including appellant) discussed appellant's complaints with one or more officials in the office of the Inspector General in October 2005.

RESPONSE: **Deny. See response to Interrogatory No. 1 above.**

2. Admit that the agency committed prohibited personnel practices against appellant because of complaints filed by appellant with OIG and/or OSC.

RESPONSE: **Deny. See responses to Interrogatories No. 1 and 2 above. Further, the agency denies that prohibited personnel practices were ever committed against the appellant at any time.**

The foregoing responses, as well as all previously submitted responses to discovery by the Solicitor and BIA offices, are true and correct under all penalties available to the Merit Systems Protection Board, including penalty of perjury, if appropriate.

Clementine Berger
Deputy Regional Solicitor

By:    Kevin D. Mack
Assistant Regional Solicitor
Agency Representative

G6

## CERTIFICATE OF SERVICE

I certify that a copy of the *Agency Responses to Request for Admissions*, Docket No. SF-1221-06-0380-W-1, was sent via First Class Mail on August 22, 2006, to the following:

Appellant

Robert J. McCarthy
78715 La Palma Drive
La Quinta, California  92253


Dated:  August 22, 2006

Jolene Conaty
Legal Assistant

G-7

## Declaration

I, Carolyn Takehara-Lee, Administrative Technician, Office of the Regional Solicitor, Pacific Southwest Region, am the primary person responsible for maintaining regional information regarding employee recognition or awards. Regional information includes the Regional Office (Sacramento, CA), San Francisco Office of the Field Solicitor (Oakland, CA) and the Palm Springs Office of the Field Solicitor (Palm Springs, CA).

This declaration is in response to a request to provide information to:

> "Identify each and every award given to an attorney in the Office of the Solicitor since April 20, 2005. For each award, identify the title of the award: the monetary or other benefits bestowed with the award, the individual and agency that nominated and/or bestowed the award and the attorney who received the award. For each such attorney, describe the position by title, location and grade."

I submit the attached recognition or award information which is limited to the employees of Pacific Southwest Region. This information does not include length of service recognition.

To the best of my knowledge and belief, the foregoing is true and correct.


_____        <u>August 11, 2006</u>
Carolyn Takehara-Lee                Date
Administrative Technician


Attachment


G 8

PACIFIC SOUTHWEST REGION

AWARDS AFTER APRIL 20, 2005

PAGE 1

| OFC | DATE OF AWARD( Note 1) | EMPLOYEE NAME | TITLE (Note 2) | GRADE | TYPE OF AWARD | MONETARY OR OTHER BENEFIT | AGENCY FUNDING AWARD | AWARD NOMINATED OR BESTOWED BY: |
|---|---|---|---|---|---|---|---|---|
| | | | | | FY 2005 -after April 20, 2005 | | | |
| SAC | 06/21/05 | Karen Koch | Attorney | 14 | STAR AWARD | $1,000.00 | SOL | Clementine Berger |
| SAC | 06/21/05 | Kaylee Allen | Attorney | 14 | STAR AWARD | $1,000.00 | SOL | Clementine Berger |
| SAC | 06/21/05 | Cheryl Dobson | Attorney | 14 | STAR AWARD | $800.00 | SOL | Clementine Berger |
| SAC | 06/21/05 | Lynn Cox | Attorney | 15 | STAR AWARD | $1,000.00 | SOL | Clementine Berger |
| SAC | 06/21/05 | Kerry O'Hara | Attorney | 15 | STAR AWARD | $1,000.00 | SOL | Clementine Berger |
| SAC | 06/21/05 | Jim Monroe | Attorney | 14 | STAR AWARD | $1,000.00 | SOL | Clementine Berger |
| SAC | 08/02/05 | Erica Niebauer | Attorney | 14 | STAR AWARD | $1,750.00 | BLM/CA | James Abbott |
| SAC | 08/02/05 | Nancy Zahedi | Attorney | 14 | STAR AWARD | $1,750.00 | BLM/CA | James Abbott |
| SAC | 08/02/05 | Amy Aufdemberge | Attorney | 14 | STAR AWARD | $1,750.00 | BLM/NV | Robert Abbey |
| SF | 08/05/05 | Suzanne Boyce-Carlson | Attorney | 14 | STAR AWARD | $1,000.00 | SOL | Barbara Goodyear |
| SF | 08/05/05 | Carolyn Lown | Attorney | 14 | STAR AWARD | $3,000.00 | SOL | Barbara Goodyear |
| SF | 08/05/05 | Karen Glasgow | Attorney | 14 | STAR AWARD | $1,350.00 | SOL | Barbara Goodyear |
| SF | 08/05/05 | Charles McKinley | Attorney | 15 | STAR AWARD | $1,000.00 | SOL | Barbara Goodyear |
| SAC | 09/08/05 | Kevin Mack | Attorney | 14 | STAR AWARD | $2,000.00 | BIA | Amy Dutschke |
| SAC | 10/11/05 | James Turner | Attorney | 15 | STAR AWARD | $3,500.00 | BOR | John Davis |
| SAC | 10/11/05 | Edmund Gee | Attorney | 14 | STAR AWARD | $1,750.00 | BOR | John Davis |
| | | | | | FY 2006 to date | | | |
| SAC | 04/20/06 | Kerry O'Hara | Attorney | 15 | SUPERIOR SERVICE | NA | SOL | Daniel Shillito |
| SAC | 04/20/06 | Cheryl Dobson | Attorney | 14 | SUPERIOR SERVICE | NA | SOL | Daniel Shillito |
| SAC | 07/31/06 | Stephen Palmer | Attorney | 14 | STAR AWARD | $1,363.63 | BOR | Robert Quint |

Note 1.  Dates reflect the date awards were finalized.  Awards for Turner & Gee were FY 05 but were delayed pending completion of the Reimbursement Agreements.

Note 2.  Attorney-Adviser (General) is abbreviated to Attorney.

G-9

## Declaration

I, Carolyn Takehara-Lee, Administrative Technician, Office of the Regional Solicitor, Pacific Southwest Region, am the primary person responsible for maintaining regional information regarding employee performance standards and results documents. Regional information includes the Regional Office (Sacramento, CA), San Francisco Office of the Field Solicitor (Oakland, CA) and the Palm Springs Office of the Field Solicitor (Palm Springs, CA).

This declaration is in response to a request to provide information to:

> "Identify the Numeric Summary Rating given to each attorney employee of the Office of the Solicitor on his or her most recent Performance Appraisal after April 20, 2005. For each such rating, provide the information by Division, Regional or Field Office. Within each such office, provide the information by grade of the employee, and identify any such employees who are management (i.e., Associate Solicitor, Assistant Solicitor, Regional Solicitor, Deputy Regional Solicitor, Associate Regional Solicitor, Field Solicitor, etc.)."

I submit the attached information which is limited to the employees of Pacific Southwest Region. To the best of my knowledge and belief, the foregoing is true and correct.

_____

Carolyn Takehara-Lee
Administrative Technician

August 11, 2006
Date

Attachment

G10

Pacific Southwest Region
Performance Appraisals after April 20, 2005.
Rating Period:  July 1, 2005 through December 31, 2005
(non-SES)

| NUMERIC RATING | TYPE | DIVISION | GRADE | TITLE | STATUS |
|---|---|---|---|---|---|
| 3.40 | Fully Successful | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.00 | Fully Successful | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.80 | Exceptional | Regional Office | 15 | Attorney-Adviser (General) | Non-Supervisory |
| 3.80 | Superior | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.20 | Superior | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.40 | Fully Successful | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.00 | Superior | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.40 | Fully Successful | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.00 | Superior | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.80 | Exceptional | Regional Office | 15 | Attorney-Adviser (General) | Non-Supervisory |
| 4.80 | Exceptional | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.00 | Fully Successful | Regional Office | 12 | Attorney-Adviser (General) | Non-Supervisory |
| 3.00 | Fully Successful | Regional Office | 15 | Attorney-Adviser (General) | Non-Supervisory |
| 4.00 | Superior | Regional Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.40 | Fully Successful | Field Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.20 | Fully Successful | Field Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 3.40 | Fully Successful | Field Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.40 | Superior | Field Office | 14 | Attorney-Adviser (General) | Non-Supervisory |
| 4.40 | Superior | Field Office | 15 | Attorney-Adviser (General) | Non-Supervisory |
| 3.00 | Fully Successful | Regional Office | 15 | Deputy Regional Solicitor (Supervisory Attorney-Adviser (General)) | Supervisory |
| 3.40 | Fully Successful | Field Office | 15 | Field Solicitor (Supervisory Attorney-Adviser (General)) | Supervisory |
| 3.40 | Fully Successful | Field Office | 15 | Field Solicitor (Supervisory Attorney-Adviser (General)) | Supervisory |
| * | * | Regional Office | ES | Regional Solicitor | Executive |

* No information available in file.

G 11

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WESTERN REGIONAL OFFICE

| | | |
|---|---|---|
| **ROBERT J. MCCARTHY** | ) | **DOCKET NUMBER** |
| **Appellant,** | ) | **SF-1221-06-0380-W-1** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEPARTMENT OF THE INTERIOR,** | ) | **DATE:  September 13, 2006** |
| **Agency.** | ) | |

## APPELLANT'S FINAL SUBMISSIONS FOR RECORD – FIRST SUPPLEMENT

Almost three years after Appellant came to Palm Springs and began advising the PSA about its lease management deficiencies, the Agency finally acknowledges the truth.  The enclosed copy of e-mail from a PSA Realty Specialist to the PSA Superintendent, dated September 12, 2006, documents some of the very shortcomings previously disclosed by Appellant.  See Attachment A.  In addition to the Sept. 12 e-mail, Attachment A includes what appears to be a draft letter from the Superintendent that was written sometime before August, 2006, and that also corroborates this information.

PSA essentially shut down its offices in recent weeks to try to meet a deadline to convert its "data base of misinformation" from the handwritten individual file format to the BIA's new agency-wide Trust Asset Accounting Management System (TAAMS).

The e-mail bluntly acknowledges that even after the conversion, PSA still lacks:

→ "the variables from the PSA leases that impact the income stream, e.g. CPI adjustments, % Rents, Penalties, Interest, GMAR increases, etc."

→ "the ability to link the CPI [consumer price index] adjustments to any of the 8 CPI tables we use here in Palm Springs.  Linking the annual rental to the CPI is a standard practice in commercial leasing and a provision [in] all of our leases."

→ "the ability to invoice 1-3 weeks prior to the due date"

→ "a tickler system that alerts staff to changes in any lease provision requiring a change in the revenue stream or lease compliance"

→ "Accounting professionals.  We're running $30 million in revenue through this office annually and we don't have an accountant or [an] AP/AR clerk.  Compare that to the annual agency budget of $1.5 million which justifies a FTE Accounting Technician."

The Realty Specialist states that even this list "is not comprehensive," and that "TAAMS is little more than a data base of misinformation."  He states, "we continue the past practice of having the lessor or lessee inform us when there is a change in the revenue stream."  Finally, he acknowledges that "PC Lease, the system designed for this agency" [in 1998] is still in a developmental rather than an operational phase.  The Realty Specialist concludes his e-mail with a plea for more money for PSA to "pay for necessary changes in the system," and urges "measuring the cost of liability against the cost of efficient tools."

H 1

The Agency and its counsel have spent over six months denying these very allegations in the context of this Appeal, and the Agency spent almost a year before that denying the allegations prior to the Appeal. This "smoking gun" is direct evidence that Appellant made protected disclosures; that Agency officials tried to cover up Agency malfeasance that Appellant had disclosed; that Agency officials have violated government ethics rules; that Agency officials have committed perjury in this proceeding; and that Agency officials continue to violate the Agency's trust responsibility as well as laws and regulations intended to protect Indian assets and income from such gross mismanagement.

Further, the incriminating e-mail is strong circumstantial evidence that the Agency committed retaliatory personnel actions against Appellant. The document is direct evidence that the Agency cannot be presumed to tell the truth, including the truth about the motives for its personnel actions.

I swear under penalty of perjury that the foregoing assertions of fact are true and correct.

Robert J. McCarthy, Appellant
September 13, 2006

## CERTIFICATE OF SERVICE

I certify that the attached document was sent this day to the following:

Agency Representative

U.S. Mail

Kevin Mack, Esq.
Department of the Interior
Office of the Pacific Southwest Regional Solicitor
2800 Cottage Way, Room E-1712
Sacramento, CA 95825-1890

Robert J. McCarthy, Appellant
September 13, 2006

H 2

**Matthew**
**Kirkland/PHOENIX/BIA/DOI**
09/12/2006 08:43 AM

To   Kim Snyder/ALBUQUERQUE/BIA/DOI@BIA, Belinda
Ray/PHOENIX/BIA/DOI@BIA

cc

bcc

Subject   Re: TAAMS Opportunity Area

The primary tools we need include:

1. The ability to code and automate into TAAMS the variables from the PSA leases that impact the income stream, e.g. CPI adjustments, % Rents, Penalties, Interest, GMAR increases, etc;

2. The ability to link the CPI adjustments to any of the 8 CPI tables we use on a daily basis here in Palm Springs. Linking the annual rental to the CPI is a standard practice in commercial leasing and a provision all of our leases. This is perhaps the most important piece that impacts how we do business here in Palm Springs;

3. We have monthly rental payments, therefore the 45 day advance billing does not work for Palm Springs, especially with the absence of the CPI tables. The ability to invoice 1-3 weeks prior to the due date is what we need;

4. A tickler system that alerts staff to changes in any lease provision requiring a change in the revenue stream or lease compliance; and

5. Accounting professionals. We're running $30M in revenue through this office annually and we don't have an accountant or and AP/AR clerk. Compare that to the annual Agency budget of $1.5M which justifies a FTE Accounting Technician.

This list is not comprehensive but these tools would fundamentally change the way we do business in Palm Springs. Without this capability TAAMS is little more than a data base of misinformation that does not allow us to effectively manage the revenue stream. More important, without these tools, we continue the past practice of having the lessor or lessee inform us when there is a change in the revenue stream, which is reactive, or we continue developing and running PCLease, the system designed for this agency, however this essentially doubles the workload of an already overwhelmed staff.

Presumably the intent of automation and new systems such as TAAMS is to improve efficiency and effectiveness and we're almost there, we just need someone to listen to our needs and provide us the tools for improvement. I understand that there are costs involved, however my experience has been that by measuring the cost of liability against the cost of efficient tools, the tools is generally the better deal. Perhaps OST, in the spirit of cooperation with BIA, can pay for the necessary changes in the system. Thank you for considering what we need to effectively manage the $30M in annual revenue managed by this team.

Matthew C. Kirkland, Realty Specialist
BIA-Palm Springs Agency
901 E. Tahquitz Canyon Way, Suite C-101
Palm Springs, California 92262
Ph: 760.416.2133 ext. 240 / Fax: 760.416.2687

Kim Snyder/ALBUQUERQUE/BIA/DOI

**Kim**
**Snyder/ALBUQUERQUE/BIA/**
**DOI**
09/12/2006 07:33 AM

To   Matthew Kirkland/PHOENIX/BIA/DOI@BIA

cc

H 3

Mr. Tom Davis, Director, Tribal Planning & Development
Agua Caliente Band of Cahuilla Indians
777 East Tahquitz Canyon Way
Suite 301 Palm Springs, CA 92262

Dear Mr. Davis:

This is a special request for the assistance of Mr. Dale Walters, Senior Engineer, over the next thirty (30) days to work with my staff on a special project. The purpose of this request is to have Mr. Walter's availability for technical support in sampling the review of legal instruments and documents which provide legal descriptions for the transactions under the jurisdiction of the Bureau of Indian Affairs-Palm Springs Agency (BIA-PSA). Specifically, we need the assistance for the review of legal descriptions as they pertain to the previously approved Grants of Easements (**GOE's**) for Rights-of-way under this jurisdiction.

It is not a full-time thirty (30) day request, just an immediate request within the next week to work with us and that he possibly be available to assist as necessary over the next thirty (30) days on a regularly scheduled basis.

As you are aware, we are under a mandate and initiative by the Department of Interior (DOI) to convert our trust data into the Trust Asset & Accounting Management (TAAMS) system.. BIA-PSA has a deadline to have our data cleaned up and encoded into the system by August 31,2006. Moreover, due to this initiative, all data encoded must be technically & sufficiently correct for the use of this system.

The staff has conducted an assessment of the approved rights-of-way and unfortunately they have discovered that there are errors with many of the legal descriptions of record, and we need to determine how we will resolve this problem, so we may proceed with a solution for this conversion effort.

For this reason, it would be appreciated if Mr. Walters could assist us in determining what specific problems we definitively have and identify a possible solution.

Furthermore, because of this mandate, we are in the process of requesting assistance from the DOI contractor for encoding purposes into the system so we can complete our task and comply with the specified deadline for a successful conversion. We have approximately Nine-Hundred (900) approved rights-of-way to review and encode into the system. Without this contractor assistance, it will be difficult for us to meet our deadline.

If at all possible, Dale's immediate availability to discuss, review and recommend what is needed to resolve the legal description issues, would assist us in our justification to receive added contract support for this project. His expertise and knowledge on this matter will greatly assist us in this endeavor.

tl 4



One of the objectives of this conversion effort is to have the ability to produce an Asset Statement. This Asset Statement is a document which will allow the Beneficiary to review and be informed of all activity related to their respective interests in land they own. Thus, this will entail the encumbrance of record for an approved rights-of-way affecting any specific tract or parcel and the income earned thereof.

Your cooperation in approving Mr. Walters to work with my staff for a few days initially and be available for technical support and advice would be appreciated.

Should you have any questions, please feel free to contact myself at 760-416-2133 ext. 222, or Ron J. Walker, Deputy Superintendent-Trust Services 760-416-2133 ext. 264.

Sincerely,

Kim Snyder,
Superintendent

cc:    Mr. Dale Walters, Senior Engineer, Planning
       & Development
       Margaret Park, Director of Planning, Planning
       & Development

H5

# ROBERT J. MCCARTHY v. DEPARTMENT OF THE INTERIOR
## Docket # SF-1221-06-0380-W-1
## SUPPLEMENTAL CITATIONS RE. SANCTIONS
## Summary Page

**Case Title :** ROBERT J. MCCARTHY v. DEPARTMENT OF THE INTERIOR

**Docket Number :** SF-1221-06-0380-W-1

**Pleading Title :** SUPPLEMENTAL CITATIONS RE. SANCTIONS

**Filer's Name :** Robert J. McCarthy

**Filer's Pleading Role :** Appellant

**Details about the supporting documentation**

N/A

# Table of Contents

Pleading Interview ................................................................................................... 3
Uploaded Pleading Text Document .................................................................... 4
Certificate Of Service ........................................................................................... 15

**ROBERT J. MCCARTHY v. DEPARTMENT OF THE INTERIOR**
**Docket # SF-1221-06-0380-W-1**
**SUPPLEMENTAL CITATIONS RE. SANCTIONS**
**Online Interview**

**1. Would you like to enter the text online or upload a file containing the pleading?**

See attached pleading text document

**2. Does your pleading assert facts that you know from your personal knowledge?**

No

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WESTERN REGIONAL OFFICE

| | | |
|---|---|---|
| ROBERT J. MCCARTHY | ) | **DOCKET NUMBER** |
| Appellant, | ) | SF-1221-06-0380-W-1 |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | **DATE: October 24, 2006** |
| Agency. | ) | |

## APPELLANT'S SUPPLEMENTAL CITATIONS RE. SANCTIONS

Appellant herein submits supplemental citations pursuant to 5 CFR 1201.58(c).

**I.     The Agency and Agency Officials Should be Sanctioned for Unprofessional, Unethical, and Unlawful Conduct, Over and Above Their Acts of Unlawful Whistleblower Retaliation.**

Appellant has made numerous motions throughout the course of this Appeal urging that the Agency, Agency officials and Agency counsel be sanctioned for improper, unethical, and unlawful conduct, pursuant to and various provisions of federal law.

Appellant herein collects and distills from the record pervasive evidence of such conduct, with citations to the record and to relevant law, in support of sanctions. This pleading does not cite to the mountain of evidence of mere retaliation in violation of the Whistleblower Protection Act ("WPA"), which is well documented elsewhere. That Agency attorneys have been responsible for most of the retaliation - including the fostering of a hostile workplace, reduction in Appellant's job duties, denial of consideration for alternate employment, reduced performance reviews, denial of performance awards, denial of the opportunity to work from a home office, withholding information routinely provided to all other managers and staff - might well merit sanctions in its own right. However, this pleading deals exclusively with those actions that go well beyond retaliation, and constitute such matters as fraud, abuse of office, violation of ethical rules and attorney rules of professional conduct, and perjury.

The Agency has demonstrated complete and utter contempt for these proceedings and for its ethical duties, to the continuous disadvantage of Appellant. The Agency has routinely ignored rules of the tribunal, disobeyed orders, misrepresented facts and law, unlawfully suppressed discoverable information, stolen confidential documents from Appellant, obtained suspensions of the Appeal under false pretenses, filed rambling and irrelevant arguments and outrageous unsworn attacks on Appellant's character, and even committed perjury.

The Federal Circuit Court of Appeals has sanctioned lawyers for a wide range of such actions, including many less shocking than some of the Agency's transgressions

herein, such as "misrepresenting facts or law to the court;" "failing to reference or discuss controlling precedents;" "failing to cite authority and ignoring opponent's contrary cited authority;" "citing irrelevant or inapplicable authority;" "making irrelevant and illogical arguments." *Abbs v. Principi*, 237 F.3d 1342, 1345 (Fed. Cir. 2001) (citations omitted). Noting that the above examples were in the context of frivolous appeals, the court has held they are equally applicable in other contexts, such as sanctions for violations of Rule 11. *Precision Specialty Metals, c. v. United States*, 315 F.3d 1346, 1356 (Fed. Cir. 2003).

> With respect to lawyers and perjury, the Court has observed:

> the courts must nonetheless rely on the carrot-and-stick provided by honesty and good conscience on the one hand, and a lively fear of perjury charges and their attendant consequences on the other. That is especially true with attorneys, who are officers of the court, are required to know and understand a specific collection of ethical obligations, are charged with the knowledge of where lines are drawn in the law, and may face the permanent loss of their livelihood if caught in the act of perjury.

*Lynch v. MSPB*, 1998 U.S. App. LEXIS 4374 at [*9] (Fed. Cir. March 6, 1998) (unpublished).

The courts have noted that government attorneys are charged with an even higher level of ethical and professional responsibilities. "Unlike a private practitioner, the loyalties of a government lawyer ... cannot and must not lie solely with his or her client agency." *In re: Bruce R. Lindsey*, 148 F.3d 1100, 1108 (U.S. App. D.C. 1998). The Professional Ethics Committee of the Federal Bar Association has described the public trust of the federally employed lawyer as follows: "the lawyer's employment requires him to observe in the performance of his professional responsibility the public interest sought to be served by the governmental organization of which he is a part." *Lindsey*, 148 F.3d at 1109, citing *Federal Bar Association Ethics Committee, The Government Client and Confidentiality: Opinion 73-1, 32 FED. B.J. 71, 72 (1973)*. The interest of a government lawyer and his client ". . . is not that it shall win a case, but that justice shall be done." *Lindsey*, 148 F.3d at 1109, n. 4, citing *Berger v. United States*, 295 U.S. 78 (1935). In keeping with these interests, government lawyers must "seek justice" and avoid unfair results. *Lindsey*, 148 F.3d at 1109, n. 4, citing MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7-14 (1980).

The Agency's misbehavior throughout this proceeding is particularly shocking given that most of the Agency officials guilty of such conduct are senior-level attorneys, among the leading officials in the Department of the Interior's Office of the Solicitor. Three of five officials who signed false declarations under penalty of perjury in this matter are Senior Executive Service (SES). In a case involving DOI, the MSPB has observed that "the SES is a corps of elite Federal managers held to a very high standard of conduct." *Baracker v. DOI*, 70 M.S.P.R. 594 [*13] (1996).

The Agency's disregard of ethics, orders, rules and law is especially distressing given ongoing Indian trust fund litigation during which United States District Judge Royce Lamberth has repeatedly cited the Agency for just such abuses, over the course of a decade. See, *e.g.*, *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 38 (D.D.C. 1999) (finding that the Agency made numerous illegitimate representations, failed to correct known misrepresentations, and neglected to inform the court about self-inflicted obstacles to comply with its discovery obligations); *Cobell v. Norton, 229 F.R.D. 5, 17 (D.C. Cir. 2005) (*the "entire record" in *Cobell* tells "a story shot through with bureaucratic blunders, flubs, goofs and foul-ups, and peppered with scandals, deception, dirty tricks and outright villainy--the end of which is nowhere in sight.")

Interior Inspector General Earl E. Devaney testified before a Subcommittee of Congress on the very day that the Agency officials signed their perjured oaths in this matter, that "short of a crime, anything goes at the highest levels of the Department of the Interior." He bemoaned a "culture at the Department of the Interior that sustains managerial irresponsibility and a lack of accountability." *Testimony of the Honorable Earl E. Devaney, Inspector General for the Department of the Interior, before Subcommittee on Energy and Resources, United States House of Representatives, September 13, 2006 (available at http://reform.house.gov), cited in Response to Agency Final Submissions.*

The Montana Supreme Court recently provided an example of an appropriate sanction in a case of state government misconduct of the type exhibited in this proceeding, overturning a jury verdict that found the State not liable for personal injuries to plaintiff, and rather than ordering a new trial, remanding for entry of an order of default, holding "the State's pattern of willful and bad faith conduct outweighs the general preference for trial on the merits." *Richardson v. Montana*, 331 Mont. 231, 130 P.3d 634 (2006).

Appellant herein seeks not only sanctions of this type against the Agency, but also disciplinary referral of the officials involved in unethical conduct that has deprived appellant of a fair opportunity to present his case, and undermined the promise of due process. The judge may impose sanctions as necessary to serve the ends of justice, when a party fails to follow the Board's regulations or comply with an order, fails to prosecute or defend appeal, or fails to make a timely filing. The judge may draw an inference in favor of a party requesting information not provided, refuse to consider any pleading that is not filed in a timely fashion, or even rule in favor of the appellant. Sanctions should be imposed when a party has exhibited negligence or bad faith in its efforts to so comply. See 5 CFR § 1201.43; *Christofili v. Department of the Army*, 81 M.S.P.R. 384, P18 (1999); *Gores v. Department of Veterans Affairs*, 68 M.S.P.R. 100, at 110 (1995); *Carrier v. U.S. Postal Service*, 65 M.S.P.R. 54, 56 (1994).

In *Allen v. U.S. Postal Service*, 2 M.S.P.R. 420, 434 (1980), the Board set out examples of circumstances that reflect the "interest of justice" standard in the context of awarding attorneys fees, and held they require neither a finding that an agency engaged in bad faith nor that the agency's action was "clearly without merit." Rather, the examples include circumstances where the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee; where the agency

"knew or should have known that it would not prevail on the merits"; and other situations. *Id.* [*20-25]. The Board noted that federal courts have held that

> Bad faith includes such circumstances as a party's obstinate refusal to act rightfully when its duties under the law are clear, n25 abusive conduct or attempts to harass or embarrass the other party, n26 intentional failure to perform a fiduciary duty, n27 and dilatory or obdurate conduct groundlessly prolonging litigation. n28 Such bad faith warranting an award of attorney fees may be found either in the actions that led to the litigation or in the conduct of the litigation itself. *Roadway Express, Inc.* v. *Piper,* 48 U.S.L.W. 4836, 4840 (June 23, 1980); *Hall* v. *Cole,* 412 U.S. at 15.

*Id.* at 20 (internal citations omitted).

The Board has frequently recognized that it is appropriate to draw adverse inferences against parties who flout the Board's rules and orders. See, e.g., *Taylor v. U.S. Postal Service,* 75 M.S.P.R. 322, 326-27 (1997) (where the agency failed to show good cause for not making an employee witness available for a hearing, the Board drew an adverse inference that the witness would have supported the appellant's version of events); *Askew v. Department of Transportation,* 15 M.S.P.R. 703, 707-08 (1983) (where the agency presented a prima facie case in support of its charge, the AJ was permitted to draw an adverse inference from the appellant's decision not to testify in rebuttal); *Bourm v. Department of the Army,* 2006 MSPB LEXIS 43 (February 7, 2006) (finding adverse inference proper where appellant did not provide documents requested by agency in discovery); *Street v. Department of the Navy,* 90 M.S.P.R. 652 (2002) (noting that administrative judge sanctioned the agency by drawing an adverse inference that the requested materials would support the appellants' testimony).

Indeed, the DOI itself has never hesitated to seek sanctions against Appellants it views as less than compliant with rules or orders. See, e.g., *Talbot v. Department of the Interior,* 83 M.S.P.R. 325 (1999) (affirming dismissal for failure to prosecute); the dissenting opinion decried application of "the most severe sanction available" to an administrative judge "for a circumstance beyond a party's control, such as the sudden unexpected illness that struck the appellant." *Id.* at 14 (citation omitted).

Unfortunately, having acted with impunity for so long, as so well documented by the Inspector General and Judge Lambert, the Agency seems confident that "anything goes." This Board must challenge such conduct, not only to remedy the prejudice caused to Appellant, in the interests of justice, but to clarify that Agency officials are not free to eviscerate the WPA, pick and choose which laws, rules and orders they want to obey, and punish employees who assert their rights and fulfill the duty of every federal employee to disclose fraud, waste and abuse.

H 12

## II.    The Agency Should be Sanctioned for Flagrant and Continuous Abuse of Process.

Appellant initiated this Appeal on February 23, 2006, alleging Agency retaliation against Appellant in violation of the WPA, following Appellant's disclosures of Agency fraud, abuse and gross mismanagement of Indian trust resources. Appellant's complaint included a request for stay of various Agency personnel actions, 25 single-spaced pages of allegations, references to evidence, and argument, accompanied by 178 pages of documentary evidence, including a copy of a letter from the OSC, dated February 2, 2005, terminating its inquiry into Appellant's allegations.

On February 28, 2006, an Acknowledgment Order directed the Agency to file a response, including among other things, "all documents contained in the agency record of the action," and "all other documents which are relevant and material to this appeal," as required by 5 CFR § 1201.25. The Acknowledgement Order also required the Agency to contact Appellant "within 35 calendar days of the date of this Order to define the issues, agree to stipulations, and discuss the possibility of settlement."

From the outset, the Agency has attempted to make a mockery of the Appeal, and to strip all meaning from the WPA. On March 26, 2006, Appellant received a copy of Agency's Response to Acknowledgement Order. Attached to Agency's unsworn and uncertified four-page Response were two large volumes of materials, parts of which are cited in the Agency's Response as purportedly supporting various assertions therein, but in fact consisting mostly of large batches of irrelevant historical materials. Conspicuously absent from the Agency Record was information concerning the various personnel actions complained of, including any information at all concerning a number of positions for which Appellant was not selected, and very selective information concerning mismanagement, performance appraisals, awards, and other relevant issues. Instead, the Agency Record was peppered with undated and unsigned "statements" attributed to various BIA officials, that contained highly unprofessional, vitriolic, unsupported, irrelevant and demonstrably false hearsay allegations about Appellant, much of it prepared in anticipation of this Appeal. Indeed, seven months later there still are no sworn statements in the record from persons with first-hand knowledge of the matters asserted, other than those submitted by Appellant.[1]

Appellant began early in April serving a series of motions to compel Agency responses to earlier discovery requests and compliance with the Acknowledgment Order, none of which drew responses from the Agency, notwithstanding rules of discovery, other Board rules that provide that any objection to a written motion must be filed within 10 days from the date of service of the motion, 5 CFR 1201.55(b), and that motions for extension of time to file pleadings may be granted only on a showing of good cause, 5 CFR 1201.55(c). Appellant's subsequent motions to seek review of the denial of Stay, to

---

[1] Agency Counsel's statements are not evidence. See, e.g., *Gangi v. U.S. Postal Service,* 97 M.S.P.R. 165, 174-75 (2004); *Hendricks v. Department of the Navy,* 69 M.S.P.R. 163, 168 (1995).

H 13

compel responses to discovery, to compel compliance with orders, and to impose sanctions, all similarly drew no response from the Agency.

On April 19, 2006, the Judge entered an Order and Notice of Hearing and Prehearing Conference. On April 28, 2006, in response to the Judge's order, Appellant filed comprehensive pre-hearing submissions including 20 single spaced pages of facts, issues and witnesses, and 330 pages of exhibits. The Agency filed a barebones pre-hearing submission on May 5, 2006, consisting of 5 double-spaced pages and no statement of facts, issues and defenses, as required by the order. On April 29, 2006, Appellant filed a motion for judgment on the record and a brief in support. The Agency filed no reply or argument or any kind.

On May 9, 2006, the Agency finally consented to speak with Appellant, more than three months after being ordered to do so, and more than two months after the deadline for doing so, yet even then the Agency continued in its refusal to "define the issues, agree to stipulations, and discuss the possibility of settlement." Agency counsel subsequently misrepresented the nature of that call to the Judge, in a pathetic and dishonest *ad hominem* attack on Appellant, delivered by fax to the Judge and by mail barely received by Appellant in time for the conference. Appellant thereafter filed yet another sanction request on May 9, which again drew no response from the Agency.

The Agency pre-empted the prehearing conference by asserting that it wanted to mediate the dispute. Over Appellant's objection, the Agency obtained a 30 day suspension of the Appeal (later extended by another 30-plus days over Appellant's objections) and was ordered to initiate settlement discussions.[2] The Agency, and in particular Mr. Keable, the "Bureau Dispute Resolution Specialist," had theretofore ignored a Department policy that mediation efforts are to be instituted at the beginning of a dispute such as this, declining to initiate reconciliation procedures then, refusing a year later when this Appeal was filed, waiting another two months until the pre-hearing conference to suggest mediation, then obtaining a suspension of the Appeal over Appellant's objections, all the while refusing to speak directly with Appellant. In the end, the Agency never spoke with Appellant even once, finally "withdrawing" its farcical offer of mediation and compounding its abuse of process by claiming it was Appellant who was responsible for the failure of settlement efforts.

As a direct result of the Agency's abuse of process, already some 240 days have elapsed since the filing of this Appeal, notwithstanding the Board's policy that initial decisions in all appeals under 5 U.S.C. 7701 will be issued within 120 days of the filing of the appeal. *Betty J. Glover v. Office of Personnel Management*, 9 M.S.P.R. 177 (1981);

---

[2] Appellant was at all times available and eager to pursue settlement discussions, even filing various motions toward that end, but he consistently opposed any suspension of his appeal. The rules permit the parties to submit a "joint request" for additional time to pursue settlement. "Upon receipt of such request," an order suspending processing of the case for a period up to 30 days may be issued at the discretion of the judge. 5 CFR § 1201.28(a). "No case may be suspended for more than a total of 30 days under the provisions of this section." 5 CFR § 1201.28(f). The two consecutive Orders suspending this Appeal were not based on a motion or a joint request of parties, and together exceeded 60 days.

*Martin W. Schwartz v. Office of Personnel Management*, 3 M.S.P.B. 258; 3 M.S.P.R. 151 (1980). Appellant even waived his right to a hearing in hopes of expediting an Initial Decision, a waiver that in retrospect may explain the Agency's loss of whatever interest it may actually have had in mediation.

Appellant has been denied interim relief, in the form of a Stay of Agency actions, and denied the opportunity for interlocutory appeal of that ruling. The rules provide that "Judges … will take all necessary action to avoid delay in all proceedings." 5 CFR § 1201.41(b). This section enumerates such actions as "Rule on discovery motions", *Id.* (4); "Rule on all motions", *Id.* (8); "Impose sanctions", *Id.* (11); and "Issue initial decisions", *Id.* (8). "It is the Board's policy that these rules will be applied in a manner that expedites the processing of each case, with due regard to the rights of all parties." 5 CFR § 1201.11.

The Judge finally issued an order closing the record almost six months after Appellant filed his motion for judgment on the pleadings. Appellant filed final submissions with cogent argument, whereas the Agency responded with a rambling and redundant brief that was largely devoid of citation to authority. Appended thereto were four meaningless declarations fraudulently claiming to swear under penalty of perjury to the truth not only of their own contents but to that of the Agency's brief. In response to Appellant's subsequent supplemental submissions, the Agency made frivolous objections that the submissions were "untimely," ignoring controlling authority cited by Appellant to the contrary, and that evidence contained in Appellant's Prehearing Submissions had become "moot,' again without citation to any authority for the claim.

Appellant thereafter submitted additional supplemental citations to the record and to law, establishing jurisdiction over all non-selection issues, entitlement to attorneys fees and future medical costs, showing that protected disclosures were made, and revealing misleading citations by the Agency, all without dispute.

## III.  The Agency Should be Sanctioned for Discovery Abuses.

The Agency abused the discovery process repeatedly and unlawfully suppressed discoverable information in violation of law and professional ethics.[3] The Agency

---

3 See, e.g., Fed Rules Civ. Proc. R. 26 (the signature of the attorney constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the response is consistent with these rules and not interposed for any improper purpose); 34 (a response to request for production of documents must state that inspection will be permitted state the reasons for objection thereto); 36 (requests for admissions are admitted unless denied or objected to within the time allowed by the rule, "a denial shall fairly meet the substance of the requested admission," and a party may not give lack of information as a reason for failure to admit unless the party states that the party has made reasonable inquiry and that the information is unavailable); 37 (an evasive or incomplete answer or response is to be treated as a failure to disclose, answer, or respond). The Federal Rules are adopted as a general guide for discovery practices in proceedings before the Board. *See* 5 C.F.R. § 1201.72 (a).

H 15

routinely denied Appellant access to such basic information as even his own official personnel record, and repeatedly refused to certify discovery answers, unresponsive though they were. Appellant had to seek an order to compel responses to all three sets of discovery requests, and then to seek further orders to provide responses that are something more than bad faith blanket denials, claims of lack of knowledge, "answers" referring Appellant to voluminous records in response to specific requests for information, and failure to verify answers, among other things. Not once did the Agency even attempt to respond to Appellant's motions to compel, or indeed to various motions for sanctions.

Attacking Appellant's discovery requests as a game of hide and seek, the Agency blindly denied scores of Appellant's Requests for Admissions, in complete bad faith. The Agency consistently refused to provide any information about a number of positions for which Appellant applied and was not selected, refused without objection to answer a number of interrogatories, provided meaningless and contradictory answers to others, and ignored controlling discovery rules and law.

Discovery was supposed to be conducted over a matter of weeks, and with minimal help from the Board. Yet, after four months of non-responsive answers and motions to compel, the Judge finally issued an order on July 31, 2006, that among other things, required the Agency to make further discovery responses by August 25. On August 24, Appellant received those responses, such as they were. Once again the Agency chose not to have the client certify the answers, although Agency counsel offered a meaningless certification, ostensibly under penalty of perjury, that was demonstrably false, an inadequate substitute for client certification, and not based on personal knowledge.

Among other things, the July 31 Order required the Agency to respond to those Requests for Admissions that it previously denied due to alleged "lack of knowledge." (Ironically, the Agency was allowed to stand on dozens of denials for which it cited no reasons whatsoever, notwithstanding interrogatories which required such explanations.) Four weeks later, the Agency again denied each and every request for admission, all without any good faith basis. Five requests were denied for a second time either by answering a question other than the question that was asked, or by simply committing perjury. Additionally, in each case, the Agency failed to comply with the corresponding interrogatory which required that the Agency state all facts upon which any denials are based. In addition to evasively answering these five admission requests, the Agency simply ignored three more that it had previously denied claiming "lack of knowledge." Appellant's subsequent objection and motion again went without response.

Pursuant to the July 31 Order, the Agency was also required to respond to several Interrogatories to which it previously responded only "Relevancy and Burden," and/or "refer to agency response to appeal." The new responses, paltry and inadequate though they were, nonetheless revealed a continuing pattern of deception and perjury on the part of the Agency. The Agency contradicted, without explanation, earlier discovery answers with regard to specific vacancies and hiring decisions; the involvement of certain Agency officials such as the Acting Solicitor in making selections; even such nonsensical claims as the filling of a position in 2004 that it said was not advertised until 2005.

Most damning, however, were contradictions to sworn Agency claims that Appellant was not selected for various transfers because they were open only at Grade 14, and he is Grade 15; that Appellant's performance ratings were among the highest in the Region; and that Appellant was not considered for a performance award solely due to lack of funds, priority for awards being given to lower-Grade attorneys. All of these claims were shown to be false.

Repeated claims that transfer opportunities were open only at Grade 14 because they are non-supervisory were contradicted by the disclosure that there are five non-supervisory Grade 15 attorneys in the Pacific Southwest Region alone. In addition, Appellant has shown that other Grade 15 attorneys have been transferred from supervisory to non-supervisory positions, at least one with relocation expenses paid. Yet the Agency continued to claim that all of the positions advertised together for voluntary transfer were filled at Grade 14, while it simultaneously refused to respond to discovery on that very issue.

In contrast to earlier answers of the Agency that implied performance appraisals were uniformly low, and that Appellant's was exceptionally high, it became apparent that only 2 out of 20 employees in the Region received a numerical rating lower than that given to Appellant, and no one received a Summary Level lower than Appellant.

Revealing that Agency claims about limited awards were untrue, documents finally obtained in discovery showed that virtually every staff attorney in the Pacific Southwest Region received at least one monetary award, including all four non-supervisory Grade 15 attorneys – except for Appellant! Even the only non-supervisory attorney (also a Grade 15 attorney) to receive a performance rating lower than Appellant's received an Award!

## IV.    The Agency and Agency Officials Should be Sanctioned for False Claims, Fraud and Perjury.

Agency officials have acted throughout this proceeding as if they have never heard of ethical rules or professional responsibility. In typical fashion, Agency officials inadvertently admitted sneaking into Appellant's office and secretly examining Appellant's files, and on at least one occasion copying or removing documents found there pertaining to Appellant's confidential disclosures to OSC and OIG.

The Agency has never filed a single piece of evidence or response to discovery in this proceeding with a proper oath or certification. Appendix IV to Part 1201 of the MSPB rules provides the proper form of a Declaration under 28 U.S.C. 1746. "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." Not once has the Agency submitted evidence with such a declaration. When finally shamed into swearing an oath, Agency officials attempted to qualify the oath in an unacceptable way, by tacking on the phrase "to the best of my knowledge," even as they knowingly committed perjury about facts well within their knowledge.

The Federal courts uniformly reject such an affidavit or declaration because it does not delineate which statements are based on the declarant's personal knowledge, nor does it show affirmatively that he is competent to testify to its contents. See, *e.g.,*

*Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949); *F.S. Bowen Elec. Co. v. J.D. Hedin Constr. Co.*, 316 F.2d 362, 364-5 (D.C. Cir. 1963; *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981; *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176 (D.D.C. 2005). Noting that "Interior cannot claim ignorance or accident," which is doubly true here, Judge Lambert refused to consider such noncompliant declarations in *Cobell v. Norton*, 310 F. Supp. 2d 77, 84-85 & n. 14 (D.D.C. 2004).

Yet Agency officials should be held to account for fraudulently claiming to swear under penalty of perjury to facts they knew to be false. The Agency, and in particular Mr. Keable, Mr. Shillito, Mr. Mack, Mr. Snyder, and Mr. Gregory filed declarations sworn under penalty of perjury that they were unaware of Appellant's OSC disclosures prior to the filing of this Appeal [February 23, 2006], and that they "cannot agree with the conclusions drawn by appellant that such mismanagement is factually occurring." Agency Br. at 7. These declarants were fully aware that these statements were false.

Already of record at the time these officials made their perjured declarations was a September 12, 2005 memo to higher level Agency officials from Superintendent Snyder that states:

> However, on that same day (June 15, 2005) the Field Solicitor sent a memorandum directly to the Office of the Special Counsel of the Office of the Inspector General [*sic*] identifying himself as a Whistleblower and provided information wherein he again criticized the PSA with his ongoing issues involving mismanagement (see attachment).

Tab 12-66. The alleged June 15 disclosure memo was not attached and the Agency refused to produce it in response to discovery requests, further evidence of a cover-up. The Regional Solicitor subsequently acknowledged his awareness of this communication from the Superintendent. Agency Record Tab 10-12 (Shillito e-mail to Associate Solicitor for Indian Affairs, July 22, 2005.)

With respect to the officials' sworn declaration that there was no mismanagement such as alleged by Appellant, the declarants were similarly aware that their statements were patently false. The Agency and all of these officials were well aware, as admitted in an unusually candid e-mail from a PSA Realty Specialist to the PSA Superintendent, dated September 12, 2006, that BIA maintains "little more than a data base of misinformation" on the Indian leases it manages, and that it essentially relies on the honor system to be told by lessees when and how much rent they owe. See Appellant's Final Submissions for Record – First Supplement, Attachment A.

The sworn declarations signed by these officials, to the extent they claim to adopt the contents of the Agency's Closing Brief, as well, also claim other "facts" in direct contravention of undisputed evidence of record. They claim that the OIG and the OSC had concluded, along with the Agency, that there is no mismanagement. Of course the OIG had never drawn any such conclusion, at one point merely declining to pursue an investigation specifically and solely due to "inadequate resources" (an interim decision that has since been reversed). The OSC came to no conclusion that there was no BIA mismanagement, either. It declined to pursue an appeal of prohibited personnel actions before the MSPB, a decision which can serve no part of this Board's consideration of this

H 18

Appeal. To Appellant's knowledge, the OSC has not made a final decision whether to pursue an investigation of the Agency's "gross mismanagement, waste and abuse."

In its "Closing Brief," the Agency and its officials falsely claim that Appellant has not shown he raised issues of overdue performance appraisals, downgraded performance appraisal, and non-selection before the OSC. Agency Br. at 5. Similarly, Agency Counsel and the officials who adopt his statements under "oath" castigate Appellant for "blatant circumvention of standard lines of agency and interagency communication," knowing that is exactly what the WPA protects, and denying retaliation therefore. *Id.* at 7.

These officials repeatedly denied Agency responsibility for retaliatory actions committed by its various bureaus. *E.g.*, *Id.* at 9. The Agency and its officials falsely claimed "Appellant was considered among the top performers, ratings-wise." *Id.* at 12. This outrageous claim was made even after Appellant filed documents pried lose in discovery over Agency objections, that show Appellant's ratings were the lowest of any non-supervisory attorney in the entire Region, and that he alone among such attorneys received no performance awards. The Agency contended throughout these proceedings that the Deputy Solicitor was not involved in the various non-selection decisions, yet in the Final Brief the Agency let slip that this too was not true. *Id.* at 12-13.

Against all evidence, including its own personnel policies that require written agreements approved by the Division of Administration, the Agency contended repeatedly that it had orally granted Appellant permission to work from a home office. The Agency argued that Appellant was excluded from communications only sporadically or on matters that are insignificant, failing to explain why Appellant alone should not be made aware of the resignation of the Solicitor, the selection of a new Acting Solicitor, opportunities to apply for transfer, developments in Appellant's own cases, and similar "insignificant" examples previously cited by Appellant.

## CONCLUSION

The Agency and certain Agency officials have said and done whatever they thought would help them to prevail in this Appeal, regardless of truth, honor, or law. Even now, with their misdeeds laid bare, the Agency has not indicated the slightest remorse, nor taken the smallest step toward doing the right thing. Incompetence may explain some of the Agency's actions, not that it excuses them. The desire for vengeance, to retaliate for disclosures that they deemed disloyal, and to send a signal to other employees that such actions will not be tolerated more likely explains the officials' willingness to commit perjury. This arrogance of power must not be rewarded. The Agency must be sanctioned, with broad adverse inferences as to all issues in dispute. Agency officials who have committed unlawful and unethical acts must face appropriate discipline.

Robert J. McCarthy

# <u>Certificate Of Service</u>

e-Appeal has handled service of the assembled pleading to MSPB only.

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Western Regional Office | SUPPLEMENTAL CITATIONS RE. SANCTIONS | e-Appeal / e-Mail |

I agree to send a printed copy of the electronic pleading with attachments to all parties by the end of next business day, as follows:

| Name & Address | Documents | Method of Service |
|---|---|---|
| Kevin D. Mack, Esq. Agency Representative Department of the Interior Assistant Regional Solicitor Pacific Southwest Region 2800 Cottage Way, Room E-1712 Sacramento, CA 96825 | SUPPLEMENTAL CITATIONS RE. SANCTIONS | US Postal Mail |

H 20

## wangari

**From:**     "wangari" <wangari@verizon.net>
**To:**       <FOIA@doioig.gov>
**Sent:**     Thursday, December 21, 2006 3:10 PM
**Subject:**  FOIA Request

Dear FOIA Officer

I request all documents and records created by the OIG since April 22, 2005 or received by the OIG since April 22, 2005, that relate to allegations of gross mismanagement, fraud or abuse by officials of the Department of the Interior in Palm Springs California. The documents in question relate to allegations that the Bureau of Indian Affairs and other agencies of the Department including the Office of the Solicitor committed such acts in relation to their responsibilities for management of Indian trust resources. This request does not include documents that OIG received from me, or documents that OIG previously sent to me (i.e. letters addressed to me). As the principal informant regarding such fraud, waste and abuse, I submitted numerous such documents, and I do not require copies of such documents. Nor do I require copies of documents submitted by other parties that are merely duplicates of documents that I provided to OIG. I do request any other documents provided to OIG by the Department in response to such allegations, and any documents that were created by OIG staff or investigators in relation to this matter.

I request that all fees be waived, but I am willing to pay fees that are not waived up to the amount of $100. I believe I am in the category of other requester. I request expedited processing due to the threat of loss of substantial due process rights. I am engaged in an appeal under the Whistleblower Protection Act before the MSPB, in which I allege Department officials have retaliated against me and continue to retaliate against me for my disclosures (to OIG and others) and in which those officials have denied under oath that my disclosures have merit (thereby committing perjury), and have claimed that OIG believes my disclosures lack merit. I certify that this statement is true and correct to the best of my knowledge and belief.

I can be reached by telephone at home (760-360-7828), or at my office (760-416-8619). I can receive faxes at my office (760-416-8719). My office address is Field Solicitor, 901 E. Tahquitz Canyon Way, Suite C-101, PO Box 2245, Palm Springs CA 92263. My home address is 78715 La Palma Drive, La Quinta CA 92253. I have no government e-mail address. My home e-mail is wangari@verizon.net or mac.mccarthy@hotmail.com. Although my disclosures were made in my official capacity, this FOIA request is made in my personal, private capacity.

Robert McCarthy

*I - 1*

3/12/2007



# United States Department of the Interior
## OFFICE OF INSPECTOR GENERAL
Washington, DC 20240

JAN 1 1 2007

Mr. Robert McCarthy
78715 La Palma Drive
La Quinta, CA 92253

Re: 07-FOI-00007

Dear Mr. McCarthy:

This is in response to your letter dated December 21, 2006, which was received by the Office of Inspector General (OIG) on December 21, 2006, in which you ask for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. You ask for a copy of all documents and records created by the OIG since April 22, 2005, or received by the OIG since April 22, 2005, that relate to allegations of gross mismanagement, fraud or abuse by officials of the Department of the Interior in Palm Springs, California.

In your letter, you also requested a fee waiver. However, you did not provide sufficient justification to qualify for a fee waiver under the Department of the Interior's (DOI) FOIA regulations, 43 C.F.R. Part 2, Appendix D. The statutory requirement for granting a fee waiver is that release of the information must be in the public interest because it—

    1.    Is likely to contribute significantly to public understanding of the operations and activities of the Government; and

    2.    Is not primarily in your commercial interest.

To assist us in making a decision on your request for a fee waiver, we ask that you address the following as applicable. You must be specific in addressing the DOI's fee waiver criteria for each request you submit, regardless of whether you may have been granted a fee waiver previously.

    1. Explain how the records you are seeking will be meaningfully informative with respect to the bureau's operations and activities. Your identity, vocation, qualifications, and expertise regarding the requested information may be relevant factors.

_I_ 2

2.  Explain how disclosure of the records will contribute to the understanding of the public at large or a reasonably broad audience as opposed to only enhancing your knowledge.

3.  Explain how and to whom you intend to disseminate the information and how you intend to use the information to contribute to public understanding.

4.  Explain how the release of the requested records will contribute significantly to public understanding. For example, is the information being disclosed new, does the information confirm or clarify data released previously, and is the information publicly available? Explain how disclosure will increase the level of public understanding that existed prior to disclosure.

5.  Explain whether you have a commercial interest that would be furthered by disclosure and if so, whether the public interest in disclosure would be greater than any commercial interest you or your organization would have in the documents.

If you are still interested in obtaining these documents, please provide additional information to justify your fee waiver request or written assurance of your willingness to pay all fees or specify the maximum amount that you are willing to pay for the bureau to process your request. This will allow the OIG to begin processing your request for records while considering your fee waiver.

If the OIG grants your fee waiver request, we will not charge fees to the extent that it grants the waiver. If you have agreed to pay fees up to a particular amount, we will contact you when we have processed your request up to that amount before proceeding further. If we do not hear from you by January 19, 2007, the OIG will deny your fee waiver since it does not meet the DOI's fee waiver criteria, and therefore, administratively close your FOIA request.

If you have any questions concerning this matter, please contact me at (703) 487-5434.

Sincerely,

Mildred H. Washington
Information Disclosure Specialist

I 5

**Robert J. McCarthy**
78715 LaPalma Drive, La Quinta CA 92253; Ph: 760-416-8619; Fax: 760-416-8719

DATE: 1-19-07

TO:    Mildred Washington, Information Disclosure Specialist
       Office of the Inspector General, USDOI

RE:    Dec. 21 FOIA Request

On January 18 I received your letter dated Jan. 11 demanding that I reply by Jan. 19 or you would "administratively close your FOIA request." I do not believe there is any legal authority for such action. Moreover, the phone number you gave me to call is answered by a recording which says it is full and cannot accept messages.

As for your characterization of my request, please note that I do not request documents submitted to OIG by me. That should cut the number of copies substantially. Actually if you would call me we could probably discuss what documents I want and dramatically minimize the number of copies needed.

As for my fee waiver, I indicated a willingness to pay up to $100. I believe I provided adequate justification. Nevertheless, in answer to your questions:

1. I am a Field Solicitor for the USDOI. I reported fraud, waste and gross mismanagement by the Palm Springs Agency of BIA to the OIG. I have since been subjected to retaliatory personnel actions. I have an appeal pending before the Merit Systems Protection Board. The requested records document my disclosures, and are therefore informative as to the bureau's operations.

2. I will file relevant documents with the MSPB, whose decisions are public record. In addition, I will disseminate the information to appropriate congressional committees. If appropriate and necessary, I may provide the information to media sources. Disclosures such as mine are the duty of every federal employee, and such disclosures are in theory protected under the Whistleblower Protection Act. Congress has found that the public has a right to know about fraud waste and abuse in government.

3. I will disseminate the information and use it as explained above.

4. The information requested is new and not previously available to the public.

5. I have no commercial interest in the disclosure. My interest is solely the public interest, which is set forth in the Whistleblower Protection Act.

Robert J. McCarthy

I 4

**Robert J. McCarthy**
78715 LaPalma Drive, La Quinta CA 92253; Ph: 760-416-8619; Fax: 760-416-8719

DATE: 3-9-07

Ms. Darell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

VIA FAX: 202/208-6677

RE:    FOIA Appeal

Dear Ms. Strayhorn:

By letter dated January 18, 2007, the Office of the Inspector General (OIG), USDOI, acknowledged receipt of my FOIA request on December 21, 2006. By faxed memo on January 19, I responded to a letter from OIG and once again provided the information requested, although the information was included with the original FOIA request.

My FOIA request essentially seeks copies of all documents and records created by OIG since April 22, 2005 or received by the OIG since April 22, 2005, related to allegations of gross mismanagement, fraud or abuse by officials of the Department of the Interior in Palm Springs, California. I excluded from my request any documents that OIG received from me.

Because I have not received a timely or substantive response to my FOIA request, I respectfully appeal the constructive denial of my request pursuant to 43 CFR 2.28(a)(1) through (7).

Sincerely,

Robert J. McCarthy

I 5

**Robert J. McCarthy**
**78715 LaPalma Drive, La Quinta CA 92253; Ph: 760-416-8619; Fax: 760-416-8719**

DATE:  3-13-07

Ms. Darrell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

VIA FAX: 202/208-6677

RE:     FOIA Appeal

Dear Ms. Strayhorn:

On 3-9-07 I faxed to you an appeal of the constructive denial of my FOIA request to the Office of the Inspector General (OIG).  I provided all relevant documents with the exception of the original request itself, which was sent by facsimile on December 21, 2006 (as acknowledged by the OIG via letter dated January 18, 2007.  A copy of the Original request is provided herewith.

Sincerely,

Robert J. McCarthy

I 6



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240



TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:
FOIA Appeal No. 2007-077

**MAR 2 3 2007**

Robert J. McCarthy
78715 La Palma Drive
La Quinta, CA 92253

Dear Mr. McCarthy:

This concerns your March 9, 2007, Freedom of Information Act ("FOIA") appeal ("appeal") to the Department of the Interior ("Department"), which was received on March 13, 2007 (the date the Department received all of the documents that you are required to submit in order to file an appeal). Your appeal relates to the December 21, 2006, FOIA request that you sent to the Office of Inspector General ("OIG"). The FOIA request generally seeks records created or received by the OIG since April 22, 2005, "that relate to allegations of gross mismanagement, fraud or abuse by officials of the Department of the Interior in Palm Springs[,] California." The Department has assigned your appeal as **Appeal Number 2007-077**. Please cite this number in any future correspondence you send to the Department regarding this appeal.

The FOIA requires an agency to make a determination on an appeal within 20 workdays after the receipt of such appeal. *5 U.S.C. § 552(a)(6)(A)(ii)*. The Department will make every effort to reach a decision on your appeal within this time limit.

If you have any questions regarding your appeal, you may contact Keedah Bell at (202) 208-5339.

Sincerely,

Darrell R. Strayhorn
FOIA Appeals Officer
Department of the Interior

I 7



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240



TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:
FOIA Appeal No. 2007-077

APR  5 2007

Robert J. McCarthy
78715 LaPalma Drive
La Quinta, CA 92253

Dear Mr. McCarthy:

This concerns the March 9, 2007, Freedom of Information Act ("FOIA") appeal ("appeal") **(No. 2007-077)** that you filed with the Department of the Interior ("Department"). Your appeal alleges that the Office of Inspector General ("OIG") has not responded to the December 21, 2006 that you submitted to it, which generally seeks records created or received by the OIG since April 22, 2005, "that relate to allegations of gross mismanagement, fraud or abuse by officials of the [Department] in Palm Springs[,] California."

The FOIA requires an agency to make a determination on an appeal within 20 workdays after the receipt of such appeal. *5 U.S.C. § 552(a)(6)(A)(ii)*. Due to an extraordinarily large number of appeals pending in the Department ahead of yours, the need to fully review the issues you presented in your appeal, and other unforeseen circumstances, the Department will not be able to make a determination on your appeal within the time limits set in the FOIA. Therefore, you may seek judicial review under *5 U.S.C. § 552(a)(4)(B)*. However, we hope that you will delay filing a lawsuit so that the Department can thoroughly review the issues in your appeal and make a determination. We appreciate your patience to this point and the Department will make every effort to reach a decision on your appeal as soon as possible.

If you have any questions regarding your appeal, please call me at (202) 208-5339.

Sincerely,

LaRima L. Lane
FOIA Appeals Specialist
Department of the Interior

I 8

December 22, 2006

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253
(760) 360-7828 (home)
(760) 416-8619 (office)
e-mail: **wangari@verizon.net**

FOIA Officer
Bureau of Indian Affairs
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

**VIA FAX: 202/208-6597**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act (FOIA) I request copies of the records described below. I request that all fees be waived, but I am willing to pay fees that are not waived up to the amount of $100. I believe I am in the category of other requester. Release of the documents will likely contribute to public understanding of the operations or activities of the Government, in that they are relevant to disclosures made by requester pursuant to the Whistleblower Protection Act, and allegations of retaliation that are pending before the Merit Systems Protection Board (MSPB).

I request expedited processing due to the threat of loss of substantial due process rights. I am engaged in an appeal under the Whistleblower Protection Act before the MSPB, in which I allege Department officials have retaliated against me and continue to retaliate against me for my disclosures and in which those officials have denied under oath that my disclosures have merit, and have claimed that the Office of the Inspector General ("OIG") believes my disclosures lack merit. I certify that this statement is true and correct to the best of my knowledge and belief.

**Description of Records:**

1.    All documents and records that the Bureau of Indian Affairs (BIA) *has provided to the OIG* since April 22, 2005 that relate to allegations that BIA or any of its officials may have committed gross mismanagement, fraud, waste or abuse in connection with the leasing or other administration of Indian lands on the Agua Caliente Reservation in and near Palm Springs California. This request includes any such documents that BIA provided to OIG directly or indirectly through counsel or other third parties.

2.    All documents and records that the BIA *has received from the OIG* since April 22, 2005 that relate to allegations that BIA or any of its officials may

J - 1

have committed gross mismanagement, fraud, waste or abuse in connection with the leasing or other administration of Indian lands on the Agua Caliente Reservation in and near Palm Springs California. This request includes any such documents that BIA received from OIG directly or indirectly through counsel or other third parties.

To assist you in expediting your production of documents in response to this request, I am today providing copies to two BIA offices that are most likely to have responsive documents, and to the Regional Solicitor.

I can be reached by telephone at home (760-360-7828), or at my office (760-416-8619). I can receive faxes at my office (760-416-8719). My office address is Field Solicitor, 901 E. Tahquitz Canyon Way, Suite C-101, PO Box 2245, Palm Springs CA 92263. My home address is 78715 La Palma Drive, La Quinta CA 92253. I have no government e-mail address. My home e-mail is wangari@verizon.net or mac.mccarthy@hotmail.com. Although my disclosures were made in my official capacity, this FOIA request is made in my personal, private capacity. Thank you.

Sincerely,

Robert J. McCarthy

J 2



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC  20240



Robert J. McCarthy
78715 La Palma Drive
La Quinta, CA  92253

JAN 1 1 2007

Re:  FOIA Control (FC) 07375

Dear McCarthy:

This acknowledges the receipt of your Freedom of Information Act (FOIA) request, dated December 22, 2006, and received in our office on January 10, 2007.  Your request has been assigned Control No. FC-07375.   Please reference this number on all your correspondence concerning this request.

The program office will advise you of the status of your response within 20 workdays upon receiving the request in their office.  If that office anticipates a delay because of unusual circumstances, it may warrant an additional 10-workday extension; however, this office will advise you if this is necessary.

If you have any questions, feel free to contact us at the following address:

Office of the Deputy Assistant Secretary - Management
Division of Logistics Support Services
1849 C Street, NW – MS 3071-MIB
Washington, DC  20240
Telephone:  (202) 208-4542
Fax (202) 208-6597

Sincerely,

Laura Cloud
FOIA Officer

FAX

January 17, 2007

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253
(760) 360-7828 (home)
(760) 416-8619 (office)
e-mail: wangari@verizon.net

Ms. Darell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

VIA FAX: 202/208-6677

Dear Ms. Strayhorn:

On December 22, 2006, I faxed a FOIA request to the FOIA Officer for Bureau of Indian Affairs, and also faxed the request to the Pacific Southwest Regional Solicitor and the Pacific Regional Director of BIA, and it was hand-delivered to the Superintendent of the Palm Springs Agency of BIA. I requested expedited processing. A copy of that request is attached. I received a timely response from the Regional Solicitor, stating that his office had no responsive records. On Jan. 16, 2007, I received a letter dated Jan. 11, 2007, in which the FOIA officer stated that my FOIA request dated Dec. 22, 2006 was "received in our office on Jan. 10, 2007." On January 17 I notified the FOIA officer by fax that her computation of the date received was in error. I received no response from the Regional Director of BIA or the Superintendent.

I appeal the foregoing denial of my request on the grounds of 43 CFR 2.28(a)(7).

Robert J. McCarthy

J 4

February 2, 2007

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253
(760) 360-7828 (home)
(760) 416-8619 (office)
e-mail: wangari@verizon.net

Ms. Darell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

**VIA FAX: 202/208-6677**

Dear Ms. Strayhorn:

On February 1, 2007, I received a call from you requesting that I provide confirmation that my FOIA request was faxed to the BIA FOIA officer on December 22, 2006. Enclosed is the confirmation page for faxes I sent during that period of time. The fax to the BIA FOIA Officer is the first one on the list. Not coincidentally, the next two numbers on the list are for the Regional Office of BIA and the Regional Solicitor's Office, both of whom also received the FOIA request by fax on December 22, 2006. I hand – delivered the request to the BIA Palm Springs Agency the same day. I swear under penalty of perjury that the foregoing is true and correct.

I previously appealed the foregoing denial of my request on the grounds of 43 CFR 2.28(a)(7). The BIA is now in violation of 43 CFR 2.28(a)(1) through (a)(6), as well, and I assert these additional grounds for appeal. Thank you for your assistance.

Robert J. McCarthy

5 5



# United States Department of the Interior

### BUREAU OF INDIAN AFFAIRS
Washington, D.C. 20240

FEB 1 5 2007

IN REPLY REFER TO:

Real Estate Services
FOIA 07375

Mr. Robert J. McCarthy
78715 La Palma Drive
La Quinta, California  92253

Dear Mr. McCarthy:

This is in response to your Freedom of Information Act (FOIA) request dated December 22, 2006, and received in our office on January 16, 2007. In your request you are seeking all documents and records that the Bureau of Indian Affairs (BIA) has provided to or has received from the Office of Inspector General (OIG) since April 22, 2005, related to allegations of gross mismanagement, fraud, waste or abuse of leasing or other administration of Indian lands on the Agua Caliente Reservation, located near Palm Springs, California.

The records you are seeking are not within the possession and control of the BIA's Washington office. Therefore, we are unable to provide you with these records pursuant to 43 CFR 2.7(d)(1). If you consider this response to be a denial of your request, you may file an appeal by writing to:

Freedom of Information Act Appeals Officer
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW -- MS-6556-MIB
Washington, D.C.  20240

Your appeal must be received no later than 30 workdays after the date of this letter. The appeal should be marked, both on the envelope and the face of the appeal letter, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal should be accompanied by a copy of your original request and this letter, along with any information you have which leads you to believe the records do in fact exist, including where they might be found, if the location is known to you.

Should you have further questions, please contact this office.

Sincerely,

Deputy Director, Trust Services

J6



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Pacific Regional Office
2800 Cottage Way
Sacramento, California 95825

IN REPLY REFER TO:
Re.: 07J00FOIA008

FEB 1 5 2007

Robert J. McCarthy
75715 La Palma Drive
La Quinta, California 92253

Dear Mr. McCarthy:

This is in response to your Freedom of Information Act request dated December 22, 2006 for the following requested records. This office was requested by the BIA FOIA Officer to reply to your FOIA request.

1. All documents and records that the Bureau of Indian Affairs (BIA) has provided to the OIG since April 22, 2005 that related to allegations that BIA or any of its officials may have committed gross mismanagement, fraud, waste or abuse in connection with the leasing or other administration of Indian lands on the Agua Caliente Reservation in and near Palm Springs California. This request includes any such documents that BIA received from OIG directly or indirectly thorough counsel or other third parties.

RESPONSE: We could not locate records sent to OIG by the BIA since April 22, 2005.

2. All documents and records that the BIA has received from the OIG since April 22, 2005 that relate to allegations that BIA or any of its officials may have committed gross mismanagement, fraud, waste or abuse in connection with the leasing or other administration of Indian lands on the Agua Caliente Reservation in and near Palm Springs California. This request includes any such documents that BIA received from OIG directly or indirectly thorough counsel or other third parties.

RESPONSE: Enclosed is a copy of a Final Audit Report on Lease Administration, Palm Springs Field Office, Bureau of Indian Affairs (No. 92-I-1342), dated September 25, 1992. The subject record was telefaxed by OIG to the BIA, Palm Springs Agency on November 2, 2006. This record was provided by the Palm Springs Agency.

If you consider this response to be a denial of your request under 43 CFR 2.28(a)(2) and (3) you may file an appeal by writing to the Freedom of Information Appeals Officer, Office of the Chief Information Officer, U.S. Department of the Interior, 1849 C Street N.W., MS-5312-MIB, Washington D.C. 20240. Your appeal must be received no later than 30 workdays after the date of this letter. The appeal should be marked, both on the envelope and the face of the appeal letter, accompanied by a copy of your original request and this letter, along with any information you have which leads you to believe that responsive records do in fact exist, including where they might be found, if the location is known to you.



TAKE PRIDE
IN AMERICA

J 7

-2-

The fee incurred in responding to this request is less than $30.00 and is not being charged in accordance with 43 CFR 2.16(b) (2).

This request has been assigned number 07J00FOIA008 and should be used as identification in any future correspondence regarding this FOIA request.

Should you have any additional questions, please contact Douglas Garcia, FOIA Coordinator, at (916) 978-6052.

/s/ Clayton Gregory
/s/ Clayton Gregory


Regional Director

Enclosure

cc:    Superintendent, Palm Springs Agency
       Laura Cloud, BIA FOIA Officer

J 8

February 20, 2007

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253
(760) 360-7828 (home)
(760) 416-8619 (office)

Ms. Darell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

**VIA FAX: 202/208-6677**

Your Reference: 07J00FOIA008

Dear Ms. Strayhorn:

By letter dated February 15, 2007, the Pacific Regional Director of the Bureau of Indian Affairs
(BIA) responded to my FOIA request that was received by that Regional office, by the Palm
Springs Agency, and by the FOIA Officer in Washington, D.C., all on December 22, 2006. The
Regional Director's letter was received and opened by the Palm Springs Agency of the BIA,
since that is to whom the envelope was addressed, on February 20, 2007.

The Regional Director's letter says BIA has provided no records to the Office of the Inspector
General (OIG) since April 22, 2005. The letter references certain documents received by BIA
from the OIG on November 2, 2006. The letter states those documents are enclosed, but nothing
was enclosed with the two page letter.

On January 17, 2007, I appealed the BIA's failure to respond to my request for expedited
processing, on the grounds of 43 CFR 2.28(a)(7). On February 2, 2007, I appealed on the
additional grounds of 43 CFR 2.28(a)(1) through (a)(6). Once again, I appeal the latest response
on grounds of 43 CFR 2.28(a)(1)(2)(3)(4)(5) and (7).

I swear under penalty of perjury that the foregoing is true and correct.

Robert J. McCarthy

J 9

February 22, 2007

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253
(760) 360-7828 (home)
(760) 416-8619 (office)

Ms. Darell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

**VIA FAX: 202/208-6677**

Your Reference: 07J00FOIA008

Dear Ms. Strayhorn:

I have received a duplicate of the letter dated February 15, 2007, from the Pacific Regional Director of the Bureau of Indian Affairs (BIA), that was previously sent in an envelope addressed to the Palm Springs Agency. Apparently that was intended as a copy for the Palm Springs Agency that was mistakenly given to me. The copy of the letter sent to me did contain the OIG document referenced in the letter. Nevertheless, my appeal stands, with particular regard to 43 CFR 2.28(a)(2).

Robert J. McCarthy



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240


TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:

MAR 2 8 2007

Robert J. McCarthy
78715 La Palma Drive
La Quinta, CA 92253

Dear Mr. McCarthy:

This responds to your February 22, 2007, letter to the Department of the Interior ("Department"), which was received on the same date, intending to file a Freedom of Information Act ("FOIA") appeal ("appeal") of the actions taken by the Bureau of Indian Affairs ("BIA") in response to a December 22, 2006, FOIA request that you submitted to it. You initially sent a February 20, 2007, letter to the Department alleging that the BIA had not provided you with a copy of the documents that it found responsive to your FOIA request. You then sent the February 22, 2007, letter informing the Department that you were in receipt of the documents but that you still intended to appeal, "with particular regard to 43 CFR 2.28(a)(2)."

The portion of the Department's FOIA regulations to which you refer states that a requester may file an appeal when:

> The bureau informs you that you have not adequately described the records you are seeking, or that it does not possess responsive records and you have reason to believe it does or you question the adequacy of the bureau's search for responsive records.

In your February 22, 2007, letter, you did not articulate with any specificity which provision of 43 C.F.R. § 2.28(a)(2) you are appealing. Because the Department cannot determine the basis of your appeal, your February 22, 2007, letter cannot be accepted for processing as a FOIA appeal at this time.

Within 20 workdays from the date of this letter, please provide the Department with correspondence that explains what you are appealing so that an appeal can be opened for processing. If the Department does not receive this correspondence from you within this time frame, it will not consider your February 22, 2007, letter for processing as an appeal.

You may send the documentation via facsimile to (202) 208-6677 or you may mail it to the following address:

J 11

Department of the Interior
Office of the Solicitor
Division of Administration
1849 C Street, N.W. - Mail Stop 6556
Washington, D.C. 20240
(Attn: FOIA Appeals Office)

If you have any questions regarding this letter, please call LaRima Lane at (202) 208-5339.

Sincerely,

Darrell R. Strayhorn
FOIA & Privacy Act Appeals Officer
Department of the Interior

J 12

April 13, 2007

Robert J. McCarthy
78715 La Palma Drive
La Quinta CA 92253
(760) 360-7828 (home)
(760) 416-8619 (office)

Ms. Darrell Strayhorn
FOIA Appeals Officer
U.S. Dept. of the Interior
MS-3071, MIB
1849 C Street, NW
Washington, DC 20240

**VIA FAX: 202/208-6677**

Your Reference: 07J00FOIA008

Dear Ms. Strayhorn:

This responds to your letter of March 28, 2007, in which you assert that my appeal "did not articulate with any specificity which provision of 43 C.F.R. § 2.28(a)(2) you are appealing," and that "Because the Department cannot determine the basis of your appeal, your February 22, 2007, letter cannot be accepted for processing as a FOIA appeal at this time."

I faxed a FOIA request to the Bureau of Indian Affairs ("BIA") on December 22, 2006, requesting expedited processing. BIA acknowledged the request by letter dated on January 11, 2007. By fax dated January 17, 2007, I appealed BIA's failure to respond to the request for expedited processing within the time allowed, 43 C.F.R. 2.28(a)(7). By fax dated February 2, 2007, I provided the proof you demanded (and the Department obviously already had in its possession) that the FOIA request had indeed been received when claimed. At the same time I appealed the constructive denial of my request on grounds of 43 CFR 2.28(a)(1) through (a)(6), as well.

By letters dated February 15, 2007, BIA stated the requested records were not in its possession, except for a single document that it sent. On February 20, 2007, not having received the referenced document, I again appealed the denial, "on grounds of 43 C.F.R. 2.28(a)(1), (2), (3), (4),  (5), and (7)." By fax dated February 22, 2007, I clarified that since receiving the referenced document "my appeal stands, with particular regard to 43 C.F.R. 2.28(a)(2)." Section 2.28(a)(2) authorizes appeal when:

The Bureau informs you that you have not adequately described the records you are seeking, or that it does not possess responsive records and you have reason to believe it does or you question the adequacy of the bureau's search for responsive records.

J13

As you are well aware, none of the BIA's response letters suggested in any fashion that the request was not sufficiently clear. Therefore, even if one could argue that the appeal had been narrowed to grounds contained in *43 C.F.R. 2.28(a)(2)*, your rejection of my appeal can only be understood as yet another cynical ploy in the service of Interior's long-standing policy and practice of denying FOIA requests and withholding information in the face of all requests and appeals until faced with court action.

To further elucidate the grounds for my appeal, I reiterate that my initial FOIA request to BIA sought documents that the BIA had either "provided to" or "received from" the OIG since April 22, 2005 that relate to my allegations of BIA gross mismanagement of Indian leases at the Palm Springs Agency. In response, the only document produced by BIA was a copy of a 1992 OIG audit of BIA, that allegedly was "telefaxed" to BIA by OIG on November 2, 2006. BIA's artfully-worded cover letter states that "We could not locate records **sent to** OIG by the BIA since April 22, 2005." (Emphasis added.) The FOIA request was for records "provided" not "sent", and the OIG officials conducted their interviews with BIA in person, therefore it is very likely documents were "provided to" OIG for its review but not "sent to" OIG. This suspicion is further fueled by a February 15, 2007 letter sent to Senator Barbara Boxer by the OIG, stating, *inter alia*, that the OIG had "interviewed BIA officials" and "reviewed all pertinent documents." A copy of the letter is enclosed.

As you know, I am trying to stop a campaign of retaliation that the Department has waged against me for the past two years, since I first disclosed gross mismanagement at the BIA's Palm Springs Agency. My various FOIA requests are directly related to that effort. I would appreciate your professional courtesy in expediting the Department's prompt and complete compliance with the law in responding to my requests.

Robert J. McCarthy

J 14



# United States Department of the Interior

### OFFICE OF INSPECTOR GENERAL
### Washington, DC 20240

FEB 1 5 2007

The Honorable Barbara Boxer
United States Senate
Washington, D.C. 20510-0505
c/o Eric José Vizcaíno

Dear Senator Boxer:

This letter is to inform you of the results of our investigation into the concerns of your constituent, Robert McCarthy, a field solicitor for the U.S. Department of the Interior in Palm Springs, CA. In a letter dated September 25, 2006, your staff requested that the Office of Inspector General (OIG) review Mr. McCarthy's allegations of gross mismanagement of Indian trust funds.

Specifically, Mr. McCarthy alleged that the Bureau of Indian Affairs (BIA) in Palm Springs had not implemented recommendations from an OIG audit report exposing deficiencies in the lease management program for the Agua Caliente Band of Cahuilla Indians. This tribe leases land to developers in Palm Springs, Cathedral City, and Rancho Mirage. The BIA in Palm Springs reviews the lease agreements to ensure regulations have been met.

Mr. McCarthy also alleged that a BIA supervisor received gifts from parties who conduct business with the Palm Springs office. He further alleged that he had been retaliated against due to his disclosure of this information.

We opened an investigation into Mr. McCarthy's concerns in October 2006. We reviewed his allegations of gross mismanagement, and we understand that the Merit Systems Protection Board is reviewing his allegations of retaliation.

During our investigation, we interviewed BIA officials from Palm Springs, as well as Mr. McCarthy, and we reviewed all pertinent documents. We confirmed that the BIA Palm Springs office has not implemented all of the OIG's audit recommendations, and officials conceded that problems remain within the lease management program. They also expressed concerns that the Palm Springs office is understaffed and the automated lease system is insufficient.

We also confirmed that one BIA official and two staff members received gift baskets containing spa robes from a lessee. The BIA official also admitted that he accepted two tickets to a film festival in Palm Springs from a lessee in 2004. He estimated that both tickets were valued between $50 and $60.

K J

We are referring our findings regarding gifts received by BIA employees to BIA management for any action they deem appropriate. We are also issuing a Management Advisory to BIA regarding the Palm Springs office's implementation of our audit recommendations.

We thank you for your interest in this matter, and we appreciate you communicating your concerns to us.

Sincerely,

Earl E. Devaney
Inspector General

K 2

# Probe: Local Indian Affairs office troubled

## Woes highlighted in 1992 audit persist today

**BY DIANA MARRERO**
DESERT SUN WASHINGTON BUREAU

The Bureau of Indian Affairs in Palm Springs, which manages millions of dollars in commercial leases for Indian landowners in the area, continues to be plagued with problems found in an audit 15 years ago, documents show.

The local agency was the subject of a recent investigation by an internal auditor who found the office had not yet implemented all recommendations made in a 1992 audit report that found serious deficiencies in the agency's handling of leases.

Management problems at the BIA are costing members of the Agua Caliente Band of Cahuilla Indians untold amounts of money because of delays on lease agreements, overdue payments and the failure to assess proper annual rent increases, documents show.

The troubles within the Palm Springs office are emblematic of problems that have dogged the BIA for years, experts say.

"The problems you have there with understaffing and the lack of systems and resources are a reflection of what you find in BIA offices around the country," said John Doffett, general counsel for the National Congress of American Indians.

Nedra Darling, a spokeswoman for the BIA, said she could not comment on the investigation into the Palm Springs office because the inquiry was not yet closed. But she defended the work of the agency in general, saying officials are working to address its problems.

"It's a difficult job people are doing," Darling said. "We're tackling the issues as we can."

The BIA is under the Interior Department and collects about $330 million a year in royalties and leases on behalf of 300,000 Indians across the country. The

> "A substantial amount of trust income has gone uncollected and much of it may be now uncollectible, for reasons that include poor bookkeeping, failure to calculate periodic rent increases, the statute of limitations, expired leases, limitations in lease terms, lessee bankruptcies, and lost opportunities to terminate leases in favor of more profitable redevelopment."
>
> **Robert McCarthy**
> attorney for the Palm Springs office of the Bureau of Indian Affairs

department is the subject of a class-action lawsuit by Indian landowners across the country who say the agency has squandered millions in land revenues.

Trust fund accounts from land in Palm Springs and other Southern California communities amount to about a fifth of the income generated from trust lands nationwide, said Vicki Forrest, a regional trust administrator for the Interior Department in Southern California.

The Agua Caliente control much of the land in the Palm Springs area, with individual tribal members owning about 19,400 acres and the tribe itself owning about 3,200 acres, according to an Interior Department figure reported by the Tiller's Guide to Indian Country.

### Mismanagement claimed

The investigation into the Palm Springs office was opened in October following claims of gross mismanagement of Indian trust funds made by Robert McCarthy, attorney for the office.

"We confirmed that the BIA Palm Springs office has not implemented all of the OIG's audit recommendations, and officials conceded that problems remain within the lease management program," says a recent letter by Earl E. Devaney, the Department of Interior's Inspector General.

Officials locally also said their

Please see BUREAU P.

---

*THE DESERT SUN*

Continued from B1

office is understaffed and the automated lease system they use is insufficient, according to the letter sent to Sen. Barbara Boxer, D-Calif., in response to an inquiry by her office.

The inspector general's office also confirmed that a BIA official and two staff members had received gifts — tickets to a Palm Springs film festival in 2004 and gift baskets stuffed with spa robes — from someone who leases trust land managed by the agency, the letter said.

A request for an investigative report providing additional details about problems within the office was denied because the investigation has not been closed, said Washington, a records specialist at Interior.

In a memo two years ago to the inspector general, McCarthy wrote that the Palm Springs office lacked any kind of routine system to monitor compliance with the terms of leases, including rent payments, bonds, insurance or completion of development.

He also claimed that a software program had gone unused for years and that officials relied instead on an "ad-hoc system driven by complaints."

"A substantial amount of trust income has gone uncollected and much of it may be now uncollectible, for reasons that include poor bookkeeping, failure to calculate periodic rent increases, the statute of limitations, expired leases, limitations in lease terms, lessee bankruptcies, and lost opportunities to terminate leases in favor of more profitable redevelopment," McCarthy wrote.

He provided more than a dozen examples to the inspector general of instances where officials at the Palm Springs office had mismanaged specific leases, including one in which officials failed to collect rent for three years.

The office also had delayed for years a multimillion-dollar land deal involving the cities of Palm Springs and Cathedral City and

## BUREAU: Palm Springs investigation was launched in October

FROM B1

two tribal members, he wrote.

Meanwhile, McCarthy has filed a complaint charging that BIA officials have retaliated against him by creating a hostile work environment and denying him awards. He contends his disclosure is protected under the Whistleblower Protection Act.

The Merit System Protection Board last week denied his request for corrective action, saying that although his disclosure were a contributing factor in the actions taken against him, his case

failed to meet certain standards for action. McCarthy says he plans to appeal the decision.

"The most important thing that should come out of this is that Indians realize the full value of their land and that people who lease the lands are dealt with fairly," McCarthy said. "Ultimately, everyone will benefit if that is the outcome."

---

Contact reporter Diana Marrero at dmarrero@ps.gannett.com.

*8A, TUESDAY, APRIL 10, 2007*

K3

The Desert Sun

WEDNESDAY, APRIL 11, 2007 **Section B**

# LOCAL

COMMUNITY EDITOR Monica Torline PHONE 778-4625 FAX 778-4654

E-MAIL localnews@thedesertsun.com

FOR HOME DELIVERY ASSISTANCE PHONE 322-5555

PALM SPRINGS

# Local Bureau of Indian Affairs criticized

## Developers: Agency needs more training and streamlined processes

BY DIANA MARRERO
DESERT SUN WASHINGTON BUREAU

The Bureau of Indian Affairs in Palm Springs needs to hire more people, offer better training for those who work in the office and streamline the the way the agency does its business, local developers and Indian landowners say.

Larry Olinger, a member of the Agua Caliente Band of Cahuilla Indians, who owns land in the area, says it can be frustrating to deal with the local agency.

"It's very confusing dealing with the bureau," he said. "One person will say one thing and another person will say the complete opposite."

Olinger recently experienced problems with the BIA when a developer approached him about selling a piece of property he owned but that the federal government held in trust. He says the deal took nine months because BIA officials could not agree on the terms of the sale.

The Palm Springs man also said developers have offered him top dollar for other pieces of land to avoid dealing with the BIA, but he has declined to sell because the land is "part of the reservation."

"This is our heritage," he said.

Nedra Darling, a spokeswoman for the BIA, defended the work of the agency in general, saying the group has a lot of good people trying to do good work.

"They are very hard-working people," she said.

Among those willing to speak publicly about the BIA in Palm Springs, there is a general consensus about the agency's bureaucratic hurdles. But many are reluctant to talk, citing concerns about how their comments would

be perceived by the local agency or the Agua Caliente tribe.

Keith Shibou, an accountant who represents many Indian landowners, says his clients have been troubled by the slow pace of lease approvals, property transfers and sales. He said delays on development projects, leases and sales can go on for months.

"In the meantime, it could kill a good deal," he said.

Local developers also express frustration with the BIA. Dennis Freeman, a Palm Desert develop-

er, says the agency needs better-trained employees and a more streamlined system.

"The total system needs improvement," he said.

George Nicholas Jr., another Palm Desert developer, was more forgiving than others, saying development on non-Indian land can take just as long.

"At times it's trying," he said. "It's a government agency. At any level, you have to expect bureaucracy to take part of the process."



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240



TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:

Robert J. McCarthy                    FEB 2 3 2007
78715 La Palma Drive
La Quinta, CA 92253

Dear Mr. McCarthy:

This responds to the January 17, 2007, Freedom of Information Act ("FOIA") appeal ("appeal") **(No. 2007-051)** that you filed with the Department of the Interior ("Department"). You filed this appeal because the Office of the Solicitor ("SOL") has failed to timely respond to a December 4, 2006, FOIA request that you transmitted to it via facsimile on that same date. *See 5 U.S.C. § 552 (a)(6)(A)(i)* (requiring an agency to determine within 20 workdays after the receipt of a FOIA request whether it will comply with such a request (i.e., grant or deny the request (or any portion thereof)). Your FOIA request seeks documents that identify every attorney position within SOL that has been filled by transfer, promotion or other hiring process since April 20, 2005; every attorney position that has been identified as vacant since April 20, 2005 and remains vacant as of the date of the FOIA request; every award given to an attorney in SOL since April 20, 2005; and the Numeric Summary Rating given to each attorney in SOL on his or her most recent Performance Appraisal after April 20, 2005, but before September 30, 2006.

Since SOL has not provided the Department with any information that explains why it has not responded to your FOIA request within the statutory time limit set in the FOIA, as the Department directed it to do, the Department will presume that SOL does not have an explanation as to why the processing of your FOIA request has been delayed. Therefore, **by copy of this letter, SOL is directed to advise you whether it will comply with your FOIA request (i.e., grant or deny the request (or any portion thereof)) within 10 workdays of the date of this letter, with a copy of the response to this office.**

If you have any questions regarding your appeal, you may contact me at (202) 208-5339.

Sincerely,

Darrell R. Strayhorn
FOIA Appeals Officer
Department of the Interior

cc: Colette Clark, FOIA Officer, SOL **(FOR IMMEDIATE ACTION)**
    Edward Keable, Associate Solicitor-Administration, SOL
    Craig Littlejohn, Chief Information Officer, SOL